Michael Rubin (SBN 80618)
Connie K. Chan (SBN 284230)
Raphael N. Rajendra (SBN 255096)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
mrubin@altber.com
cchan@altber.com
rrajendra@altber.com

Cliff Palefsky (SBN 77683)
Keith Ehrman (SBN 106985)
MCGUINN, HILLSMAN & PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
Telephone: (415) 421-9292
Facsimile: (415) 403-0202
CP@mhpsf.com
keith@mhpsf.com

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER SCHUMAN, an individual, and WILLIAM COPLIN, an individual, on behalf of themselves and on behalf of others similarly situated,<br><br>            Plaintiffs,<br><br>        v.<br><br>MICROCHIP TECHNOLOGY INCORPORATED, a corporation; ATMEL CORPORATION, a corporation; and ATMEL CORPORATION U.S. SEVERANCE GUARANTEE BENEFIT PROGRAM, an employee benefit plan,<br><br>            Defendants | Case No. 16-CV-05544-HSG<br><br>CLASS ACTION<br><br>**AMENDED CLASS ACTION COMPLAINT** |

# INTRODUCTION

1.      This is an ERISA class action brought by two former employees of defendants Atmel Corporation ("Atmel") and Microchip Technology, Inc. ("Microchip"), the company that acquired Atmel by merger on April 4, 2016.  Plaintiffs allege that Atmel and Microchip breached their ERISA fiduciary duties to plaintiffs and the class of similarly situated former Atmel employees (those whom Microchip terminated without cause between April 4, 2016 and March 19, 2017), deprived plaintiffs and the class of severance benefits guaranteed by defendants' ERISA-covered severance plan, and interfered with plaintiffs' and class members' ability to exercise ERISA-protected rights, all in furtherance of defendants' unlawful scheme and plan to avoid providing severance benefits to plaintiffs and class members after using the lure of those promised benefits to induce plaintiffs and class members to remain employed by Atmel and Microchip before and after the merger.

2.      Defendant Atmel, a supplier of microcontrollers, began seeking potential merger partners in the summer of 2015.  Recognizing that its employees might respond to the company's uncertain future by seeking alternative employment, Atmel created an ERISA severance plan for its employees in July 2015 to provide economic incentives for those employees to remain in their jobs while Atmel searched for and obtained a merger partner.  Atmel's "U.S. Severance Guarantee Program" (referred to herein as the "Severance Guarantee Plan" or the "Plan") provided that each plaintiff and class member would be entitled to several extra months of salary, health insurance premium payments, and a pro-rated incentive bonus payment, as ERISA-protected severance benefits, if terminated without cause following a corporate change of control that occurred within 18 months after an "Initial Triggering Event," defined as any "definitive agreement" entered into "on or before November 1, 2015, that will result in a Change of Control of the Company."

3.      Atmel's Severance Guarantee Plan went into effect on July 9, 2015.  The Initial Triggering Event occurred on September 19, 2015, when Atmel signed its initial merger agreement with Dialog Semiconductor plc.  Between September 19, 2015 and April 4, 2016, when the merger between Atmel and Microchip became final, first Atmel and then both Atmel *and* Microchip repeatedly reassured plaintiffs and class members that the Plan was in effect, that the Initial Triggering Event had occurred in September, and that every employee terminated without cause

---

1   between the date the merger became final and March 19, 2017 (18 months after the Initial Triggering

2   Event) would receive the severance payments provided by the Plan.

3          4.      As soon as the Atmel-Microchip merger became final on April 4, 2016, Microchip

4   began massive layoffs of Atmel employees covered by the Plan.  Instead of providing the Plan's

5   severance benefits to each of those laid-off plaintiffs and class members, as required by the plain

6   language of the Plan, by Atmel's consistent construction of the Plan, and by Atmel's and

7   Microchip's uniform representations to plaintiffs and class members, defendants knowingly,

8   intentionally, and maliciously reneged on their contractual and fiduciary obligations by purporting to

9   re-interpret the Plan as precluding the payment of any severance benefits to any former Atmel

10  employees.

11         5.      For the sole purpose of benefitting themselves at the expense of plaintiffs and other

12  class members, and in plain derogation of their statutory and fiduciary duties, defendants falsely and

13  fraudulently informed plaintiffs and class members after April 4, 2016 that the Plan had ceased to

14  exist on November 1, 2015 (before Microchip entered into its proposed merger agreement with

15  Atmel); that there had never been an Initial Triggering Event; that no plaintiff or class member had

16  any rights under the Plan because the Plan had ceased to exist; and that the only way any former

17  Atmel employees terminated without cause by Microchip after April 4, 2016 could obtain any

18  benefits at all would be for that employee to execute a broad release waiving any and all claims

19  against defendants, including any claims for benefits under the Plan.

20         6.      At the time defendants made those statements and denied benefits to plaintiffs and

21  class members under the Plan, defendants knew that the plain language of the Plan entitled plaintiffs

22  and class members to severance benefits under the Plan, knew that Atmel as the Plan's drafter and

23  Administrator had consistently construed the Plan between the date of drafting and April 4, 2016 as

24  providing severance benefits to plaintiffs and class members, knew that Microchip and Atmel had

25  both made consistent representations that plaintiffs and class members relied upon to their detriment

26  that the Plan was in effect because the Initial Triggering Event had timely occurred, and knew that

27  the Plan expressly prohibited any post-merger construction of the Plan that differed from Atmel's

28  pre-merger construction of that Plan.

Amended Class Action Complaint
4:16-CV-05544-HSG                                                                            2

7.     Defendants also willfully and maliciously delayed resolution of plaintiffs' and class members' efforts to pursue claims for benefits under ERISA, even though defendants have known since April 4, 2016 that they and the Plan would deny any claim for benefits under the Plan on the ground that the Plan had ceased to exist on November 1, 2015.

8.     At all times relevant hereto, defendants and each of them acted as plaintiffs' and class members' fiduciaries and/or in the exercise of discretionary authority over the operation or administration of the Plan, and in violation of their fiduciary and contractual duties to plaintiffs and class members.

9.     By this class action lawsuit, plaintiffs and class members seek: a) Plan benefits; b) a declaration that the Plan is valid and enforceable and remains in existence; c) a declaration that any releases obtained by defendants as a result of their misrepresentations and other wrongful conduct are voidable at plaintiffs' and class members' option; d) a declaration that all Plan participants, including plaintiffs and class members, are entitled to the full amount of benefits provided by the Plan if those persons were terminated without cause at any time between April 4, 2016 and March 19, 2017; e) an injunction against defendants' enforcement of any such releases; f) an injunction prohibiting defendants from continuing to deny Plan benefits to eligible employees; g) an injunction prohibiting defendants from continuing to make false and fraudulent statements about the Plan's existence or about any employee's current or future right to benefits under the Plan; h) an injunction prohibiting defendants from soliciting releases from plaintiffs and class members who have not already signed releases pursuant to defendants' unlawful scheme; i) an injunction prohibiting defendants from continuing to delay the processing of any plaintiff's or class member's claim for ERISA benefits; j) an injunction requiring defendants to pay the full amounts and benefits promised under the Plan to all employees who were terminated without cause between the Merger close date and March 19, 2017; and k) equitable make-whole relief to all employees who received less in severance benefits upon their termination by Microchip or Atmel than the Plan guaranteed.

**JURISDICTION AND VENUE**

10.     This action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§1001 *et seq.* ("ERISA"), seeks benefits and equitable relief and seeks to prevent defendants'

1    continued interference with plaintiffs' and class members' exercise of ERISA rights under Sections

2    502(a)(1)(B) and (a)(3) and 510 of ERISA, 29 U.S.C. §§1132(a)(1)(B) and (a)(3) and 1140. This

3    Court has original federal question jurisdiction pursuant to 28 U.S.C. §1331 and ERISA.

4        11.    The Northern District of California has personal jurisdiction over all defendants,

5    because defendants Atmel and Microchip did business and are continuing to do business in this

6    district, because defendant Plan was created in this district, and because many of the acts complained

7    of occurred in this district and gave rise to the claims alleged.

8        12.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. §1391(b)

9    and (c) because defendants may be found in this district and because a substantial number of the

10   events alleged occurred in this district.

11   <u>**PARTIES**</u>

12       13.    Plaintiff Peter Schuman is an individual and a former employee of defendants Atmel

13   and Microchip and a resident of San Mateo County, California.  Schuman is a participant in

14   defendant Atmel Corporation's U.S. Severance Guarantee Benefit Program, as defined under Section

15   2(7) of ERISA, 29 U.S.C. §1002(7).  Defendants Atmel and Microchip terminated plaintiff Schuman

16   without cause on or about April 6, 2016 and falsely informed him that he was not entitled to any

17   benefits under the Plan upon such termination.

18       14.    Plaintiff William Coplin is an individual and a former employee of defendants Atmel

19   and Microchip and a resident of Santa Clara County, California.  Coplin is a participant in defendant

20   Atmel Corporation U.S. Severance Guarantee Benefit Program, as defined under Section 2(7) of

21   ERISA, 29 U.S.C. §1002(7).  Defendants Atmel and Microchip terminated plaintiff Coplin without

22   cause on or about June 10, 2016, and falsely informed him that he was not entitled to any benefits

23   under the Plan upon such termination.

24       15.    Defendant Atmel Corporation U.S. Severance Guarantee Benefit Program is an

25   employee benefit plan within the meaning of Section 2(3) of ERISA, 29 U.S.C. §1002(3).

26       16.    At all relevant times, defendant Atmel Corporation was a corporation incorporated in

27   the State of Delaware, with its principal place of business in San Jose, California.

28       17.    At all relevant times, defendant Microchip Technology Incorporated was a

corporation incorporated in the State of Delaware, with its principal place of business in the State of Arizona.  On information and belief, Microchip is the Plan Administrator, or controls the Plan Administrator, for the Severance Guarantee Plan; has the authority to resolve any and all benefit claims under the Severance Guarantee Plan; and has responsibility to pay benefits due under the Severance Guarantee Plan.

