UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER SCHUMAN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>MICROCHIP TECHNOLOGY INCORPORATED, et al.,<br><br>    Defendants. | Case No. 16-cv-05544-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS COUNTERCLAIM**<br><br>Re: Dkt. No. 76 |

Pending before the Court is Plaintiffs' motion to dismiss Defendants' counterclaim. *See* Dkt. No. 76 ("Mot."). For the following reasons, the Court **GRANTS** the motion to dismiss, without leave to amend.

**I. BACKGROUND**

Plaintiffs Peter Schuman and William Coplin ("Plaintiffs") originally filed this putative class action in September 2016, alleging violations of the Employee Retirement Income Security Act ("ERISA"). *See* Complaint, Dkt. No. 1. In short, Plaintiffs claimed that their former employer Atmel Corporation ("Atmel"), its merger partner Microchip Technology, Inc. ("Microchip"), and the Atmel Corporation U.S. Severance Guarantee Benefit Program (the "Plan") failed to honor the terms of an employee severance agreement. *See* Amended Class Action Complaint ("Am. Compl."), Dkt. No. 29 ¶¶ 1–2.

In response, Atmel and Microchip (for the purposes of this order, "Defendants") brought a counterclaim against Plaintiffs. *See* Microchip's First Amended Answer to Amended Complaint and Counterclaim for Equitable Relief ("Counterclaim"), Dkt. No. 59; Atmel's First Amended Answer to Amended Complaint and Counterclaim for Equitable Relief, Dkt. No. 60. Plaintiffs moved to dismiss. *See* Mot.

### A. Factual Allegations

For the purposes of this motion to dismiss, the Court must accept the following facts, as alleged in Defendants' counterclaim, as true. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Plaintiffs are former employees of Atmel. *See* Counterclaim ¶ 3.[1] In 2015, Atmel made a guarantee to its employees that if their employment was terminated and certain conditions were met, it would pay them severance benefits. *Id.* ¶ 4. This was the original "Atmel Plan," which was governed by ERISA. *Id.*

Microchip acquired Atmel on April 6, 2016. *Id.* ¶ 5. After the acquisition, some Atmel employees claimed that they were eligible for benefits under the Atmel Plan. *Id.* ¶ 7. But in Defendants' view, the Atmel Plan had expired. *Id.* ¶ 7. Nevertheless, "to resolve the continuing dispute with these Atmel employees," Defendants offered employees the opportunity to receive different severance benefits if they were terminated. *Id.* This was the "Second Atmel Plan." *Id.* Employees had 45 days to decide whether to accept it. *Id.* ¶ 9. In exchange for accepting the Second Atmel Plan, these employees "agreed to execute a release of any claims they might have against 'Microchip, Atmel, and their affiliates, and subsidiaries.'" *Id.* The release in the Second Atmel Plan provided that:

> You agree to release the Company, its subsidiaries and affiliates, and its and their officers, agents and employees from any liability related to or arising out of your employment with any of them. This includes a release of any liability for claims of any kind that you ever had or may have at this time, whether you know about them or not. This release is as broad as the law allows and includes a release of claims under federal and state laws, such as anti-discrimination, harassment and retaliation laws and expressly includes any claims under the Age Discrimination in Employment Act. This release also includes a release of any tort and contract claims, and any other claims that could be asserted under federal, state or local statutes, regulations or common law.

Motion to Dismiss Plaintiffs' Amended Class Action Complaint, Dkt. No. 33-1, Ex. 4 at 2.[2]

---

[1] For simplicity, this order will cite to Microchip's Answer and Counterclaim, Dkt. No. 59, unless otherwise noted. The counterclaim in Atmel's Answer is materially identical. *See* Dkt. No. 60.

[2] The Court finds that the release, though not attached as an exhibit to Defendants' counterclaim, is incorporated by reference. The incorporation by reference doctrine allows a court "to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [movant's] pleading." *Knievel v. ESPN*,

2

1 Plaintiffs signed the severance agreement and release. *Id.* ¶ 12.[3] Between April 6, 2016
2 and March 18, 2017, Atmel terminated Plaintiffs' employment. *Id.* ¶ 3. After their termination,
3 Plaintiffs were paid according to the terms of the Second Atmel Plan. *Id.* ¶ 16.