## GENERAL FACTS AND ALLEGATIONS

### *The Severance Guarantee Plan*

18.     Until April 2016, when Atmel became a wholly owned subsidiary of Microchip, Atmel was a publicly traded corporation.  Atmel is a supplier of general purpose microcontrollers, which are self-contained computers on a single chip used in a variety of industrial and consumer products, including devices that connect to, and communicate through, the internet.

19.     In July 2015, in response to "significant market speculation regarding possible transactions involving the company" and "[t]o support [its] employees and to keep everyone focused on our continued success," Atmel announced the creation of a "U.S. Severance Guarantee Program," which applied to all of its approximately 1,800 employees based in the United States.  Atmel informed its U.S. employees that it was seeking a merger partner and that it was rolling out the Severance Guarantee Plan to encourage all employees to continue working for Atmel and any successor entity despite the uncertainty surrounding Atmel's corporate future.  Between July 2015 and at least April 4, 2016 when the merger between Atmel and Microchip became final, Atmel was the Plan Administrator of the Severance Guarantee Plan.

20.     On or about July 9, 2015, Atmel delivered personalized letters to each of its U.S.-based employees, including plaintiffs and class members, describing the benefits to which those employees would be entitled under the Severance Guarantee Plan if their employment were terminated without cause within 18 months after Atmel agreed to merge into, or be acquired by, another company (the "July 9 Severance Guarantee Letter").  Attached to each July 9 Severance Guarantee Letter was an addendum ("July Addendum") that set forth additional terms and details of the Severance Guarantee Plan.  All U.S.-based Atmel employees, including plaintiffs and class members herein, were sent the identical July Addendum.  The July 9 Severance Guarantee Letters

1    that Atmel distributed to all of its U.S.-based employees were identical, except for the specific

2    benefit level described for each class of employee.

3            21.    The July 9 Severance Guarantee Letter and the July Addendum (together, the "Plan

4    Documents") identified three benefits guaranteed by the U.S. Severance Guarantee Program: a) a

5    cash payment of between 25% and 50% of the employee's annual base salary (depending on whether

6    the employee was a director, a professional exempt employee, or a non-exempt employee); b) paid

7    health insurance premiums for between three and six months (again depending on the employee's

8    job category); and c) for director-level and professional exempt employees, a prorated portion of the

9    employee's annual incentive bonus.

10           22.    Atmel provided the Plan Documents to all of its U.S.-based employees on or about

11   July 9, 2015.  Atmel subsequently provided the Plan Documents to all U.S.-based employees who

12   were hired after July 9, 2015 but before April 4, 2016 (the date Atmel's merger with Microchip

13   became final).  All of Atmel's U.S.-based employees, including plaintiffs and class members herein,

14   were covered by the Severance Guarantee Plan at the time of Atmel's April 4, 2016 merger with

15   Microchip.

16           23.    The Plan Documents state that the Plan will "remain in effect for 18 (eighteen)

17   months following [an] Initial Triggering Event," which it defined as "a definitive agreement (a

18   'Definitive Agreement'), on or before November 1, 2015, that will result in a Change of Control of

19   the Company."  The Plan Documents further state that during that 18-month time period, the

20   Severance Guarantee Plan would be "available to eligible employees," that all "U.S.-based

21   employees of Atmel Corporation as of the date a Change of Control is consummated" would be

22   eligible for the Plan, and that each eligible employee would become entitled to the Plan's benefits if

23   terminated without cause within 18 months of the date Atmel had entered into a Definitive

24   Agreement.

25           24.    The Plan's express language gave Atmel sole and exclusive authority to interpret the

26   Plan prior to any merger, and made Atmel's pre-merger construction of the Plan's language

27   conclusive and binding.  In pertinent part, the Plan stated, "The [U.S. Severance Guarantee Benefit]

28   Program will be administered and interpreted by the Company [Atmel].  Any decision made or

---

1  action taken by the Company prior to a Change in Control with respect to the Program, and any

2  interpretation by the Company prior to a Change in Control of any term or condition of the Program,

3  or any related document, will be conclusive and binding on all persons and will be given the

4  maximum possible deference allowed by law."

5      25.     Atmel recognized when it created the Plan that it might enter into a Definitive

6  Agreement with Company A (an "Initial Triggering Event"), but later decide to accept a more

7  attractive merger or acquisition proposal made before the closing date by Company B—a common

8  occurrence in corporate mergers.  Atmel drafted the Plan with the intent and for the purpose of

9  reassuring its employees that they would remain entitled to the benefits guaranteed by the Severance

10  Guarantee Plan if they were terminated without cause within 18 months after an Initial Triggering

11  Event, even if Atmel eventually merged with a different company than the company with which

12  Atmel initially planned to merge.

13      26.     The Plan Documents do not state, imply, or in any way require the Initial Triggering

14  Event and the Change of Control to involve the same acquiring company.  Nor do the Plan

15  Documents require that the eventual merger agreement have identical terms to the agreement

16  constituting the Initial Triggering Event.  To the contrary, the plain language of the Plan and the

17  consistent expressed intent of defendants throughout the relevant time period, was that the Definitive

18  Agreement giving rise to the Initial Triggering Event did not have to involve the same company with

19  which a Change of Control eventually occurred, and that the terms of the ultimate merger agreement

20  need not be identical to the agreement constituting the Initial Triggering Event.  The purpose of the

21  Plan was to create financial incentives to encourage Atmel's employees to continue working for

22  Atmel employees between the date Atmel reached an initial agreement to merge, as long as it was

23  before November 1, 2015, and the date any change of control merger became final, regardless of

24  which merger partner Atmel eventually selected or what the exact merger terms were.  As long as

25  the Initial Triggering Event occurred before November 1, 2015, the Plan's severance protection

26  covered all Atmel employees who continued working for Atmel through the date of any subsequent

27  change of control.

28  ///

*Atmel's Merger & Acquisition Activity, and Microchip's Assurances to Atmel's Employees*

27.    The Plan Documents state that for a Definitive Agreement to constitute the "Initial Triggering Event" that would extend the Plan for 18 months, it must be entered into before November 1, 2015.  If no Definitive Agreement is entered into before November 1, 2015, the Plan would expire by its terms and no Atmel employees would be entitled to any Plan benefits.

28.    On September 19, 2015, Atmel executed a "Definitive Agreement" within the meaning of the Plan with Dialog Semiconductor plc ("Dialog"), under which Dialog agreed to acquire Atmel for $4.6 billion in cash and stock.  Atmel and Dialog entered into a formal "Agreement and Plan of Merger" ("Merger Agreement") on that date and publicly announced that Merger Agreement in press releases.  In September 2015, Atmel and Dialog identified their Merger Agreement in a Form 8-K filing and a Form 425 filing with the Securities and Exchange Commission ("SEC").

29.    The September 19, 2015 Atmel-Dialog Merger Agreement constituted a "definitive agreement that will result in a change of control of Atmel" within the meaning of the Severance Guarantee Plan.  Because this "Definitive Agreement" was executed before November 1, 2015, it constituted an "Initial Triggering Event" that automatically extended the Severance Guarantee Plan for 18 months from the execution date of the Definitive Agreement.  Therefore, if Atmel experienced a subsequent Change of Control and if Atmel employees were terminated without cause before March 19, 2017, those terminated employees would become entitled to the Plan's benefits pursuant to the express language of the Severance Guarantee Plan.

30.    Before Atmel executed its merger agreement with Dialog, it had also been engaged in merger discussions with defendant Microchip.  Microchip continued to express interest in merging with, or acquiring, Atmel; and before the scheduled January 2016 closing date of the proposed Atmel/Dialog merger, Microchip made an offer to acquire Atmel that Atmel's Board of Directors concluded was better than Dialog's offer.  In mid-January 2016, Atmel gave Dialog the opportunity to respond to Microchip's offer by improving the terms of its own offer to acquire Atmel.

31.    Atmel's employees became aware in or about mid-January 2016 that Microchip was attempting to acquire Atmel and that Microchip might replace Dialog as Atmel's merger partner.

1    Atmel's management was aware of the uncertainty this created, even though Atmel, as the creator

2    and Plan Administrator of the Severance Guarantee Plan, knew and understood that, because the

3    Initial Triggering Event had already occurred (in September 2015), Atmel's employees would be

4    entitled to the benefits guaranteed by the Severance Guarantee Plan if a Change of Control occurred

5    and if they were terminated without cause before March 19, 2017, regardless of which entity

6    eventually acquired Atmel.

7         32.    To alleviate employee concerns and to further the purposes underlying Atmel's

8    creation of the Plan, Atmel management acting as Plan fiduciaries, repeatedly assured its employees

9    orally and in writing in January 2016 and thereafter that, even if Microchip replaced Dialog as the

10   acquiring company, any employee terminated without cause after that acquisition and prior to March

11   19, 2017 would still be entitled to receive the severance benefits provided by the Severance

12   Guarantee Plan, just as if Dialog were the acquiring company, because an Initial Triggering Event

13   had occurred prior to November 1, 2015.

14        33.    On or about January 13, 2016, Atmel's Chief Executive Officer held a meeting with

15   Atmel employees who were employed at the Director level and above.  Plaintiffs Peter Schuman and

16   William Coplin attended this meeting.  After Atmel's CEO explained that Microchip had made a

17   better offer than Dialog's and that Atmel planned to give Dialog four days in which to make a

18   counter-offer, Atmel's CEO, acting a Plan fiduciary, reiterated to those employees that all severance

19   benefits provided by the Plan would remain available pursuant to the Plan, regardless of whether the

20   ultimate purchaser was Microchip or Dialog.