Even though they signed the severance agreements and releases (and accepted severance benefits) under the Second Atmel Plan, Plaintiffs still brought suit. *Id.* ¶ 21. Plaintiffs did not tender back their benefits and never intended to keep their promises; rather, they "intended to deceive" Defendants. *Id.* ¶¶ 22–24. Defendants reasonably relied on Plaintiffs' promises, but Plaintiffs "have kept [their] benefits" despite "not honor[ing] their promises." *Id.* ¶ 25–26. Defendants have been financially injured by Plaintiffs' fraudulent promises, *id.* ¶ 27, but ERISA does not allow them to obtain money damages, *id.* ¶ 38. Defendants "have reasonably concluded that Plaintiffs are dissipating the benefits" they received under the Second Atmel Plan. *Id.* ¶ 32.

Based on these allegations, Defendants brought a counterclaim for equitable relief under ERISA Section 502(a)(3). *Id.* ¶¶ 36–41. Defendants seek an injunction to prevent Plaintiffs from dissipating benefits received, an order equitably estopping Plaintiffs from continuing to pursue their claims, interest on any sums awarded, and attorneys' fees and costs. *See* Counterclaim, Prayer for Relief ¶¶ 1–5.

### B. Procedural History

Plaintiffs filed their amended complaint on March 31, 2017. *See* Dkt. No. 29. Atmel, Microchip, and the Plan filed a motion to dismiss on April 28, *see* Dkt. No. 33, which the Court granted in part and denied in part on February 6, 2018, *see* Dkt. No. 54.

Atmel, Microchip, and the Plan answered the amended complaint on March 20, 2018. *See* Dkt. Nos. 56, 57, 58. Atmel and Microchip filed amended answers, in which they raised a counterclaim, on April 10. *See* Dkt. Nos. 59, 60. Plaintiffs moved to dismiss the counterclaim on

---

393 F.3d 1068, 1076 (9th Cir. 2005) (internal quotation omitted). Here, the release—which Defendants attached as an exhibit to their earlier motion to dismiss—"forms the basis" of their claim that Plaintiffs are acting in violation of the release agreement, and thus it is incorporated by reference. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

[3] In contrast, the plaintiffs in a related action, *Berman v. Microchip Technology Inc.*, Case No. 4:17-cv-01864-HSG, did not sign the severance agreement and release but instead filed claims for benefits under the Atmel Plan. *See* Counterclaim ¶ 13.

May 31. *See* Mot. Defendants filed an opposition on July 16, *see* Dkt. No. 84 ("Opp."), and Plaintiffs replied on July 23, *see* Dkt. No. 85 ("Reply"). The Court held a hearing on September 13, after which it took Plaintiffs' motion under submission. *See* Dkt. No. 95.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A party may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). And even where facts are accepted as true, a complaint "may plead [it]self out of court" if it "plead[s] facts which establish that [it] cannot prevail on [its] . . . claim." *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted).

If dismissal is appropriate under Rule 12(b)(6), a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation marks and citation omitted).

## III. DISCUSSION

Defendants brought their counterclaim under ERISA Section 502(a)(3), which authorizes

plan fiduciaries to bring a civil action "(A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of . . . the terms of the plan." 29 U.S.C. § 1132(a)(3). The fiduciary "must prove both (1) that there is a remediable wrong, *i.e.*, that [it] seeks relief to redress a violation of ERISA or the terms of a plan, *see* [*Mertens v. Hewitt Associates*, 508 U.S. 248, 254 (1993)]; and (2) that the relief sought is 'appropriate equitable relief,' 29 U.S.C. § 1132(a)(3)(B)." *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 954 (9th Cir. 2014).