21        34.    On or about January 14, 2016, Atmel's Senior Vice President of Global Human

22   Resources, acting as a Plan fiduciary, sent a letter to numerous Atmel employees, noting widespread

23   speculation among employees about the potential acquisition of Atmel, confirming that the

24   Severance Guarantee Plan remained in effect, and emphasizing that the employees' eligibility for

25   severance benefits under that Plan would not be affected by the fact that Microchip might be

26   replacing Dialog as the acquiring company.  Atmel's January 14, 2016 letter expressly stated that the

27   "U.S. Severance Guarantee Program continues to remain in place" and would entitle employees to

28   severance benefits "in the event that your employment is involuntarily terminated without Cause in

---

Amended Class Action Complaint
4:16-CV-05544-HSG                                                                    9

1    connection with a Change of Control of the company, including an acquisition by Dialog or

2    Microchip."

3          35.    Between January and April 2016, many other members of Atmel management

4    similarly encouraged Atmel's employees to remain employed at Atmel and not look for jobs

5    elsewhere, by assuring those employees that they were fully covered by the severance benefit

6    guarantees provided by the Plan, regardless of whether Microchip was replacing Dialog as Atmel's

7    merger partner.

8          36.    Dialog did not make a new offer to acquire Atmel during the January 14-18, 2016

9    window. Because Microchip's offer was determined by Atmel's Board of Directors to be "superior"

10   to Dialog's offer, Atmel was entitled under the terms of its Merger Agreement with Dialog to

11   withdraw from that merger and to accept Microchip's acquisition offer instead. Atmel thereupon

12   withdrew from its agreement with Dialog and entered into a merger agreement with Microchip on or

13   about January 19, 2016 ("the Microchip Merger Agreement"). Atmel's merger with Microchip ("the

14   Merger") was originally scheduled to close in the spring of 2016 and did in fact close on April 4,

15   2016.

16         37.    During the winter of 2015-16 and the spring of 2016, before the Merger between

17   Atmel and Microchip closed, Atmel provided Microchip with all material documents relating to the

18   Severance Guarantee Plan in effect with its employees, including the Plan Documents and the

19   September 2015 Merger Agreement between Dialog and Atmel. Atmel also provided Microchip

20   with summaries and estimates of how much in severance pay and benefits would be owed to Atmel

21   employees under the Severance Guarantee Plan if Microchip acquired Atmel and then terminated

22   Atmel's covered employees without cause before March 19, 2017. Atmel, as the Plan's

23   Administrator and as the drafter the Plan, understood and believed throughout this period and

24   thereafter that the Initial Triggering Event under the Severance Guarantee Plan had occurred in

25   September 2015; that the Plan was therefore in effect until March 2017 and would remain in effect

26   with Microchip as the acquiring company; and that if Microchip acquired Atmel and terminated

27   Atmel employees without cause prior to March 2017, Microchip would be obligated to pay the

28   benefits under the Plan to those terminated employees.

38.     Between mid-January and April 4, 2016, Atmel, acting as a Plan fiduciary, interpreted the Plan and repeatedly communicated to Microchip its interpretation, understanding and belief, as the drafter and Plan Administrator of the Severance Guarantee Plan, that the Plan was in effect until mid-March 2017 and that Microchip would be obligated to pay the severance benefits provided by that Plan to all Atmel employees, including plaintiffs and class members herein, who were terminated without cause before March 19, 2017.  Microchip knew the terms of the Severance Guarantee Plan at the time the Merger closed; knew that an Initial Triggering Event had occurred in September 2015; knew that Atmel believed and intended (as the creator of the Plan and as the Plan Administrator) that the Plan remained in effect notwithstanding that Microchip had replaced Dialog as Atmel's acquiring company; and knew that Microchip would be obligated to pay all benefits guaranteed by the Plan if Microchip subsequently terminated plaintiffs and class members without cause before March 19, 2017.  Microchip also knew that Atmel management, acting as a Plan fiduciary, was communicating these beliefs and understandings to Atmel employees, and that Atmel was assuring its employees, including plaintiffs and class members, that they were entitled to receive, and would receive, the severance benefits guaranteed by the Plan if they were terminated without cause before March 19, 2017.

39.     Between mid-January and early April 2016, Microchip repeatedly, affirmatively, and deliberately caused Atmel management and Atmel employees to believe that Microchip, as the post-merger Plan Administrator, recognized the continued existence of the Severance Guarantee Plan, intended to honor the Severance Guarantee Plan, and would pay all severance benefits provided by the Plan to all Atmel employees terminated without cause before mid-March 2017.

40.     On or about February 3, 2016, Atmel management distributed to its employees a Frequently Asked Questions ("FAQ") memorandum regarding the Microchip transaction.  This memorandum, which was made available online for all Atmel employees, was entitled "Microchip Transaction: Effect on Compensation and Benefits for U.S. Employees."  The FAQ began with the question, "What happens to my employment and compensatory arrangements with Atmel after the closing?"  The FAQ answers that question by stating: "Microchip has agreed to honor each of your employment and compensatory contracts (including … severance … agreements) with Atmel, or its

subsidiaries, that are in effect immediately prior to the closing of the transaction."

41.    Microchip and its senior management, acting as a Plan fiduciary and/or because Microchip would function as a fiduciary that would exercise discretionary control over the operation or administration of the Plan once the merger closed, specifically reviewed and approved this FAQ before Atmel distributed it to Atmel's employees on or about February 3, 2016.  Microchip knew and understood that Atmel employees would read this FAQ and would understand and believe that Microchip was aware of the Severance Guarantee Plan; that Microchip understood that the Severance Guarantee Plan continued to exist; and that Microchip had agreed to pay the severance benefits set forth in the Plan to those Atmel employees who were terminated following Microchip's acquisition of Atmel, in accordance with the Plan's plain language.

42.    The Proxy Statement that Microchip and Atmel filed with the SEC in February 2016 referred to and incorporated the Microchip Merger Agreement between Microchip and Atmel.  That Proxy Statement stated: "Microchip has agreed, as of the Effective Time, to honor and perform all employment compensatory contracts between Atmel . . . and any Atmel employees . . . including all . . . employment compensation, severance . . . change in control and termination contracts disclosed to Microchip . . ."  Microchip assisted with drafting that Proxy Statement before its filing with the SEC and independently reviewed and approved the Proxy Statement's contents.  Microchip knew and understood that the Proxy Statement would reinforce Atmel employees' understanding and belief that Microchip would honor the Severance Guarantee Plan and would pay the severance benefits set forth in the Plan to those Atmel employees who were terminated following Microchip's acquisition of Atmel in accordance with the terms of the Plan.

43.    On February 29, 2016, three senior members of Microchip's finance team visited Atmel's corporate headquarters in San Jose, California to discuss the upcoming acquisition/merger between Microchip and Atmel: Microchip's Chief Financial Officer (Eric Bjornholt), its Director of Finance (Phil Kagel), and its Vice President of European Finance (Nawaz Sharif).  On the morning of February 29, 2016, these three Microchip executives met with the senior members of Atmel's Finance team (Director-level and above), comprising approximately 12 to 15 Atmel employees.  Plaintiff Peter Schuman was one of the Atmel employees who attended this meeting.  During this

1   meeting, which included a question-and-answer session regarding the upcoming Atmel-Microchip

2   merger, one of the Atmel employees asked the Microchip executives for confirmation that Microchip

3   would honor the Plan after the merger closed.  In response, Microchip's CFO (Mr. Bjornholt), acting

4   as a Plan fiduciary and/or because Microchip would function as a fiduciary that would exercise

5   discretionary control over the operation or administration of the Plan, assured the Atmel employees

6   that, if Microchip acquired Atmel and then terminated Atmel employees, Microchip would honor the

7   Plan.

8        44.     Later that same morning, Messrs. Bjornholt, Sharif, and Kagel held a second meeting

9   with a larger group of Atmel finance employees at Atmel's San Jose headquarters.  This meeting

10  was attended by all (or almost all) of Atmel's San Jose finance team, including plaintiff Schuman.

11  Approximately 50 to 60 Atmel employees attended that meeting.  During that second meeting, which

12  again focused on the upcoming merger between Atmel and Microchip, Mr. Bjornholt again, acting

13  as a Plan fiduciary and/or because Microchip would function as a fiduciary that would exercise

14  discretionary control over the operation or administration of the Plan, reiterated to the Atmel

15  employees that Microchip would honor the Plan if Microchip later terminated any Atmel employees.

16  Microchip's CFO made these statements and representations with the knowledge and intent that

17  Atmel employees would rely upon those statements and representations and would conduct

18  themselves with the understanding and belief that Microchip would honor the Plan and would

19  provide the severance benefits guaranteed by the Plan to any former Atmel employee terminated

20  without cause prior to March 19, 2017.

21       45.     Between mid-January and early April 2016, Atmel management, acting as a Plan

22  fiduciary, repeatedly, consistently, and expressly communicated to its employees that the Severance

23  Guarantee Plan was in effect notwithstanding that Microchip was replacing Dialog as Atmel's

24  merger partner, and that any Atmel employees terminated without cause following the acquisition by

25  Microchip would receive the severance benefits provided by the Severance Guarantee Plan.

26       46.     In accordance with the terms of the Plan, Atmel had thereby "made a decision or

27  taken action" with respect to the Plan and had made an "interpretation . . . of a term or condition" of

28  the Plan with respect to whether Atmel employees would remain eligible for Plan benefits if

Microchip became the acquiring company.   Atmel's interpretations and decisions regarding the Plan, which it communicated to plaintiffs and class members as Plan beneficiaries prior to the merger closing, were "conclusive and binding on all persons" under the terms of the Plan, and could not be contravened, rejected, or modified by Microchip after the merger.

47.    Atmel management also communicated to Atmel employees on many occasions between January and April 2016 that: a) Microchip was aware of the Severance Guarantee Plan: b) Microchip was aware of its obligation to pay severance benefits under the Severance Guarantee Plan if Microchip acquired Atmel and then terminated Atmel employees without cause during the covered period; and c) Microchip had agreed to honor the severance obligations under the Plan.  Microchip knew at the time of the closing of the merger and thereafter that Atmel had repeatedly told its employees that the Severance Guarantee Plan was in effect, that those employees would be paid the severance benefits under the Plan if they were terminated following the merger, and that Microchip had agreed to honor the Plan.