The term "appropriate equitable relief" refers to "those categories of relief that, traditionally speaking (*i.e.*, prior to the merger of law and equity) were *typically* available in equity." *CIGNA Corp. v. Amara*, 563 U.S. 421, 439 (2011) (internal quotations omitted). Restitution is not necessarily equitable relief: "whether it is legal or equitable depends on the basis for the [party's] claim and the nature of the underlying remedies sought." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (internal quotation omitted). A claimant may seek restitution in equity "where money or property identified as belonging in good conscience to the [claimant] could clearly be traced to particular funds or property in the defendant's possession." *Id.* In other words, an equitable lien may be enforced "only against specifically identified funds that remain in the defendant's possession or against traceable items that the defendant purchased with the funds." *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 658 (2016). Once the defendant has expended "the entire identifiable fund on nontraceable items," the equitable lien is destroyed and recovery is limited to legal, rather than equitable, remedies. *Id.* And a claimant "may not disguise an attempt to obtain monetary relief as a traditional equitable remedy." *Gabriel*, 773 F.3d at 954. This rule exists because "[m]oney damages are, of course, the classic form of *legal* relief." *Mertens*, 508 U.S. at 255.

Because Defendants are statutorily limited to pursuing only equitable relief and restitution requires traceability, if Plaintiffs dissipate the funds they received under the Second Atmel Plan, Defendants will be left without a remedy. *See Montanile*, 136 S. Ct. at 659 (holding that claimant "could not attach . . . general assets" when other party "dissipated the entire fund on nontraceable

5

items" even though its "conduct was wrongful"); *see also id.* at 662 (recognizing that Court's holding means that party "can escape that reimbursement obligation . . . by spending the settlement funds rapidly on nontraceable items") (Ginsburg, J., dissenting); *see also* Counterclaim ¶ 38. Thus, Defendants seek an injunction to forbid Plaintiffs from dissipating the benefits they received from the Second Atmel Plan so that the funds remain traceable in the event that Defendants are entitled to an equitable remedy. *See* Counterclaim ¶¶ 37–38.

However, there is a fundamental flaw in Defendants' theory. In order to prevail, Defendants must prove "that there is a remediable wrong"—in other words, that they "seek[] relief to redress a violation of . . . the terms of a plan." *Gabriel*, 773 F.3d at 954. In Defendants' view, Plaintiffs violated the terms of the Second Atmel Plan when they ignored (or fraudulently contravened) the release agreement and brought this action. *See* Counterclaim ¶¶ 21–27, 31–35. But whatever the effect of this release may be when it comes to assessing the merits of Plaintiffs' claims (which is for a later day), one thing is certain at this stage: it is not a covenant not to sue. And because the Second Atmel Plan does not bar Plaintiffs from filing suit, they have not violated its terms by doing so. Thus, Defendants have not satisfied the first element of Section 502(a)(3), because there is no wrong to remedy.

In accepting the Second Atmel Plan, Plaintiffs agreed to a release that stated:

> You agree to *release* the Company, its subsidiaries and affiliates, and its and their officers, agents and employees from any liability related to or arising out of your employment with any of them. This includes a *release* of any liability for claims of any kind that you ever had or may have at this time, whether you know about them or not. This *release* is as broad as the law allows and includes a *release* of claims under federal and state laws, such as anti-discrimination, harassment and retaliation laws and expressly includes any claims under the Age Discrimination in Employment Act. This *release* also includes a *release* of any tort and contract claims, and any other claims that could be asserted under federal, state or local statutes, regulations or common law.

Dkt. No. 33-1, Ex. 4 at 2 (emphasis added); *see also* Mot. at 7; Opp. at 3. Defendants (to their credit) refer to this provision as a "release." *See* Opp. at 3–4.