48.    At no time prior to the closing of the Microchip-Atmel merger on April 4, 2016 did Microchip suggest or indicate to Atmel or to any plaintiff or class member that Microchip had any understanding or interpretation of the Severance Guarantee Plan that was different than the interpretation that Atmel had communicated to its employees.  At no time prior to the closing of the Microchip-Atmel merger on April 4, 2016 did Microchip suggest or indicate to Atmel or to any plaintiff or class member that the Severance Guarantee Plan had "expired" or was otherwise not in effect.  Nor did Microchip ever suggest or indicate to Atmel or to any plaintiff or class member that Atmel employees would have no right to severance benefits under the Severance Guarantee Plan if Microchip terminated their employment without cause following the merger.  At no time prior to the closing of the Microchip-Atmel merger on April 4, 2016 did Microchip suggest or indicate to Atmel or to any plaintiff or class member that Microchip intended to terminate Atmel employees following the merger without providing the severance benefits guaranteed by the Plan or that it intended to assert that the Plan had "expired" or that Microchip had no obligation to pay terminated Atmel employees any of the severance benefits set forth in the Severance Guarantee Plan.  Microchip intended its pre-merger statements and actions to cause Atmel employees reasonably to understand

1  and believe that Microchip intended to pay the severance benefits set forth in the Plan upon

2  terminating any such employee without cause before March 19, 2017.

3    49.    Until April 4, 2016, plaintiffs and class members did not know, and had no reason to

4  know, that Microchip did not intend to, and would not, honor its obligations under the Severance

5  Guarantee Plan to pay the severance benefits guaranteed by the Plan to employees it terminated

6  without cause.

7                 ***Microchip's Post-Merger Conduct and Denial of Benefits under the Plan***

8    50.    Atmel became a wholly owned subsidiary of Microchip upon the April 4, 2016

9  effective date of the companies' merger.  That merger constituted a "Change of Control" within the

10  meaning of the Plan, entitling any former Atmel employee terminated without cause by Microchip

11  after the merger (but before March 19, 2017) to the severance benefits provided by the Severance

12  Guarantee Plan.  During the week immediately following the April 4, 2016 merger, Microchip

13  terminated dozens of Atmel employees without cause, including plaintiff Schuman.  Each of those

14  former Atmel employees thereby became entitled to the full amount of severance benefits provided

15  by the Plan.

16    51.    Even though Microchip had represented to Atmel and its employees for months that it

17  would honor the Severance Guarantee Plan, and even though Microchip deliberately caused Atmel

18  and its employees to rely to their detriment on Atmel's and Microchip's repeated representations that

19  Microchip would pay terminated employees the severance benefits provided by the Plan if they were

20  terminated without cause prior to March 19, 2017, Microchip's actual plan and intent was to falsely

21  assert that the Plan had "expired" on November 1, 2015 and to refuse to pay terminated employees

22  the severance benefits due to them under the Plan.  Notwithstanding Microchip's repeated

23  representations and assurances to Atmel and its employees, and despite Microchip's knowledge and

24  understanding that it was obligated to pay terminated employees the severance benefits set forth in

25  the Plan, Microchip did not make these severance payments.

26    52.    Following the April 4, 2016 merger closing date, Microchip acted as a Plan fiduciary

27  and/or functioned as a fiduciary that would exercise discretionary control over the operation or

28  administration of the Plan.  In violation of its fiduciary duties under ERISA, Microchip intimidated

---

Amended Class Action Complaint
4:16-CV-05544-HSG

1   and coerced Atmel employees after the April 4, 2016 merger, through false and misleading

2   representations and economic pressure, into waiving statutory rights and benefits and accepting

3   significant "discounts" on the severance benefits those employees were legally owed and guaranteed

4   under the Plan, in order to save Microchip money.

5        53.    Between April 4, 2016 and April 6, 2016, Microchip terminated numerous Atmel

6   employees without cause ("the Initial Terminated Employees").  On or about the time Microchip

7   terminated these employees, Microchip announced for the first time its position that the Severance

8   Guarantee Plan had "expired" on November 1, 2015 and that consequently, it had no obligation to

9   pay, and would not pay, the severance benefits provided by the Plan to any Initial Terminated

10  Employees.  Microchip further announced that, based on its position that the Plan had "expired" on

11  November 1, 2015 (because an Initial Triggering Event had not occurred within the meaning of the

12  Plan), no former Atmel employees would be entitled to any severance benefits under the Plan;

13  Microchip was not obligated to pay any severance benefits to any former Atmel employees under the

14  Plan; and that Microchip would not pay severance benefits to any former Atmel employees under the

15  Plan.

16       54.    On or about April 6, 2016, Microchip sent letters to the Initial Terminated Employees

17  in which it offered to pay them between four to six weeks of salary each as severance (or

18  alternatively to pay them no cash severance but instead to give them certain Restricted Stock Units)

19  if they would sign a release of all claims against Microchip and Atmel and their affiliates, including

20  a release of all claims based on the enforceability of the severance benefit provisions of the Plan

21  ("the April 6 Offer and Release").  Each Initial Terminated Employee was entitled to a substantially

22  greater amount of benefits under the Plan than the four to six weeks of salary (or Restricted Stock

23  Units) offered by Microchip, yet Microchip knowingly and intentionally represented falsely to the

24  Initial Terminated Employees that they had no right to severance benefits under the Plan and that the

25  Plan had ceased to exist.  Microchip also knowingly and intentionally failed to inform any of the

26  Initial Terminated Employees that: the Plan was still in existence and in effect; that the Initial

27  Terminated Employees had rights under ERISA because they were beneficiaries of the Plan

28  (including that they had a statutory right to file a claim for ERISA benefits under the Plan and a

---

Amended Class Action Complaint
4:16-CV-05544-HSG                                                                                    16

1   statutory right to appeal any denial of a claim for benefits under the Plan); and that pursuant to the

2   Plan and the statutory protections provided by ERISA, the Initial Terminated Employees were

3   entitled to substantially and materially greater benefits than Microchip was offering them under its

4   April 6 Offer and Release.  By these deliberate and knowing acts of omission and commission,

5   Microchip breached its fiduciary duties to plaintiffs and class members under ERISA.

6        55.    Microchip's offer to pay between four to six *weeks* of salary (or certain Restricted

7   Stock Units) as severance to the Initial Terminated Employees was an offer to pay only a small

8   fraction of the amount the Initial Terminated Employees were entitled to receive under the

9   Severance Guarantee Plan, which provided between four to six *months* of salary as severance

10  (depending on job level), plus a pro-rata portion of the employee's annual incentive bonus, plus

11  several months of paid COBRA premiums.

12       56.    Between approximately April 11, 2016 and April 13, 2016, Microchip sent the Initial

13  Terminated Employees (including plaintiff Schuman) a second letter, increasing its offer to pay them

14  severance benefits in the amount of 50% of the cash salary benefit that would be due under the Plan,

15  50% of the pro-rated bonus payments that would be due under the Plan, and 50% of the health

16  insurance premium payments that would be due under the Severance Guarantee Plan (the "April

17  50% Offer and Release").  The April 50% Offer and Release required the Initial Terminated

18  Employees to sign a release of all claims against Microchip and Atmel and their affiliates as a

19  condition of accepting this offer, including all claims based on the enforceability of the severance

20  benefit provisions of the Plan and all claims for the full amount of benefits due under the Plan.

21  Microchip knowingly and intentionally failed to inform any of the Initial Terminated Employees in

22  the April 50% Offer and Release or at any other time that:  the Plan was still in existence and in

23  effect; that the Initial Terminated Employees had rights under ERISA because they were

24  beneficiaries of the Plan (including that they had a statutory right to file a claim for ERISA benefits

25  under the Plan and a statutory right to appeal any denial of a claim for benefits under the Plan); and

26  that pursuant to the Plan and the statutory protections provided by ERISA, the Initial Terminated

27  Employees were entitled to substantially and materially greater benefits than Microchip was offering

28  them under its April 6 Offer and Release.  By these deliberate and knowing acts of omission and

1   commission, Microchip breached its fiduciary duties to plaintiffs and class members under ERISA.

2       57.     Microchip knowingly and intentionally misled and misrepresented to the Initial

3   Terminated Employees in its April 6 Offer and Release and in its April 50% Offer and Release that

4   the only severance benefits available to those Initial Terminated Employees were the benefits

5   Microchip offered in its April 6 Offer and Release and its April 50% Offer and Release, and that the

6   Initial Terminated Employees had no rights to the additional benefits provided by the Plan because

7   the Plan, according to Microchip's knowingly false representations, had ceased to exist.  Microchip

8   made these false, misleading, and fraudulent statements despite knowing that they were false, and

9   despite knowing that the Initial Terminated Employees were entitled to the severance benefits

10  provided by the Plan.  Microchip coerced, intimidated, and threatened the Initial Terminated

11  employees to accept its April 6 Offer and Release and the April 50% Offer and Release by falsely

12  informing them that if they did not sign Microchip's April 6 Offer and Release or the April 50%

13  Offer and Release, they would receive no severance benefits.  Microchip made these statements in a

14  deliberate effort to mislead, intimidate and coerce the Initial Terminated Employees into foregoing

15  their severance rights and into accepting a "discount" on the severance actually due to the Initial

16  Terminated Employees, as part of a calculated plan by Microchip to save itself money by wrongfully

17  refusing to pay the full severance benefits due under the Severance Guarantee Plan.  By these

18  deliberate and knowing acts of omission and commission, Microchip violated its fiduciary duties to

19  plaintiffs and class members under ERISA.