But a release agreement is not the same as a covenant not to sue. "A release is 'the abandonment, relinquishment or giving up of a right or claim to the person against whom it might

6

have been demanded or enforced . . . and its effect is to extinguish the cause of action; hence it may be pleaded as a defense to the action.'" *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1017 n.10 (9th Cir. 2012) (quoting *Pellett v. Sonotone Corp.*, 26 Cal. 2d 705, 711 (1945)). In other words, a release is "the act of giving up a right or claim to the person against whom it could have been enforced." *Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1084 (9th Cir. 2007) (quotations omitted) (quoting *Release*, Black's Law Dictionary (abridged 7th ed. 2000)). "By contrast, a covenant not to sue 'is not a present abandonment or relinquishment of the right of claim, but merely an agreement not to enforce an existing cause of action.'" *Skilstaf*, 669 F.3d at 1017 n.10 (quoting *Pellett*, 26 Cal. 2d at 711). Thus, in a covenant not to sue, "a party *having a right* of action agrees not to assert that right in litigation." *Syverson*, 472 F.3d at 1084 (quotation omitted, emphasis in original) (quoting *Covenant Not to Sue*, Black's Law Dictionary (abridged 7th ed. 2000)). Accordingly, a release and a covenant not to sue have distinct legal effects and purposes. *See Syverson*, 472 F.3d at 1084–85; *see also Thomforde v. Int'l Bus. Machines Corp.*, 406 F.3d 500, 503 (8th Cir. 2005) ("A release of claims and a covenant not to sue serve different purposes."). That said, the "two purposes often merge" and the "distinction between releases and covenants not to sue becomes particularly murky when both are included in a single document." *Syverson*, 472 F.3d at 1084. Where both are present, the "covenant not to sue largely swallows the release." *Id.* at 1085.

Here, however, the agreement contains only a release. The four-sentence release provision uses the term "release" six times. *See* Dkt. No. 33-1, Ex. 4 at 2. In contrast, it uses the term "covenant not to sue," "agreement not to sue," or equivalent language precisely zero times. Had Defendants wanted to bar Plaintiffs from bringing suit, they could have added such a term to the agreement. *See, e.g.*, *Syverson*, 472 F.3d at 1082 (identifying covenant not to sue in contract provision reading that "[y]ou agree that you will never institute a claim of any kind against IBM"). But they did not.

Because Plaintiffs never agreed not to sue Defendants, they have not violated any term of the Plan by doing so. *See Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 797 (7th Cir. 2005) (holding that plaintiff "did not breach the Release" where "Release was a release of claims and not a

7

1  covenant not to sue"). And since there is no violation of the Second Atmel Plan's terms,

2  Defendants do not have a basis for equitable relief under Section 502(a)(3). Of course,

3  Defendants may continue to pursue their affirmative defense that Plaintiffs agreed to release them

4  from liability under the terms of the Second Atmel Plan. *See id.* (finding that Defendant "received

5  the benefit of its bargain—an affirmative defense"); *see also Bukuras v. Mueller Grp., LLC*, 592

6  F.3d 255, 266 (1st Cir. 2010) ("A release is an affirmative defense; it does not supply a defendant

7  with an independent claim for breach of contract.").

Finally, given the clear language of the release provision in the Second Atmel Plan, Defendants could not possibly cure their pleading by alleging more facts. And the theory of fraud explicated in their Opposition, *see* Opp. at 14, which Defendants proffer as a basis for leave to amend their counterclaim, *see id.* at 14 n.9, does not allege a violation of the Second Atmel Plan—which is required for Defendants to obtain equitable relief under ERISA. Thus, Defendants' counterclaim must be dismissed without leave to amend.

## IV. CONCLUSION

The Court finds that, as a matter of law, Defendants have not alleged (nor could they allege) that Plaintiffs violated any provision of the Second Atmel Plan. Therefore, Defendants have failed to state a claim upon which relief can be granted under ERISA. The Court **GRANTS** the motion to dismiss Defendants' counterclaim, without leave to amend.

The Court **SETS** a further case management conference for 2:00 p.m. on April 2 in Oakland, Fourth Floor, Courtroom 2. At the case management conference, the parties should be prepared to discuss a schedule for the prompt resolution of this matter and the proposed form and timing of ADR efforts, including the possibility of a magistrate judge settlement conference. The parties are directed to file a joint case management statement addressing these and any other issues by March 26.

**IT IS SO ORDERED.**

Dated: 3/12/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge

8