20      58.     As a result of Microchip's false and threatening statements and bad faith conduct,

21  many Initial Terminated Employees (including plaintiff Schuman) were coerced into signing the

22  April 50% Offer and Release.

23      59.     Most Atmel employees were not terminated in the first few days after the April 4,

24  2016 Merger, but continued to be employed by Microchip until later in 2016 or 2017 ("Continuing

25  Employees").  Each of those Continuing Employees who was terminated without cause before

26  March 19, 2017 is entitled to the full amount of severance benefits provided by the Severance

27  Guarantee Plan.  Between April 6, 2016 and March 19, 2017, Microchip terminated hundreds of

28  Continuing Employees without cause.  Yet Microchip, despite acting as a Plan fiduciary and/or

---

1  functioning as a fiduciary that would exercise discretionary control over the operation or

2  administration of the Plan, failed and refused to pay any such Continuing Employee the benefits

3  owed to those employees under the Plan.

4       60.    Between approximately April 11, 2016 and April 13, 2016, Microchip distributed to

5  each Continuing Employee a "new" severance agreement ("the Continuing Employee Diminished

6  Benefits Offer" or "CEDBO").  The terms of Microchip's CEDBO were similar in most material

7  respects to the terms of the April 50% Offer and Release that Microchip had distributed to the Initial

8  Terminated Employees.  Under the terms of the CEDBO, any Continuing Employee who was

9  terminated without cause by Microchip before March 19, 2017 would receive only 50% of the cash

10  salary benefit that would otherwise be due under the Plan, 50% of the pro-rated bonus payments that

11  would otherwise be due under the Plan, and 50% of the health insurance premium payments that

12  would otherwise be due under the Severance Guarantee Plan.  Microchip required each Continuing

13  Employee, as a condition of becoming eligible for any of the benefits offered by Microchip in the

14  CEBDO, to agree to: a) sign the CEDBO and b) upon his or her termination, to sign a modified

15  version of the April 50% Offer and Release ("the Continuing Employee 50% Offer and Release").

16  The CEDBO thus required Continuing Employees to release all claims against Microchip and its

17  affiliates, including all claims based on the enforceability of the severance benefit provisions of the

18  Plan and all claims for the full amount of benefits due under the Plan.

19       61.    Microchip knowingly and intentionally misled and misrepresented to the Continuing

20  Employees in the CEDBO and in the Continuing Employee 50% Offer and Release that the only

21  severance benefits available to those Continuing Employees were the benefits Microchip offered in

22  the CEDBO and in the Continuing Employee 50% Offer and Release, and that the Continuing

23  Employees had no rights to the additional benefits provided by the Plan because the Plan had ceased

24  to exist.  Microchip made these false, misleading, and fraudulent statements despite knowing that

25  they were false and despite knowing that the Continuing Employees were entitled to the severance

26  benefits provided by the Plan if they were terminated without cause before March 19, 2017.

27  Microchip coerced, intimidated, and threatened the Continuing Employees to accept its CEDBO and

28  its Continuing Employee 50% Offer and Release by falsely informing them that if they did not sign

1  Microchip's CEDBO and Continuing Employee 50% Offer and Release, they would receive no

2  severance benefits.  Microchip made these statements in a deliberate effort to mislead, intimidate and

3  coerce the Initial Terminated Employees into foregoing their severance rights, as part of a calculated

4  plan by Microchip to save itself money by wrongfully refusing to pay the full severance benefits due

5  under the Severance Guarantee Plan.  Microchip knowingly and intentionally failed to inform any

6  Continuing Employees in its CEDBO and in its Continuing Employee 50% Offer and Release, or at

7  any other time, that the Plan was still in existence and in effect, that the Continuing Employees had

8  rights under ERISA because they were beneficiaries of the Plan, or that pursuant to the Plan and the

9  statutory protections provided by ERISA, the Continuing Employees who were terminated without

10 cause before March 19, 2017 were entitled to substantially and materially greater benefits than

11 Microchip was offering them under its CEDBO and under its Continuing Employee 50% Offer and

12 Release.  By these deliberate and knowing acts of omission and commission, Microchip breached its

13 fiduciary duties to plaintiffs and class members under ERISA.

14      62.    As a direct and proximate result of Microchip's false and misleading statements,

15 threats, intimidation, and coercion, and its wrongful failure to convey complete and accurate

16 information about the benefits to which terminated employees were entitled under the Severance

17 Guarantee Plan, Microchip caused many Continuing Employees to sign the CEDBO in April 2016

18 and then to sign the Continuing Employee 50% Offer and Release upon their termination without

19 cause.

20      63.    Plaintiff Coplin signed the CEDBO in April 2016 and was subsequently terminated

21 without cause.  Following his termination without cause, plaintiff Coplin signed the Continuing

22 Employee 50% Offer and Release.

23      64.    No plaintiff or class member would have signed Microchip's April 6 Offer and

24 Release, its April 50% Offer and Release, its CEDBO, or its Continuing Employee 50% Offer and

25 Release (collectively the "Reduced Benefit Documents") if defendants had accurately informed that

26 employee of the employee's right to severance benefits under the Plan and if defendants had not

27 falsely stated that the Plan had ceased to exist and falsely represented that the employee had no right

28 to any severance benefits under the Plan.

---

Amended Class Action Complaint
4:16-CV-05544-HSG

65.     Some of the Atmel employees who were terminated after the April 4, 2016 merger did not sign any of the Reduced Benefit Documents.  Defendants refused to pay those individuals any of the severance benefits due to them under the Severance Guarantee Plan.  Some of these individuals submitted formal written claims to defendants pursuant to ERISA and the Severance Guarantee Plan, and demanded that defendants pay them the full severance benefits due to them under the Severance Guarantee Plan.  Despite having no justification for doing so, defendants deliberately and repeatedly delayed giving responses to these claims, in an effort to induce more terminated employees to accept fewer severance benefits than they were due under the terms of the Plan and in an effort to induce more terminated employees to sign unlawful and voidable releases. Defendants breached their fiduciary duties to plaintiffs and class members by deliberately and repeatedly delaying their responses to these formal written claims without justification and for these improper purposes, including by extending defendants' own time for responding to those claims and appeals from those claims, despite knowing from the outset that they intended to deny those claims and appeals on the ground that the Plan had ceased to exist as of November 1, 2015.

66.     Defendants wrongfully denied the written claims for benefits submitted by plaintiffs and class members who had refused to sign any of the Reduced Benefit Documents, falsely stating in their claim denial letters that: the Atmel employees were "not eligible for benefits" under the Plan because the Plan had "expired" on November 1, 2015 because the merger agreement between Microchip and Atmel was not the "same agreement" that Atmel had entered into with Dialog in September 2015.  After these terminated employees who had refused to sign any of the Reduced Benefit Documents filed appeals of these denials, defendants delayed responding until the last possible day for a response and then denied their appeals on the identical erroneous and wrongful grounds.

67.     Plaintiffs are informed and believe that at all relevant times herein, defendants Microchip, Atmel, and the Severance Guarantee Plan were the agents of each other, and were acting within the course and scope of such agency.  To the extent that said conduct and/or omissions were perpetrated by defendants and their agents, defendants confirmed and ratified said conduct and/or omissions.

*Claims & Appeals*

68.     On September 29, 2016, Schuman submitted a claim for benefits under the Severance Guarantee Plan to the Plan Administrator.  On September 30, 2016, Coplin submitted a claim for benefits under the Severance Guarantee Plan to the Plan Administrator.

69.     The Plan Administrator denied Schuman's and Coplin's claims for benefits under the Severance Guarantee Plan on December 19, 2016.  In the denial letters, Microchip's Human Resources Manager identified herself as the Plan Administrator and wrongfully stated that Schuman and Coplin were "not eligible for benefits" under the Plan because the Plan had "expired" on November 1, 2015 with respect to any acquiring entity other than Dialog, and because the merger agreement between Microchip and Atmel was not the "same agreement" that Atmel had entered into with Dialog in September 2015.  With respect to Schuman's and Coplin's requests that the releases they signed be rescinded, the denial letter stated that the releases are "not relevant to [their] claim for benefits" because Schuman and Coplin "are not eligible for benefits under the Atmel Severance Plan."  The letter further stated that Schuman and Coplin had "provided no basis to support your request for recission."

70.     On January 23, 2017, Schuman and Coplin submitted appeals to the Plan Administrator concerning the Plan Administrator's decision to deny their claims for benefits under the Severance Guarantee Plan and not to rescind the releases they had signed.

71.     On or about March 23, 2017, the Plan Administrator denied the appeals of Schuman and Coplin and again refused to pay them the benefits due under the Severance Guarantee Plan.  In the letters denying Schuman's and Coplin's appeals, Microchip's head of Human Resources again identified herself as the Plan Administrator and stated that Schuman's and Coplin's appeals were being denied because "[t]he agreement with respect to Dialog Semiconductor PLC referenced in your letter did not result in a "Change in Control."  Thus, you are not eligible for benefits . . ."  With respect to Schuman's and Coplin's renewed requests to rescind the releases they had signed, the denial letter stated: "The Plan Administrator does not consider your request for rescission a claim for benefits under the Atmel Severance Plan, so we do not address this issue."

72.     Schuman and Coplin have each exhausted their administrative remedies under the

1   Severance Guarantee Plan by submitting a claim for benefits to the Plan Administrator and by then

2   submitting an appeal to the Plan Administrator after the Plan Administrator denied their claims.

3      73.   On September 29, 2016, plaintiffs filed a Class Action Complaint in federal court.

4   On  December 22, 2016, pursuant to the parties' stipulation, the Court issued an order that stated in

5   relevant part, "Defendants will not assert that the failure to exhaust by any individual who is

6   "similarly situated" to the Named Plaintiffs (any employee who was or is terminated without cause

7   between April 4, 2016 and March 19, 2017 and agreed to sign or did sign a Severance Agreement

8   and Release, even if it is/was not the exact same Severance Agreement and Release form that

9   Schuman or Coplin signed) bars that individual's claims or gives rise to an affirmative defense to

10  that individual's claim."

11     74.   Plaintiffs are entitled to the full benefits due under the Severance Guarantee Plan, and

12  Defendants have wrongfully denied plaintiffs' claims for those full benefits.

13                          **CLASS ACTION ALLEGATIONS**

14     75.   <u>Proposed Classes, and the Nature of the Class Claims</u>.  Plaintiffs, as Class

15  Representatives, bring this action on their own behalf and on behalf of a proposed class comprising

16  all former U.S.-based employees of Atmel who were employed as of the April 4, 2016 closing date

17  of the Atmel-Microchip merger and who were terminated without cause between April 4, 2016 and

18  March 19, 2017.  If the facts obtained through discovery establish the appropriateness of subclasses

19  to distinguish among class members who have and have not yet been terminated without cause, or

20  among class members who did or did not execute the various releases that Microchip demanded they

21  sign, plaintiffs will amend this complaint or otherwise inform defendants and the Court of their

22  intent to pursue subclasses.

23     76.   The claims herein have been brought and may properly be maintained as a class

24  action under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) because all prerequisites of Rule

25  23(a) are satisfied (numerosity, commonality, typicality, and adequacy); defendants have acted or

26  refused to act on grounds that apply generally to the class, such that declaratory and injunctive relief

27  is appropriate for the class as a whole; common questions of law and fact predominate over any

28  questions affecting only individual class members, and a class action is superior to other available

---

Amended Class Action Complaint
4:16-CV-05544-HSG

methods for fairly and efficiently adjudicating the controversy.

77.    Numerosity.  The class and any potential subclasses are sufficiently numerous because the class is composed of approximately 1,700 former Atmel employees (including more than 500 Atmel employees who were terminated without cause after the April 4, 2016 merger) and each potential subclass includes dozens of members.  The identity of the class members and potential subclass members is ascertainable because those individuals are identified in Microchip's payroll and employment records.

78.    Predominant Common Questions of Law and Fact. There exist common questions of law and fact affecting the rights of all class members, and those common issues predominate over individualized issues.  Common questions applicable to the class include, but are not limited to:

(a)    Whether, under the Plan Documents, Atmel's definitive agreement with Dialog constituted an "Initial Triggering Event" that resulted in the Severance Guarantee Plan being extended for 18 months and remaining in effect after Atmel accepted Microchip's offer and a Change in Control occurred pursuant to Atmel's merger with Microchip;

(b)    Whether Microchip breached its fiduciary duties under ERISA and/or interfered with plaintiffs' and class members' exercise of ERISA rights by failing to tell them that they had the right to file an ERISA claim for benefits and by attempting to coerce class members to accept only a portion of the severance benefits to which they were (or would be) entitled under the Severance Guarantee Plan, despite knowing that Atmel employees terminated without cause after the merger were entitled to 100% of the severance benefits provided by the Plan;

(c)    Whether Microchip breached its fiduciary duties under ERISA and/or interfered with plaintiffs' and class members' exercise of ERISA rights by attempting to coerce class members to release claims against Microchip pursuant to the April 6 Offer and Release, the April 50% Offer and Release, or the Continuing Employee 50% Offer and Release, or by attempting to coerce

class members to sign the Continuing Employee Diminished Benefits Offer, despite knowing that Atmel employees terminated without cause after the merger were entitled to 100% of the severance benefits provided by the Plan;

(d)    Whether Microchip breached its fiduciary duty under ERISA and/or interfered with plaintiffs' and class members' exercise of ERISA rights by attempting to coerce class member to release claims against Microchip and Atmel and their affiliates pursuant to the April 6 Offer and Release, the April 50% Offer and Release, or the Continuing Employee 50% Offer and Release, or by attempting to coerce class members to sign the Continuing Employee Diminished Benefits Offer, without conveying complete and correct information about the Plan and its benefits, including the information that class members terminated without cause before March 19, 2017 were entitled to materially greater benefits under the Severance Guarantee Plan than Microchip was offering;

(e)    Whether Microchip and/or Atmel breached their fiduciary duties under ERISA and/or interfered with plaintiffs' and class members' exercise of ERISA rights by knowingly making false and misleading representations to class members before the Merger closed that Microchip would honor the terms of the Severance Guarantee Plan, thus causing class members to believe they would be entitled to the full amount of benefits provided by the Plan if they continued their employment until terminated without cause before March 19, 2017;

(f)    Whether Microchip should be equitably estopped from denying class members who were terminated without cause before March 19, 2017 the full amount of benefits due to such terminated employees under the Plan;

(g)    Whether, under the plain terms of the Plan, Microchip lacked the authority or right following the merger to contravene the pre-merger interpretation and decision and action by Atmel with respect to the issue of whether Atmel Plan

Amended Class Action Complaint
4:16-CV-05544-HSG

1    participants remained eligible for benefits under the Plan if Microchip rather

2    than Dialog were to become the acquiring company;

3    (h)    Whether plaintiffs and class members are entitled to declaratory, injunctive, or

4    other equitable relief, including the remedy of equitable surcharge, pursuant to

5    ERISA or at common law to remedy defendants' breaches of fiduciary duty,

6    wrongful, unfair, and unlawful conduct as alleged herein.

7    79.    <u>Typicality</u>. The claims of the named plaintiffs are typical of the claims of all class

8 members.  As more fully set forth herein, each plaintiff was employed by Atmel before the closing

9 date of Atmel's merger with Microchip and was eligible to participate in the Plan and to receive the

10 full amount of severance benefits provided by the Plan if terminated without cause before March 19,

11 2017.  Each plaintiff was misled and coerced into signing a release in exchange for severance

12 benefits, or the right to receive severance benefits, that were materially less than the benefits

13 plaintiffs were entitled to receive under the Plan; and no plaintiff would have signed such a voidable

14 release if defendants had complied with their fiduciary duty to provide true, accurate, and timely

15 information concerning the plaintiff's entitlement to the full amount of benefits provided by the Plan

16 if terminated without cause before March 19, 2017.  Plaintiff Schuman and plaintiff Coplin were

17 induced by Microchip to sign the April 50% Offer and Release and/or the CEDBO and/or the

18 Continuing Employee 50% Offer and Release.

19    80.    <u>Adequacy of Class Representation</u>. Plaintiffs can adequately and fairly represent the

20 interests of the class because their individual interests are consistent with, and not antagonistic to,

21 the interests of the other class members, and because they have retained counsel who possess the

22 requisite resources and ability to prosecute this case as a class action and are experienced attorneys

23 who have successfully litigated other similar class action cases.

24    81.    <u>Superiority of Class Action Mechanism</u>. Class certification is appropriate because

25 common questions of law and fact predominate over any questions affecting only individual class

26 members.  Defendants' liability in this action is based on a uniform policy and practice, a uniform

27 set of Offers and Releases, and legal questions applicable to all class members. The amount of

28 restitution or other economic recovery owed to each individual class member is small in relation to

Amended Class Action Complaint
4:16-CV-05544-HSG

1   the expense and burden of individual litigation to recover those amounts.  The amount of restitution

2   or other economic recovery owed to each individual class member is easy to calculate because

3   defendants offered all class members, in writing, 50% of the full amount to which they are entitled

4   under the Severance Guarantee Plan.  The prosecution of separate actions against defendants by

5   individual class members would create a risk of inconsistent or varying adjudications that would

6   establish incompatible standards of conduct for defendants.  For these and other reasons, a class

7   action is superior to other methods for the fair and efficient adjudication of the controversy set forth

8   in this Complaint.

### FIRST CAUSE OF ACTION

**Breach of Fiduciary Duties and the Remedies of Equitable Relief,
Equitable Estoppel, Surcharge, and Disgorgement
(ERISA Section 502(a)(3), 29 U.S.C. §1132(a)(3))**

12          82.     Plaintiffs incorporate herein by specific reference, as though fully set forth, the

13   allegations in paragraphs 1 through 81.

14          83.     The Severance Guarantee Plan is a "plan" within the meaning of ERISA.

15          84.     At all relevant times, defendants have been fiduciaries with respect to the Plan's

16   participants, including plaintiffs and class members, and/or functioned as fiduciaries because they

17   exercised discretionary control over the operation or administration of the Plan.  Defendants

18   knowingly participated in each breach of fiduciary duty alleged herein.  Defendants owe all Plan

19   participants a duty of loyalty, which includes the duty to convey complete and accurate information

20   when communicating to Plan participants about benefits under the Severance Guarantee Plan, and

21   the duty not to make misrepresentations or misleading statements or omissions when communicating

22   to Plan participants about benefits under the Plan.

23          85.     Between the September 17, 2015 Initial Triggering Event and the April 4, 2016

24   merger closing date, defendants communicated with the Severance Guarantee Plan's participants

25   regarding those participants' benefits under the Plan, and repeatedly and knowingly made material

26   misrepresentations and misleading statements and omissions to the Plan participants about

27   defendants' intent and willingness to provide the benefits due under the Plan.  Defendants falsely

28   and misleadingly stated that they intended to honor the terms of the Plan and deliberately caused

1    Plan participants to believe that defendants would provide all benefits described in the Plan

2    Documents.  When defendants made those statements and deliberately caused the Plan participants

3    to believe that defendants intended to provide the full amount of severance benefits set forth in the

4    Plan to all participants who were terminated without cause before March 19, 2017, including

5    plaintiffs and class members, defendants had no such intention of honoring the Plan's terms or of

6    providing the benefits set forth in the Plan.  Defendants were fully aware and understood before the

7    merger closed that Atmel, as the drafter and creator of the Plan and as the Plan Administrator,

8    believed and understood that the Plan was intact and in existence, and that Atmel further believed

9    and understood that if Microchip acquired Atmel, the Plan's participants who were terminated

10   without cause before March 19, 2017 would be entitled to receive all benefits set forth in the Plan

11   Defendants were also fully aware and understood before the merger closed that defendants were

12   communicating these beliefs to the Plan participants.  Defendants were fully aware and understood

13   before the merger closed that defendants had caused Plan participants to believe that Microchip had

14   the same understanding and belief as Atmel with respect to the Plan being intact and in existence and

15   with respect to the right of Plan participants to receive the benefits of the Plan if those participants

16   were terminated without cause before March 19, 2017.  At no time prior to the merger closing did

17   defendants or any of them suggest or indicate to the Plan participants that Microchip had any

18   different interpretation or understanding of the Plan than Atmel had presented to those participants.

19   After the merger closed, Microchip had no authority or right, based on the language of the Plan and

20   otherwise, to construe or re-interpret the Plan in a manner that contravened Atmel's pre-merger

21   interpretation or in a manner that required the Plan Administrator to deny benefits to Plan

22   participants who were entitled to severance benefits under the Plan as previously construed and

23   interpreted by Atmel as the drafter and prior Plan Administrator of the Plan.

24           86.     The April 6 Offer and Release, April 50% Offer and Release, CEDBO, and

25   Continuing Employee 50% Offer and Release (collectively "the Reduced Benefit Documents"), each

26   offered severance benefits to Plan participants, including plaintiffs and class members, that were

27   substantially and materially lower in value than the benefits to which those participants were entitled

28   under the Severance Guarantee Plan.  Defendants unlawfully and in breach of their fiduciary duties

offered those reduced benefits to Plan participants, including plaintiffs and class members, only in exchange for a general release of all claims against Microchip and Atmel and their affiliates.  At no time after the merger closing date did defendants communicate to Plan participants, including plaintiffs and class members, the truth that the Severance Guarantee Plan was still in existence and in effect; that Plan participants had rights under ERISA because they were beneficiaries of the Plan, including the right to file a claim for ERISA benefits under the Plan and the right to appeal any denial of a claim for benefits under the Plan; and that pursuant to the Plan and the statutory protections provided by ERISA, that Plan participants were entitled to substantially and materially greater benefits than Microchip was offering them under the Reduced Benefits Documents.

87.     When defendants falsely represented to Plan participants that the Severance Guarantee Plan was in effect and would provide severance benefits under its terms to all participants who were terminated without cause between the merger close date and March 19, 2017, defendants knew that after the Merger closed on April 4, 2016 defendants would: a) falsely represent to Plan participants that the Plan had expired; 2) falsely claim that Atmel employees had no right to any benefits under the Plan; 3) falsely claim that defendants had no obligation to pay any benefits under the Plan and 4) refuse to pay employees terminated without cause before March 19, 2017 the benefits provided by the Plan.  Defendants also knew that they would attempt to threaten, intimidate, and coerce Plan participants into executing releases of claims for Plan benefits and accepting far less in severance benefits than those employees were or would be entitled to receive under the Plan, by means of making the false representations above.

88.     Defendants' failure to convey complete and accurate information about the benefits to which Plan participants were entitled under the Severance Guarantee Plan when defendants presented those participants with the Reduced Benefit Documents, caused those participants to be materially misinformed as to whether, and in what amount, they were or would be entitled to severance benefits under the Plan.  Defendants knowingly and deliberately failed to inform Plan participants that they were actually entitled to greater severance benefits than those offered in exchange for their execution of the Reduced Benefit Documents.  Defendants also falsely and/or fraudulently stated or implied, in presenting the Reduced Benefit Documents to Plan participants,

1    that the Plan had "expired" and that the Plan participants were not entitled to any benefits under the

2    Plan, even though defendants knew and understood at the time that those participants were entitled

3    to 100% of the benefits provided by the Plan if they were terminated without cause before March 19,

4    2017, and even though defendants knew and understood that they had deliberately caused those

5    participants to believe before the Merger closed that they would receive 100% of the benefits

6    provided by the Plan if terminated without cause before March 19, 2017.

7          89.    Defendants breached their fiduciary duty to Plan participants by engaging in the acts

8    and omissions described above, including by: a) failing to disclose prior to the Merger that

9    defendants intended not to provide the benefits described in the Plan; b) affirmatively

10   misrepresenting that defendants would honor the Severance Guarantee Plan when defendants did not

11   intend to do so; c) deliberately misleading those participants into believing that defendants would

12   pay the full amount of severance benefits provided by the Plan to all participants who were

13   terminated without cause before March 19, 2017; d) failing to pay the full amount of severance

14   benefits provided by the Plan to all participants who were terminated without cause before March

15   19, 2017; e) representing that the Plan had expired, thus preventing claims from even being

16   submitted; f) continuing to seek unlawful, voidable releases of claims from plaintiffs and class

17   members even after having been put on notice that such efforts were unlawful and a breach of

18   defendants' fiduciary duties; g) delaying without justification their response to plaintiffs' efforts to

19   exhaust administrative remedies under ERISA in order to avoid and delay paying benefits legally

20   due; h) delaying without justification their response to plaintiffs' claims in an effort to get more

21   employees to accept fewer severance benefits than they were due under the terms of the Plan; i)

22   purporting to "re-interpret" the Plan after the Merger in a manner that contravened the interpretation

23   and decision previously made by Atmel prior to the merger with respect to the issue of Plan

24   participants' entitlement to benefits in the event that Microchip replaced Dialog as the acquiring

25   company, even though defendants had no authority or right to do so following the Merger under the

26   express language of the Plan; j) failing to inform Plan Participants who were terminated without

27   cause that they had rights under ERISA because they were beneficiaries of the Plan, including the

28   right to file a claim for ERISA benefits under the Plan and the right to appeal any denial of a claim

for benefits under the Plan; k) failing to inform Plan participants who were terminated without cause that they were entitled to substantially and materially greater benefits than Microchip was offering them under the Reduced Benefit Documents; and l) attempting to obtain a discount on the full amount of benefits due to Plan Participants under the Plan, even though defendants understood and believed that Plan Participants who were terminated without cause prior to March 19, 2017 were entitled to the full amount of benefits under the Plan.

90. None of defendants' Reduced Benefit Documents refer to, mention, or identify ERISA or advise Plan participants, including plaintiffs and class members, that those participants have any rights under ERISA or any right to benefits under ERISA and/or the Severance Guarantee Plan. Nor do any of defendants' Reduced Benefit Documents specifically refer to or identify the Severance Guarantee Plan or specifically disclose that accepting any Reduced Benefit Documents is tantamount to waiving the severance benefits to which the terminated employee is entitled under the Severance Guarantee Plan.

91. Defendants' acts and omissions as set forth above constitute a breach of defendants' fiduciary duties under Section 404(a) of ERISA, 29 U.S.C. §1104(a).

92. Plaintiffs and class members have suffered economic and other harm as the direct and proximate result of defendants' false and misleading statements, omissions, and commissions alleged herein, including defendants' conduct in inducing plaintiffs and class members to remain employed by Atmel and Microchip by promising benefits that defendants did not intend to provide and did not provide, and defendants' conduct in denying the existence of Plan benefits to Plan participants and as part of a scheme to defraud Plan participants into executing waivers of their right to obtain the benefits provided by the Plan.

93. Plaintiffs and class members have suffered and will continue to suffer irreparable harm if defendants are not preliminarily and permanently enjoined from: a) enforcing any releases obtained from such plaintiffs and class members as a result of defendants' false and misleading statements, omissions, and commissions alleged herein; b) failing to pay the full amount of Plan benefits to Plan participants who were terminated without cause between the Merger close date and March 19, 2017; c) continuing to seek releases of claims for Plan benefits from plaintiffs and class

1    members; and d) continuing to administer the Plan in bad faith, as alleged herein.

2        94.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, plaintiffs and class

3    members are entitled to a declaration that the Plan exists and is valid and enforceable, that any

4    releases obtained by defendants' misrepresentations and other wrongful conduct are voidable and

5    unenforceable, and that all Plan participants, including plaintiffs and class members, are entitled to

6    receive the full amount of benefits provided by the Plan if they were, or are, terminated without

7    cause by defendants at any time between the Merger close date and March 19, 2017.

8        95.    Pursuant to Section 502(a) of ERISA, 29 U.S.C. §1132(a)(3), plaintiffs and class

9    members are entitled to void the releases and Reduced Benefit Documents obtained by defendants

10   through the misrepresentations, breaches of fiduciary duty, and other wrongful conduct alleged

11   herein, and restitution of the full amount of benefits to which they would otherwise be entitled under

12   the Plan if they were terminated without cause by defendants between the Merger close date and

13   March 19, 2017.  Plaintiffs and class members are further entitled to an order equitably estopping

14   defendants from disputing the Plan participants' entitlement to the full amount of severance benefits

15   provided by the Severance Guarantee Plan if those participants were terminated without cause by

16   defendants at any time between the Merger close date and March 19, 2017.

17       96.    Pursuant to Section 409 of ERISA, 29 U.S.C. §1109(a) and Section 502(a) of ERISA,

18   29 U.S.C. §1132(a), plaintiffs are entitled to the removal and replacement of Microchip as Plan

19   Administrator with a new and different Plan Administrator that complies with its fiduciary

20   obligations to Plan participants.

21       97.    Because defendants benefited from their own fiduciary breaches at the expense of the

22   Plan participants, including plaintiffs and class members, by paying Plan participants a lower

23   amount of severance benefits than those participants were entitled to under the Severance Guarantee

24   Plan, plaintiffs are entitled to recover as an equitable surcharge the difference between what

25   defendants paid them in severance benefits and what defendants should have paid them in severance

26   benefits, disgorgement of profits gained as a result of such breaches, plus interest and attorneys'

27   fees.

28   ///

---

Amended Class Action Complaint
4:16-CV-05544-HSG                                                                          32

**SECOND CAUSE OF ACTION**
**Claim for Plan Benefits**
**(ERISA Section 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) )**

98.     Plaintiffs incorporate herein by specific reference, as though fully set forth, the allegations in paragraphs 1 through 97.

99.     ERISA § 502(a) (1) (B) (29 U.S.C. § 1132 (a) (1) (B)), permits participants in a plan to bring a civil action to recover benefits due them under the terms of a plan, to enforce their rights under the terms of a plan, and/or clarify their rights to future benefits under the terms of a plan.

100.     By engaging in the acts and omissions alleged herein, including failing to pay Severance Guarantee Plan benefits to plaintiffs and class members despite these former Atmel employees' compliance with all of the terms of the Severance Guarantee Plan and their eligibility for benefits thereunder; falsely and fraudulently informing plaintiffs and class members that the Plan had ceased to exist and that the Plan's benefits were no longer available; falsely and fraudulently informing plaintiffs and class members that the only way a terminated employee could become eligible for even a considerably less attractive package of severance benefits would be for that employee to execute a broad release waiving any and all claims against defendants, including a claim for the full amount of benefits guaranteed by the Plan; relying on a standard of proof not articulated in the Plan's provisions; purporting to "re-interpret" the Plan after the Merger in a manner which contravened the interpretation and decision previously made by Atmel prior to the merger with respect to the issue of Plan participants' entitlement to benefits in the event that Microchip replaced Dialog as the acquiring company, even though Microchip had no authority or right to do so following the Merger under the express language of the Plan; interpreting the Plan in contravention of the plain language of the Plan, including imposing conditions for eligibility which do not exist in the Plan, in a bad faith effort to save itself money and deprive Plan participants of benefits to which the Plan participants were entitled, refusing to provide plaintiffs with documentation to substantiate its decision to deny benefits; failing to produce documents to which plaintiffs were entitled pursuant to ERISA and the applicable Department of Labor Regulations; and by failing to make a timely decision on plaintiffs' claims, defendants have violated, and continue to violate, the terms of the Severance Guarantee Plan and plaintiffs' rights thereunder.

---

### THIRD CAUSE OF ACTION
**Interference with Exercise of ERISA Rights**
**(ERISA Section 510, 29 U.S.C. §1140)**

101.    Plaintiffs incorporate herein by specific reference, as though fully set forth, the allegations in paragraphs 1 through 100.

102.    ERISA § 510 (29 U.S.C. § 1140) permits participants in a plan to bring a civil action for interference with exercise of ERISA rights and to recover payments they are owed under a plan or that they would be owed under a plan absent such interference and to obtain equitable remedies such as restitution, imposition of constructive trusts, disgorgement, injunctions, and/or specific performance.

103.    By engaging in the acts and omissions alleged herein, including failing to pay plaintiffs Severance Guarantee Plan benefits despite their compliance with all of the terms of the Severance Guarantee Plan and their eligibility for benefits thereunder; falsely and fraudulently informing plaintiffs and class members that the Plan had ceased to exist and that the Plan's benefits were no longer available; falsely and fraudulently informing plaintiffs and class members that the only way a terminated employee could become eligible for even a considerably less attractive package of severance benefits would be for that employee to execute a broad release waiving any and all claims against defendants, including a claim for the full amount of benefits guaranteed by the Plan; purporting to "re-interpret" the Plan after the Merger in a manner which contravened the interpretation and decision previously made by Atmel prior to the merger with respect to the issue of Plan participants' entitlement to benefits in the event that Microchip replaced Dialog as the acquiring company, even though Microchip had no authority or right to do so following the Merger under the express language of the Plan; and by interpreting the Plan in contravention of the plain language of the Plan, including imposing conditions for eligibility which do not exist in the Plan, in a bad faith effort to save itself money and deprive Plan participants of benefits to which the Plan participants were entitled, defendants have violated, and continue to violate, the terms of the Severance Guarantee Plan and plaintiffs' rights thereunder.

104.    At all times relevant herein, Defendants acted with the intent to interfere with plaintiffs' and class members' rights under ERISA.

105.    Defendants' acts and omissions as set forth above constitute intentional interference with exercise of plaintiffs' ERISA under Section 510 of ERISA, 29 U.S.C. §1140.

106.    Plaintiffs and class members have suffered economic and other harm as the direct and proximate result of defendants' intentional interference with their ERISA rights, false and misleading statements, omissions, and commissions alleged herein, including defendants' conduct in inducing plaintiffs and class members to remain employed by Atmel and Microchip by promising benefits that defendants did not intend to provide and did not provide, and defendants' conduct in denying the existence of Plan benefits to Plan participants and as part of a scheme to defraud Plan participants into executing waivers of their right to obtain the benefits provided by the Plan.

107.    Plaintiffs and class members have suffered and will continue to suffer irreparable harm if defendants are not preliminarily and permanently enjoined from: a) enforcing any releases obtained from such plaintiffs and class members as a result of defendants' false and misleading statements, omissions, and commissions alleged herein; b) failing to pay the full amount of benefits provided by the Plan to Plan participants, including plaintiffs and class members herein, who were terminated without cause between the Merger close date and March 19, 2017; c) continuing to seek releases of claims for Plan benefits from plaintiffs and class members; and d) continuing to administer the Plan in bad faith, as alleged herein.

108.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, plaintiffs and class members are entitled to a declaration that the Plan exists and is valid and enforceable, that any releases obtained by defendants as a result of defendants' misrepresentations and other wrongful conduct are void and unenforceable, and that all Plan participants, including plaintiffs and class members, are entitled to receive the full amount of benefits provided by the Plan if they were terminated without cause by defendants at any time between the Merger close date and March 19, 2017.

109.    Pursuant to Section 510 of ERISA, 29 U.S.C. §1140, plaintiffs and class members are entitled to void the releases and Reduced Benefit Documents obtained by defendants through the misrepresentations, intentional interference with ERISA rights, breaches of fiduciary duty, and other wrongful conduct alleged herein, and restitution of the full amount of benefits to which they would

1   otherwise be entitled under the Plan if they were terminated without cause by defendants between

2   the Merger close date and March 19, 2017, and defendants should be equitably estopped from

3   disputing the Plan participants' entitlement to the full amount of severance benefits provided by the

4   Severance Guarantee Plan if those participants were terminated without cause by defendant at any

5   time between the Merger close date and March 19, 2017.

6       110.    Pursuant to Section 409 of ERISA, 29 U.S.C. §1109(a) and Section 502(a) of ERISA,

7   29 U.S.C. §1132(a), plaintiffs are entitled to the removal and replacement of Microchip as Plan

8   Administrator with a new and different Plan Administrator that complies with its fiduciary

9   obligations to Plan participants.

10      111.    Because defendants benefited from their own intentional interference with plaintiffs

11  and class members ERISA rights, fiduciary breaches at the expense of the Plan participants,

12  including plaintiffs and class members, by paying Plan participants a lower amount of severance

13  benefits than those participants were entitled to under the Severance Guarantee Plan, plaintiffs are

14  entitled to recover as an equitable surcharge the difference between what defendants paid them in

15  severance benefits and what defendants should have paid them in severance benefits, disgorgement

16  of profits gained as a result of such interference, plus interest and attorneys' fees.

17                          **PRAYER FOR RELIEF**

18          WHEREFORE, Plaintiffs pray for relief as follows:

19      1.      For certification of the action as a class action under Rules 23(b)(2) and (b)(3);

20      2.      For an order appointing plaintiffs as class representatives and plaintiffs' counsel as

21  class counsel;

22      3.      For an order declaring that that defendants violated the terms of the Plan and

23  plaintiffs' rights thereunder by failing to pay plaintiffs the full amount of severance benefits due

24  under the Plan;

25      4.      For an order requiring defendants to pay plaintiffs and class members all severance

26  benefits due pursuant to the terms of the Plan;

27      5.      For an injunction against defendants, preliminarily and permanently enjoining them

28  from: a) enforcing any releases obtained from plaintiffs and class members as a result of defendants'

---

Amended Class Action Complaint
4:16-CV-05544-HSG                                                          3

false and misleading statements, omissions, and commissions alleged herein, b) failing to pay the full amount of benefits provided by the Plan to Plan participants, including plaintiffs and class members herein, who were terminated without cause by defendants between the Merger close date and March 19, 2017; c) continuing to seek releases of claims for Plan benefits from plaintiffs and class members; and d) continuing to administer the Plan in bad faith, as alleged herein.

6.     For a declaration that the Plan exists and is valid and enforceable, that any releases obtained by defendants' misrepresentations and other wrongful conduct are voidable and unenforceable, and that all Plan participants, including plaintiffs and class members, are entitled to receive the full amount of benefits provided by the Plan if they were terminated without cause by defendant at any time between the Merger close date and March 19, 2017;

7.     For a declaration that, after the Merger, defendants had no authority or right under the Plan to make an interpretation of the Plan or a decision regarding benefits or other terms or conditions of the Plan which contravened or was different from the interpretation or decision made by Atmel prior to the Merger as the drafter of the Plan and as the Plan Administrator prior to the Merger;

8.     For an order voiding all releases and Reduced Benefit Documents obtained by defendants through their misrepresentations, breaches of fiduciary duty, and other wrongful conduct, and restitution of the full amount of benefits to which plaintiffs and class members would otherwise be entitled under the Plan if they were terminated without cause by defendants between the Merger close date and March 19, 2017;

9.     To the extent that any Plan language is found to be ambiguous, for an order equitably estopping defendants from disputing the Plan participants' entitlement to the full amount of severance benefits provided by the Severance Guarantee Plan if those participants were, or are, terminated without cause by defendant at any time between the Merger close date and March 19, 2017.

10.     For the equitable relief of surcharge, including the return of the financial benefits Defendants gained by breaching their fiduciary duties to Plaintiffs and the proposed Subclasses;

11.     For disgorgement of profits gained as a result of fiduciary breaches and/or

interference;

12.    For interest on all sums awarded;

13.    For attorneys' fees and the costs of action in an amount the Court determines to be reasonable, pursuant to ERISA Section 502(g)(1), 29 U.S.C. §1132(g)(1), and any other applicable provisions providing for attorneys' fees and costs;

14.    For such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: March 31, 2017              **ALTSHULER BERZON LLP**
                                   MICHAEL RUBIN
                                   CONNIE K. CHAN
                                   RAPHAEL N. RAJENDRA


                                   **MCGUINN, HILLSMAN & PALEFSKY**
                                   CLIFF PALEFSKY
                                   KEITH EHRMAN


                                   By: _____/s/ Keith Ehrman_____