OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C., SBN 00504800
Mark G. Kisicki (CA SBN 150057)
mark.kisicki@ogletreedeakins.com
Elizabeth M. Soveranez (AZ SBN 024009) admitted *pro hac vice*
elizabeth.soveranez@ogletreedeakins.com
2415 East Camelback Road, Suite 800
Phoenix, AZ 85016
Tel.: 602.778.3700
Fax: 602.778.3750

Mark Schmidtke (IN SBN 1733-45) admitted *pro hac vice*
56 S. Washington Street, Suite 302
Valparaiso, IN 46383
Tel.: 219.242.8668
Fax: 219.242.8669
mark.schmidtke@ogletreedeakins.com

Erika L. Leonard (GA SBN 565965) admitted *pro hac vice*
301 Congress Avenue, Suite 1150
Austin, TX 78701
Tel.:    512.344.4700
Fax:    512.344.4701
erika.leonard@ogletree.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER SCHUMAN, an individual, and, WILLIAM COPLIN, an individual, on behalf of themselves and on behalf of others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>MICROCHIP TECHNOLOGY INCORPORATED, a corporation; ATMEL CORPORATION, a corporation; and ATMEL CORPORATION U.S. SEVERANCE GUARANTEE BENEFIT PROGRAM, an employee benefit plan,<br><br>                    **Defendants.** | No. 4:16-CV-05544-HSG<br><br>CLASS ACTION<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:  January 13, 2022<br>Time:              2:00 p.m.<br>Courtroom:    2, Floor 4<br>Judge:            Hon. Haywood S. Gilliam, Jr. |

*Left margin (vertical):* Ogletree, Deakins, Nash, Smoak & Stewart, P.C. | Esplanade Center III, Suite 800 | 2415 East Camelback Road | Phoenix, AZ 85016 | Telephone: 602.778.3700

## <u>NOTICE</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 13, 2022 at 2:00 p.m. or as soon thereafter as may be heard, in Courtroom 2 of the above-entitled Court, Oakland Courthouse, 4th Floor, 1301 Clay Street, Oakland, CA 94612, before the Honorable Haywood S. Gilliam, Jr., Defendants Microchip Technology, Inc. ("Microchip"), Atmel Corporation ("Atmel") and Atmel Corporation U.S. Severance Guarantee Benefit Program ("Atmel Plan" and, collectively with Microchip and Atmel, "Defendants") will and do move the Court for an Order under Federal Rule of Civil Procedure 56, granting summary judgment against Plaintiffs' Complaint because the undisputed facts demonstrate that Plaintiffs are not entitled to relief.

Dated:  December 9, 2021.          Respectfully submitted,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.


By: s/ Mark G. Kisicki
Mark G. Kisicki
Elizabeth M. Soveranez, admitted *pro hac vice*
2415 East Camelback Road, Suite 800
Phoenix, AZ 85016
Tel.: 602.778.3757
Fax : 602.778.3750
mark.kisicki@ogletreedeakins.com
elizabeth.soveranez@ogletreedeakins.com

Mark Schmidtke, admitted *pro hac vice*
56 S. Washington Street, Suite 302
Valparaiso, IN 46383
Tel.: 219.242.8668
Fax: 219.242.8669
mark.schmidtke@ogletreedeakins.com

Erika L. Leonard, admitted *pro hac vice*
301 Congress Avenue, Suite 1150
Austin, TX 78701
Tel.: 512.344.4700
Fax: 512.344.4700
erika.leonard@ogletree.com

*Attorneys for Defendants*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

**<u>TABLE OF CONTENTS</u>**

**INTRODUCTION** ...................................................................................................1

**MEMORANDUM OF POINTS AND AUTHORITIES** ...............................1

**I.   BACKGROUND FACTS** ...........................................................................1

   **A.   The Atmel Plan** ...............................................................................1

   **B.   Procedural History** ..........................................................................5

**II.   ARGUMENT** ...............................................................................................7

   **A.   The Releases Are Valid Waivers And Should Be Enforced**...........7

      **1.   Plaintiffs Knowingly And Voluntarily Waived Their Claims.** ...7

      **2.   As A Matter Of Law, Defendants Did Not "Intimidate And Coerce" Plaintiffs Or Make "Misleading," "False" Or "Fraudulent" Statements About The Atmel Plan In Breach Of A Fiduciary Duty.** ...........................................9

      **3.   Whether The Plan Administrator Relied On The Releases is Irrelevant.**............13

   **B.   Plaintiffs Lack Support For Their Breach Of Fiduciary Duty Claims**......................14

   **C.   As A Matter Of Law, Plaintiffs' Requests For Equitable Relief Fail.** ......................15

      **1.   There Is No Evidence To Support Relief Based On Equitable Estoppel.**..............15

         **a.   Plaintiffs Did Not Reasonably And Detrimentally Rely On An Oral, Material Misrepresentation Of The Atmel Plan By A Fiduciary**...................16

         **b.   Plaintiffs Have No Evidence Of Extraordinary Circumstances.**......................20

      **2.   Plaintiffs Are Not Entitled To Equitable Surcharge.** .........................................23

      **3.   Plaintiffs Are Not Entitled To Injunctive Relief.** ..............................................23

         **a.   Plaintiffs' Injunctive Relief Claims Are Barred by Res Judicata.** ..................23

         **b.   Plaintiffs' Injunctive Relief Claims Also Fail on the Merits.**.........................24

            **i.   Injunctive Relief For Plaintiffs' Releases Is Not Appropriate**.................24

            **ii.   Injunctive Relief Regarding Claims Delay Fails And Is Moot.** ...............25

**III.   CONCLUSION**............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................................7

*Bennett v. Ins. Cos*,
   No. C–99–03127 EDL, 2001 WL 30533 (N.D. Cal. Jan. 5, 2001) .............................9

*Berman*, Case No. 17-cv-01864-HSG, 2019 WL 4168970, at *2 (N.D. Cal. Sept. 9,
   2019)........................................................................................................................23

*Berman v. Microchip Tech. Inc.*,
   838 Fed. Appx. 292 (9th Cir. March 2, 2021) ....................................................*passim*

*Bernstein v. Travelers Ins. Co.*,
   No. C 05-1528 SBA, 2006 WL 2567875 (N.D. Cal. Sept. 5, 2006) ...........................7

*Biba v. Wells Fargo & Co.*,
   No. C 09–3249 MEJ, 2010 WL 4942559 (N.D. Cal. Nov. 10, 2010) ...........20, 21, 22

*Boyd v. ConAgra*,
   879 F.3d 314 (8th Cir. 2018) ...................................................................................12

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)....................................................................................................7

*Chaganti v. Ceridian Benefits Servs., Inc.*,
   208 F. App'x 541 (9th Cir. 2006) ..............................................................................19

*City of Ukiah v. Fones*,
   64 Cal. 2d 104 (1966) .................................................................................................7

*In re Computer Scis. Corp. Erisa Litig.*,
   635 F. Supp. 2d 1128 (C.D. Cal. 2009), *aff'd sub nom. Quan v. Computer Scis.
   Corp.*, 623 F.3d 870 (9th Cir. 2010) .........................................................................16

*Depot, Inc. v. Caring for Montanans, Inc.*,
   915 F.3d 643 (9th Cir. 2019) ....................................................................................23

*Diaz v. United Agric. Emp. Welfare Benefit Plan & Trust*,
   50 F.3d 1478 (9th Cir. 1995) ....................................................................................11

*Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal.*,
   No. SACV150736DOCDFMX, 2017 WL 11467730 (C.D. Cal. Sept. 25, 2017)........21

*Gabriel v. Alaska Elec. Pension Fund*,
    773 F.3d 945 (9th Cir. 2014) ................................................................ 12, 16, 21

*Gonda v. Permanente Med. Group, Inc.*,
    Case No. 11–cv–01363–SC, 2015 WL 678969 (N.D. Cal. Feb. 17, 2015) .............................. 14

*Greany v. W. Farm Bureau Life Ins. Co.*,
    973 F.2d 812 (9th Cir. 1992) ................................................................ 16

*Guenther v. Lockheed Martin Corp.*,
    Nos. 17-16984, 18-15823, 2020 WL 5001809 (9th Cir. 2020) ........................................ 11, 12

*Johnson v. Buckley*,
    356 F.3d 1067 (9th Cir. 2004) ................................................................ 11

*Kyle Rys. Inc. v. Pac. Admin. Servs., Inc.*,
    990 F.2d 513 (9th Cir. 1993) ................................................................ 19

*Laska v. Abbott Severance Pay for Emps. of Kos Pharm.*,
    Case No. CV-13-04417-MWF, 2014 WL 12567795 (C.D. Cal Sept. 30, 2014) ...................... 19

*Leonelli v. Pennwalt Corp.*,
    887 F.2d 1195 (2d Cir. 1989) ................................................................ 11, 14, 19

*McDaniel v. Chevron Corp.*,
    203 F.3d 1099 (9th Cir. 2000) ................................................................ 6, 16

*Mead v. Intermec Techs. Corp.*,
    271 F.3d 715 (8th Cir. 2001) ................................................................ 9

*Monper v. Boeing Co.*,
    104 F. Supp. 3d 1170 (W.D. Wash. 2015) ................................................................ 11, 14, 19

*Parisi v. Kaiser Found. Health Plan Long Term Disability Plan*,
    No. C 06-04359 JSW, 2008 WL 220101 (N.D. Cal. Jan. 25, 2008) .................................. 7, 14

*Pette v. Int'l Union of Operating Engr's*,
    Case No. CV 12-09324 DDP, 2016 WL 4596338 (C.D. Cal. Sept. 2, 2016) ........................... 11

*Republic Molding Corp. v. B.W. Photo Utils.*,
    319 F.2d 347 (9th Cir.1963) ................................................................ 25

*Tamrazian v. Unum Life Ins. Co. of Am.*,
    Case No. 2:19-cv-05583-SVW-JPR, 2020 WL 4288441 (C.D. Cal. April 14,
    2020) ................................................................ 23

*Tocker v. Kraft Foods N. Am., Inc. Ret. Plan*,
    494 F. App'x 129 (2d Cir. 2012) ................................................................ 11, 20

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

*Trujillo v. Santa Clara Cnty.*,
775 F.2d 1359 (9th Cir. 1985) ................................................................................. 24

*Upadhyay I v. Aetna Life Ins. Co.*,
No. C 13–1368 SI, 2014 WL 186709 (N.D. Cal. Jan. 14, 2014) .................................. 13

**Statutes**

29 U.S.C. § 1110 ................................................................................................................ 7

ERISA .................................................................................................................... *passim*

Section 502(a)(1)(B) ..................................................................................................... 7, 11

§502(a)(1) ....................................................................................................................... 11

§502(a)(3) ................................................................................................................. 11, 23

**Other Authorities**

29 C.F.R. § 2509.75-8(D-2) ............................................................................................ 19

Rule 56(d) ........................................................................................................................ 6

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

**INTRODUCTION**

Plaintiffs are not entitled to Atmel Plan benefits, as Defendants have explained in their pending cross-motion for summary judgment in the related *Berman* matter. However, even if the Court does not defer to the plan administrator's determinations, and interprets the Atmel Plan as entitling Plaintiffs to benefits, they waived any right to Plan benefits – or to any equitable relief – by agreeing to accept other benefits in exchange for releasing the claims they now assert.

Unlike the Berman plaintiffs – who refused to sign the release agreements and forwent any severance so they could pursue their claims – the Schuman Plaintiffs think they can have it both ways. They signed the releases and received significant severance for having waived their claims, but are suing to get more, without first giving back what they received in exchange for their waivers.  Schuman and Coplin are sophisticated individuals, who admitted that they knew the releases were offered in exchange for waiving a dispute regarding the interpretation of the Atmel Plan. They also consulted with lawyers before signing the releases, and testified they understood the release agreements and that by signing them they were waiving any rights they had under the Atmel Plan. Plaintiffs have no basis to avoid the consequence of their waivers, particularly since they received and kept handsome severance for having signed the releases.

Additionally, and even if the Court refused to hold Plaintiffs to the waivers they voluntarily gave, their claims for equitable relief fail because they cannot meet the heightened showing that ERISA requires for such relief, especially given they kept the money they had received only because they signed the release agreements. Any other result would provide Plaintiffs the equitable relief of recession without having complied with the tender back requirement that equity imposes to avoid their releases. Accordingly, Defendants are entitled to summary judgment.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      BACKGROUND FACTS**

**A.      The Atmel Plan**

As the Court is aware, the U.S. Severance Guarantee Benefit Program (the "Atmel Plan" or "Plan") conditioned benefits on "the Company enter[ing] into a definitive agreement (a "Definitive Agreement"), on or before November 1, 2015, *that will result* in a Change of Control of the

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

Company." [Dkt. 157, at 1029 (emphasis added)]. The Plan also unambiguously granted discretion

to the "Company" to administer and interpret the Plan:

> The [Plan] will be *administered and interpreted by the Company*. Any decision made or other action taken by the Company prior to a Change in Control with respect to the Program, and any interpretation by the Company prior to a Change in Control of any term or condition of the Program, or any related document, will be conclusive and binding on all persons and will be given the maximum possible deference allowed by law. Following a Change of Control, any decision made or other action taken by the Company, and any interpretation by the Company of any terms or conditions of the Program, or any related document that (i) does not affect the benefits payable under the Program *shall not be subject to review unless found to be arbitrary and capricious* or (ii) does affect the benefits payable under the Program *shall not be subject to review unless found to be unreasonable and not to have been made in good faith*. The Company may, in its sole discretion and on such terms and conditions as it may provide, *delegate in writing to one or more officers* of the Company all or any portion of its authority or responsibility with respect to the Program ….

[*Id.* (emphases added)].

Atmel entered into a definitive agreement with Dialog Semiconductor before the November 1, 2015 deadline. [Dkt. 29, at ¶ 28.] After employees began hearing rumors of a second suitor in mid-December 2015, they asked whether that "would nullify the protection." [Declaration of Elizabeth M. Soveranez, attached as Exhibit 1, at Ex. A.] Discussions between HR and internal and outside counsel showed they felt that they "should clarify this" because it was "vague" and "ambiguous at best." [Ex. 1, at Exhs. B-C.] Outside counsel recommended asking the Board of Director or Compensation Committee to adopt a clarifying resolution and internal counsel responded: "We should dot all the "I"s when we get to it in a subtle way." [*Id.*] However, they also did not want to "stir up too much trouble" with a deal pending and, ultimately, never requested the necessary resolution. [*Id.*]

Dialog then had the option of increasing its bid by January 18, 2016. [Dkt. 29, at ¶ 36.] On January 14, 2016, while the Dialog definitive agreement was still in place, Atmel's then-VP of Global Human Resources, Suzy Zoumaras, sent a Director-level Equity Letter only to Director-level employees. While that letter stated that the Atmel Plan "continues to remain in place" [Dkt. 157, at 421], that was true at that time: the Dialog definitive agreement was in effect so the Atmel Plan, likewise, was in effect. [Dkt. 29, at ¶ 36.] That letter to Directors also recognized that the Atmel Plan benefits (as well as the Director-level equity acceleration benefits) "are subject to the

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

terms and conditions of each as approved by the company's Compensation Committee." [Dkt. 157, at 421.] The letter was labeled "Personal and Confidential and only distributed to director-level employees, so it is understandable that the vast majority of the class members never saw it (or received it).

After Dialog declined to increase its offer, Atmel terminated their definitive agreement and entered into a new definitive agreement with Microchip on January 19, 2016 – months after the November 1, 2015 deadline. [Dkt. 29, at ¶ 36.] Employees who attended an all-hands meeting with Atmel's then-CEO, Steve Laub, after the Microchip definitive agreement raised concerns when Laub said the Atmel Plan was no longer guaranteed and, in looking at the Atmel Plan, saw that "that's the problem – it's the dates." [Declaration of Jim Lutinski, attached as Exhibit 2, at ¶¶ 6, 13; Declaration of Dan Harfert, attached as Exhibit 3, at ¶¶ 8-10.] Managers asked HR to clarify whether the Atmel Plan was still in place, but no one in HR or management responded. [Ex. A, at Ex. U; Ex. 3, at ¶¶ 11-12.] Accordingly, employees continued asking whether the Atmel Plan would apply to the Microchip merger. [Ex. 2, at ¶¶ 7-9; Ex. 3, at ¶ 11.] While Atmel's HR department prepared a draft communication to all employees expressly identifying the Plan and making that representation, the company's chief legal officer modified it to be consistent with the verbiage in the definitive agreement; *i.e.*, that Microchip would honor various employment agreements *that are in effect immediately prior to the closing of the transaction*." [Ex. 1, at Exs. A-H (emphasis added).] Atmel never disseminated any general communication to Plan participants stating the Atmel Plan was applicable to Microchip's acquisition.

The merger between Atmel and Microchip closed on April 4, 2016. [Dkt. 29, at ¶ 36.] Although Microchip believed the Atmel Plan had, by its terms, expired because no definitive agreement entered into on or before November 1, 2015 had resulted in a change of control, and Microchip communicated that belief to Atmel employees in an "all-hands" meeting led by Microchip CEO Steve Sanghi immediately after the closing, some employees claimed they had been led to believe that the Atmel Plan was still in effect, while others thought it had expired. [Declaration of Wade Guinn, attached as Ex. 4.]

To resolve the dispute, Sanghi met with employees on or about April 6, 2016 and presented

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

a PowerPoint to explain that, while the Atmel Plan had expired because the change of control did not result from a definitive agreement signed on or before the November 1, 2015 deadline and the Board of Directors had not extended the Atmel Plan to the Microchip definitive agreement, the company was willing to offer 50% of the expired Atmel Plan benefits to employees to resolve the dispute. [Dkt. 29, at ¶¶ 54, 56; Ex. 1, at Ex. P, at 67:15-71:21; Ex. 1, at Ex. Q.] In exchange, the Board of Directors approved a 50% reduction in Sanghi's and COO Ganesh Moorthy's base salaries in that quarter. [Ex. 1, at Ex. P, at 71:14-21, 78:5-19.] Sanghi also explained that "[e]mployees will have to sign and accept the new severance plan and *waive any rights under the old plan*." [Ex. 1, at Ex. Q, at p. 5 (emphasis added).] The Release to obtain the Second Atmel Plan benefits stated that Microchip and Atmel were "making this offer, in part to resolve any current disagreement or misunderstanding regarding severance benefits previously offered by [Atmel]". [Dkt. 29, at ¶¶ 54, 56; Ex. 1, at Ex. R, at ATMEL PLAN-SCHUMAN000815-820.] The employees were given 45 days to consider the Second Atmel Plan benefits and advised to consult an attorney before signing the release. [Dkt. 108, at 9-10.]

The class representatives and the vast majority of class members in this case accepted the Second Atmel Plan offer, obtaining modified severance payments and signed releases of the claims they now assert in this case. [*E.g.*, Ex. 1, at Ex. R, at ATMEL PLAN-SCHUMAN000815-820.] As one of the two class representatives standing in the shoes of the entire class, Coplin disclaimed feeling coerced in any way to accept the severance and sign the release from Microchip [Ex. 1, at Ex. S, at 85:6-86:7.] Coplin admitted the Second Atmel Plan gave them "ample time" to consider the plan and consult with an attorney. [Ex. 1, at Ex. S, at 75:3-8, 78:3-25.] Indeed, he took several days to decide whether to sign the release, read the language advising consultation with a lawyer regarding the release, and could have consulted with the ERISA lawyers and many HR professionals whom he knew personally. [Ex. 1, at Ex. S, at 11:18-12:13, 23:18-24:3, 73:2-74:5.] Plaintiffs' privilege log shows he communicated with an attorney via email and also exchanged privileged emails with Schuman prior to signing the Release. [Ex. 1, at Ex. V.] However, he also admitted that "I don't think there was a need to [consult with an attorney]. It was in my mind clear." [Ex. 1, at Ex. S, at 73:12-16.] Schuman also consulted an attorney before deciding to "walk

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

away" from the issue and sign the release a few weeks later. [Ex. 1, at Ex. W, at 84:12-21.]

At the time they signed the Second Atmel Plan and accepted severance benefits in exchange for releasing their claims under the Atmel Plan, the class representatives believed that interpreting the Atmel Plan as applying to the Microchip merger was "far more likely to be the correct interpretation" than Microchip's belief that it did not apply. [Ex. 1, at Ex. X, at RFA Resp. Nos. 12-13; Ex. 1, at Ex. Y, at RFA Resp. Nos. 10-11.] Yet, neither had any qualms in signing the release of their claims and accepting the more limited benefits provided by the Second Atmel Plan. If they did have any concerns, they could have done what the employees in *Berman* (and a few class members) did, and pursue their claims for benefits under the Atmel Plan rather than release their claims and accept the Second Atmel Plan's severance benefits.

Despite the clear Releases waiving their claims, Schuman and Coplin immediately turned around and filed suit as well as sending demand letters the same day or so. [Dkt. 1; Ex. 1, at Ex. Z; Ex. 1, at Ex. AA.] After the parties stayed proceedings so Plaintiffs could remedy their failure to exhaust administrative remedies, the plan administrator denied Plaintiffs' claims under the Atmel Plan, stating the Dialog agreement did not result in a change of control and any agreements entered into after the November 1, 2015 deadline could not qualify as an "Initial Triggering Event" under the Atmel Plan. [*E.g.*, Ex. 1, at Ex. Z, at ATMEL PLAN/SCHUMAN000483; Ex. 1, at Ex. AA, at ATMEL PLAN/SCHUMAN001097.] Plaintiffs appealed the denials of benefits, which the plan administrator confirmed for the same reasons. [*E.g.*, Ex. 1, at Ex. Z, Ex. AA.]

### B.    Procedural History

Defendants filed a Motion to Dismiss the Complaint arguing, in part, that Plaintiffs had not alleged that the Atmel Plan was ambiguous. [Dkt. 33, at 16-17.] In its order granting that motion in part, the Court stated that, "notwithstanding Plaintiffs' assertion that the provisions of the Atmel Plan are unambiguous, [] reasonable parties could disagree as to whether the Plan required the Initial Triggering Event and the Change of Control to involve the same merger partner." [Dkt. 54, at 22.] Addressing Plaintiffs' equitable estoppel claim, the court held that "Plaintiffs sufficiently allege detrimental reliance on an oral, material misrepresentation of that ambiguity by Defendants"; specifically: 1) the allegations that Atmel management supposedly encouraged

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

employees to stay by assuring them pre-merger that they were covered by the Atmel Plan regardless of the ultimate merger partners; and 2) employees would not have signed the releases but for Microchip's post-merger "misrepresentations" that no one had a right to severance benefits under the Atmel Plan. [Dkt. 54, at 22 (citing Dkt. 29, at ¶¶ 35, 64).] The Court also found the latter "sufficient for purposes of pleading extraordinary circumstances." [Dkt. 54, at 22.]

In answering the FAC following the Court's ruling on Defendants' Motion to Dismiss, Defendants asserted that "Plaintiffs signed enforceable waivers that bar their benefit claims under the Atmel Plan and/or their claims are otherwise barred by the doctrine and defense of accord and satisfaction" and that "[u]pon information and belief and to preserve any applicable defenses, Plaintiffs' claims are barred by the doctrines of waiver and/or estoppel." [Dkt. 60, at p. 20 ¶¶ 7-8.]

In Plaintiffs' subsequent motion to certify the class, they argued that they were relying on class-wide statements by Sanghi that the Atmel Plan had expired, as well as the class-wide language of the subsequent releases and new severance agreements, which they felt implied that Microchip believed the Atmel Plan had expired. [Dkt. 110, at 2-3.]

Around the same time, the Court in the related *Berman* case granted the *Berman* plaintiffs' motion for partial summary judgment and awarded benefits under the Plan, which Defendants appealed. The Ninth Circuit reversed and held that "the relevant language in the Atmel Plan is ambiguous. Specifically, the phrase 'that will result' is ambiguous because it does not "exclud[e] all alternative readings as unreasonable," *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1110 (9th Cir. 2000), and the ambiguity is not eliminated by reading the phrase in the context of the Plan as a whole. As the district court stated in its order resolving the defendants' motion to dismiss, 'reasonable parties could disagree as to whether the [Atmel] Plan required the Initial Triggering Event and the Change of Control to involve the same merger partner.'" *Berman v. Microchip Tech. Inc.*, 838 Fed. Appx. 292, 293 (Mem) (9th Cir. March 2, 2021). Because the Ninth Circuit determined the Atmel Plan was ambiguous, it further held that the district court abused its discretion in denying defendants' Rule 56(d) Motion. [*Id.*] The Ninth Circuit also held the district court "erred in denying the defendants' motion to dismiss (1) the claim for removal of the Plan

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

1   Administrator under 29 U.S.C. § 1110 because plaintiffs concede this point, and (2) the claim for

2   injunctive relief because plaintiffs failed to plead 'irreparable injury.'" *Id.*

## II.    ARGUMENT

4          A party moving for summary judgment must show there are no genuine, triable issues of

5   material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v.*

6   *Catrett*, 477 U.S. 317, 327 (1986). A dispute about a material fact is genuine "if the evidence is

7   such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

8   *Lobby, Inc*., 477 U.S. 242, 248 (1986). All inferences drawn from the facts must be viewed in the

9   light most favorable to the nonmoving party, *Bernstein v. Travelers Ins. Co*., No. C 05-1528 SBA,

10  2006 WL 2567875, at *2 (N.D. Cal. Sept. 5, 2006) (internal citation omitted).[1]

11         **A.    <u>The Releases Are Valid Waivers And Should Be Enforced.</u>**

12              **1.    Plaintiffs Knowingly And Voluntarily Waived Their Claims.**

13         "To constitute a waiver, there must be an existing right, knowledge of the right, and an

14  actual intention to relinquish that right." *City of Ukiah v. Fones*, 64 Cal. 2d 104, 107 (1966).

15  Employees may validly waive ERISA rights, as long as their waiver is knowing and voluntary

16  under a six-factor test: (1) plaintiff's education and business sophistication; (2) the respective roles

17  of employer and employee in drafting the waiver; (3) the agreement's clarity; (4) the time plaintiff

18  had to study the agreement; (5) whether plaintiff had independent advice, such as that of counsel;

19  and (6) the consideration for the waiver." *Parisi v. Kaiser Found. Health Plan Long Term*

20  *Disability Plan*, No. C 06-04359 JSW, 2008 WL 220101, at *4 (N.D. Cal. Jan. 25, 2008) (waiver

21  of ERISA claim valid because the plaintiff had "experience as a manager or principal consultant,"

22  the release language was clear, the release gave the plaintiff 21 days to review and 7 days to

23  revoke, and the plaintiff had the opportunity to seek advice of counsel).

---

26  [1] Defendants acknowledge that the Court's determinations in the related *Berman* case regarding the benefits claim under Section 502(a)(1)(B) would similarly apply in this case and Defendants

27  incorporate by reference the arguments and evidence provided by the *Berman* plaintiffs' briefing [Dkt. 16, 163-1, 166], although that does not negate the separate issue of whether the *Schuman*

28  plaintiffs, nonetheless, still waived their benefits claims by accepting other severance benefits in exchange for signing the releases.

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

1   Here, Plaintiffs' releases meet these standards. First, Plaintiffs knew there was a dispute and

2   that both their acceptance of the Second Atmel Plan's benefits and their release of further claims

3   was intended to resolve that dispute. The Second Atmel Plan stated: "Atmel and Microchip are

4   making this offer, in part to resolve any current disagreement or misunderstanding regarding

5   severance benefits previously offered by [Atmel]" and that employees were waiving all "claims

6   that could be asserted under federal, state or local statutes, regulations or common law" by signing

7   the release agreement. [Ex. 1, at Ex. R, ATMEL PLAN-SCHUMAN000815-820.] The PowerPoint

8   first introducing the idea of the Second Atmel Plan explained that "[e]mployees will have to sign

9   and accept the new severance plan and waive any rights under the old plan" [Ex. 1, at Ex. Q] and

10  Plaintiffs admit it is implicit in the Second Atmel Plan's language regarding resolving any dispute

11  about prior severance benefits that "Microchip was taking the position that employees were not

12  entitled to any severance benefits under the Atmel Severance Plan," so they knew precisely what

13  they were giving up. [Ex. 1, at Ex. Q, at ATMEL PLAN-SCHUMAN003239; Ex. 1, at Ex. BB, at

14  Rog. Resp. No. 34; Ex. 1, at Ex. CC, at Rog. Resp. No. 34.] The class representatives, Coplin and

15  Schuman, testified that they understood they were waiving claims under the Atmel Plan by signing

16  the release. [Ex. 1, at Ex. W, at 99:19-100:4; Ex. 1, at Ex. S, at 88:19-25.]

17  Second, Plaintiffs 45 days to consider the release, and by signing it, they acknowledged that

18  they had "read it carefully" and were "signing it knowingly and voluntarly." [Dkt. 108, at 9-10.]

19  As the class representatives acknowledged, they had "ample time" to review the Second Atmel

20  Plan and took several days to a few weeks to do so, the release was "clear" and Coplin disclaimed

21  any coercion in signing the Second Atmel Plan. [Ex. 1, at Ex. S, at 11:18-12:13, 23:18-24:3, 73:2-

22  74:5, 75:3-8, 78:3-25; 85:6-86:7.]

23  Third, Plaintiffs were advised, and had ample opportunity, to seek legal advice – and did so.

24  The class representatives understood this. Schuman consulted an attorney about the release before

25  deciding to "walk away" from any Atmel Plan benefits, and "made a conscious decision to sign

26  and, again, put this behind me and move forwarded with my life;" he signed the release a few

27  weeks later. [Ex. 1, at Ex. W, at 84:12-21.] Coplin admitted that he could have consulted HR

28  professionals and attorneys that he knew, but chose not to because of his high-level HR corporate

positions, including serving as a prior ERISA administrator, and he felt the Second Atmel Plan "was clear." [Ex. 1, at Ex. S, at 73:12-16.] However, Plaintiffs' privilege log does show that Coplin emailed an attorney about the "Atmel Severance Plan" on April 16, 2016 and exchanged multiple emails with Schuman on June 7, 2016 (which Plaintiffs claim are privileged), all before signing the Second Atmel Plan on June 9, 2016. [Ex. 1, at Ex. V.]

Additionally, Plaintiffs were sophisticated businesspeople, holding positions ranging from technical engineers to Directors and other management positions that generally required a college degree. Coplin was a Director of HR and Schuman was Senior Director of Investor Relations. [Declaration of Lauren Carr, at ¶ 5, attached as Ex. 6.] Depending on their salary, in exchange for signing the releases, Plaintiffs received from $4,000 to $60,000 in severance benefits, with most receiving $25,000 or more. [*Id.*] Coplin and Schuman received a combined total of over $100,000. [Ex. 1, at Ex. DD, at ATMEL PLAN-SCHUMAN001921; Ex. 1, at Ex. EE, at ATMEL PLAN-SCHUMAN002533.]

Accordingly, the releases are valid and bar Plaintiffs' claims for severance benefits and equitable relief, including their claims based on Microchip's alleged "misleading," "false" or "fraudulent" statements about the Atmel Plan. *See, e.g.*, *Bennett v. Ins. Cos*, No. C–99–03127 EDL, 2001 WL 30533, at **4-5 (N.D. Cal. Jan. 5, 2001) (plaintiff voluntarily and knowingly waived claim to ERISA disability benefits); *accord Mead v. Intermec Techs. Corp.*, 271 F.3d 715, 717 (8th Cir. 2001) (release given in exchange for severance waived claim to different benefits under ERISA "even if [plaintiff] was otherwise eligible for them").

### 2. As A Matter Of Law, Defendants Did Not "Intimidate And Coerce" Plaintiffs Or Make "Misleading," "False" Or "Fraudulent" Statements About The Atmel Plan In Breach Of A Fiduciary Duty.

Plaintiffs seek to avoid their releases based on Microchip's alleged "intimidation and coercion" through "misleading," "false" and "fraudulent" statements about the Atmel Plan, which allegedly breached its fiduciary duties. The undisputed evidence proves otherwise.

In certifying this as a class action, the Court expressly relied on Plaintiffs' representations that their misrepresentation claims were solely based on "class-wide communications." [Dkt. 122, at 23.] Plaintiffs later identified those communications:

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

1. In the all-hands meetings shortly after the merger, Sanghi stated Microchip believed the Atmel Plan had expired;

2. In follow-up meetings on or about April 6, 2016, Sanghi explained that, while the company believed the Atmel Plan had expired, he and Moorthy were offering to take a 50% cut in their salary for that quarter to offer employees half of the benefits they might have been entitled to had the Atmel Plan not expired;

3. The PowerPoint Sanghi used in those meetings quoted the Atmel Plan, detailed the Second Atmel Plan's benefits and stated "[e]mployees will have to sign and accept the new severance plan and waive any rights under the old plan," but did not otherwise say anything about the Atmel Plan;

4. An April 25, 2016 email sent by Sanghi and Moorthy to Atmel employees that over 95% of employees had signed the letters accepting the Second Atmel Plan and extending the signing deadline for the remaining employees to April 28, 2016. That email referred to the Atmel Plan as "the expired severance guarantee program," but did not otherwise say anything specific about the Atmel Plan; and

5. The Second Atmel Plan's release and severance benefits, which Plaintiffs believe implied that "Microchip was taking the position that employees were not entitled to any severance benefits under the Atmel Severance Plan."[2]

[Ex. 1, at Exs. EE-FF.]

Despite Plaintiffs' unfounded hyperbolic characterizations, there was nothing "threatening," "coercive," "false," "misleading" or "fraudulent" about Microchip's statements or actions. As the Ninth Circuit's Berman decision demonstrates, Microchip's interpretation of the Atmel Plan – that it had expired because the change of control did not result from a definitive agreement signed by the November 1, 2015 deadline – is reasonable; it cannot constitute a breach of a fiduciary duty. Indeed, fiduciary duty breach claims that hinge on the interpretation of an ERISA plan are nothing

---

[2] The other post-merger communications identified by Plaintiffs were individual – not class-wide – communications, which often involved multiple layers of hearsay. Regardless, they similarly conveyed nothing more than what the class-wide communications stated: it was Microchip's belief that the Atmel Plan had expired because the change in control did not result from a definitive agreement signed by the November 1, 2015 deadline. [Dkt. 108, at 9.]

more than a benefits claim that can be adequately remedied under Section 502(a)(1)(B). *Diaz v. United Agric. Emp. Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1484 (9th Cir. 1995). If relief is available under §502(a)(1), there is no available claim under §502(a)(3), even if the plaintiff's benefits claim is unsuccessful. *See Pette v. Int'l Union of Operating Engr's*, Case No. CV 12-09324 DDP (PJWx), 2016 WL 4596338, at **7-8 (C.D. Cal. Sept. 2, 2016) (holding "the availability of an adequate remedy under the law for Varity purposes[] does not mean, nor does it guarantee, an adjudication in one's favor" (internal quotation marks and citation omitted)); *see also Johnson v. Buckley*, 356 F.3d 1067, 1078 (9th Cir. 2004) (finding denial of leave to amend complaint to add a fiduciary duty breach claim under §502(a)(3) when plaintiffs had an adequate remedy under Section 502(a)(1), even though the court ultimately determined they were not entitled to benefits under Section 502(a)(1)).

Moreover, Microchip was acting as an employer – not a fiduciary – in expressing its belief about the Atmel Plan. *See, e.g.*, *Monper v. Boeing Co.*, 104 F. Supp. 3d 1170, 1181 (W.D. Wash. 2015) (recruiters and HR managers who told employees during merger that their retirement benefits would remain the same if they transferred to the new company were acting in ministerial role and, thus, their alleged misstatements did not give rise to a breach of fiduciary claim under ERISA); *Tocker v. Kraft Foods N. Am., Inc. Ret. Plan*, 494 F. App'x 129, 131-32 (2d Cir. 2012) (benefits manager who told plaintiff he would be eligible for retirement benefits does not acquire fiduciary status based on communication of information); *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989) (division director who told plaintiff, during a termination meeting, that he could "keep all of [his] benefits" if he took early retirement did not have discretionary authority regarding the Plan and, thus, was not a fiduciary against whom a breach of fiduciary duty claim could be pled). The fact that Plaintiffs still filed benefit claims under the Atmel Plan even *after* Microchip stated it believed the plan had expired and *after* accepting different severance benefits in exchange for waiving their claims under the Atmel Plan only proves that Plaintiffs did not believe any of Microchip's "class-wide" statements were made in a fiduciary capacity.

Finally, the Ninth Circuit has held that ERISA fraud claims are permissible only "when a defendant has "'taken steps to hide [its] breach of fiduciary duty.'" *Guenther v. Lockheed Martin*

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

*Corp.*, Nos. 17-16984, 18-15823, 2020 WL 5001809, at *9 (9th Cir. 2020) (quoting *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. Aug. 25, 1995)). In *Guenther*, the plaintiff relied on a July 2006 letter about bridging his pension benefits in re-joining the company. However, the pension plan had been amended earlier to disallow such bridging, which the July 2006 letter failed to disclose or explain. The plaintiff received another letter in November 2006 informing him that he was not a pension plan participant, but that still did not disclose the earlier amendment to the pension plan. *Id.* at **2-3. While the court found the plaintiff had shown the defendant "misrepresented his ability to bridge his terms of service," the "claim does not rise to the level of 'fraud or concealment'" as the plaintiff had failed to produce evidence of "knowingly false misrepresentations with the intent to defraud," "much less evidence of affirmative acts taken by [defendant] to hide that misrepresentation as required in our circuit." *Id.* at *9.

This case is even simpler. Microchip is not relying on outside documents or extraneous statements that it misrepresented or actively concealed. Rather, Microchip relies solely on the express language of the Atmel Plan stating that the severance benefits would become available only if "the Company enters into a definitive agreement (a 'Definitive Agreement'), on or before November 1, 2015, *that will result in a Change of Control of the Company*." [Dkt. 107-2, at 7 (emphasis added).] Ultimately, Microchip's statements that the Atmel Plan had expired were simply its interpretation of a two-page document that everyone possessed and could read on their own, not misstatements of present or existing facts that were unknown to the Plaintiffs. *Nothing* in Plaintiffs' allegations regarding the class-wide statements rises to the level of a "threatening," "coercive," "false," "misleading" or "fraudulent" statement.

Plaintiffs must also show they were "'ignorant of the true facts.'" *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014) (quoting *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821 (9th Cir. 1992)) (denying equitable estoppel claim based on alleged misrepresentations where the plan was unambiguous, and a plaintiff is not entitled to benefits that would expand unambiguous plan language); *accord Boyd v. ConAgra*, 879 F.3d 314, 323 (8th Cir. 2018) (finding claimant's argument that a fiduciary misled him was meritless where he was already aware of the true information and, thus, could not prove reliance on an alleged misstatement).

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

1    Here, Plaintiffs were not "ignorant of the true facts." It is undisputed that they had the two-

2    page Atmel Plan well before the merger and before Microchip made any statements about it.

3    Plaintiffs could read and interpret the Atmel Plan themselves (or seek legal counsel) and decide

4    what they thought it meant. Indeed, Atmel employees who read the Atmel Plan in late 2015 had

5    concerns about whether it would apply to a definitive agreement signed after the November 1, 2015

6    deadline, and the company's lawyers recognized the ambiguity existed and should be resolved by

7    the Board or its Comp Committee, but so such resolution was proposed or approved. Even after

8    Atmel signed the definitive agreement with Microchip on January 19, 2016, employees continued

9    to question whether the Atmel Plan applied – showing there was a continuing, good faith dispute

10    on the applicability of the Atmel Plan to the Microchip merger. It was in this context that Plaintiffs

11    signed their releases, knowingly and voluntarily waiving any claims under the Atmel Plan and

12    accepting severance benefits under the Second Atmel Plan.

13        **3.    Whether The Plan Administrator Relied On The Releases is Irrelevant.**

14    The Plan Administrator determined that Plaintiffs were not entitled to benefits based on the

15    unambiguous language of the Atmel Plan; thus, she did not need to look outside the plan language

16    in making her benefits determination. While Schuman and Coplin asked the plan administrator to

17    rescind their releases [Dkt. 29, at ¶ 69], the plan administrator was not a party to the releases who

18    could "rescind" them and it was not otherwise within her fiduciary duties – which protect the

19    administrator's interpretation of an ERISA plan – to make legal determinations regarding the

20    validity and enforceability of release agreements and statutory waivers. So a plan administrator's

21    decision to not rely on a release in making a benefits determination does not waive a defendant's

22    ability to raise the release as an affirmative defense in subsequent litigation. *See, e.g.*, *Upadhyay I*

23    *v. Aetna Life Ins. Co.*, No. C 13–1368 SI, 2014 WL 186709, at *2 (N.D. Cal. Jan. 14, 2014)

24    (administrator not required to consider release to assert affirmative defense in litigation). As one

25    district court has explained:

26        The Court does not find that the review of the Release is similar to the admission of
          post-denial medical evidence. Here, the Court is not opening up the administrative
27        record or reviewing the administrator's denial under an abuse of discretion standard.
          Rather, the Court reviews the Release as part of Defendant's affirmative defense of

28

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

1    waiver and, because the agreement is central to the relationship between the parties,
2    the Court finds it material.

3    *Parisi*, No. C 06-04359 JSW, 2008 WL 220101, at *3; *accord Gonda v. Permanente Med. Group,*

4    *Inc.*, Case No. 11–cv–01363–SC, 2015 WL 678969, at **3-4 (N.D. Cal. Feb. 17, 2015)

5    (administrator's decision "not to use the Settlement Agreement as a basis for denying benefits

6    during Dr. Gonda's administrative appeals does not preclude assertion of the Settlement

7    Agreement as an affirmative defense in this action"). Accordingly, Defendants properly raised the

8    releases as an applicable affirmative defense in this case, and they bar all of Plaintiffs' benefits and

9    equitable remedy claims.

10   **B.      Plaintiffs Lack Support For Their Breach Of Fiduciary Duty Claims.**

11   The Complaint alleged that Defendants breached fiduciary duties by allegedly "failing to

12   disclose" pre-merger that Microchip did not intend to provide benefits under the Atmel Plan,

13   "affirmatively misrepresenting that defendants would honor the Severance Guarantee Plan when

14   defendants did not intend to do so," telling plaintiffs post-merger that the Atmel Plan had expired,

15   "re-interpret[ing] the Plan after the Merger in a manner that contravened the interpretation and

16   decision previously made by Atmel prior to the merger with respect to the issue of Plan

17   participants' entitlement to benefits in the event that Microchip replaced Dialog as the acquiring

18   company," and delaying in processing claims. [Dkt. 29, at ¶ 89.] None of those claims have merit.

19   Alleged pre-merger statements by Microchip provide no basis for relief, because the Court

20   has already determined that Microchip was not a fiduciary prior to the merger. [Dkt. 54, at 15.]

21   Any allegation that Atmel allegedly misrepresented pre-merger that Microchip would honor the

22   Atmel Plan also fails because no Atmel fiduciary made any such representation. *See, e.g.*, *Leonelli*,

23   887 F.2d at 1199 (division director who told plaintiff, during a termination meeting, that he could

24   "keep all of [his] benefits" if he took early retirement did not have discretionary authority

25   regarding the Plan and, thus, was not a fiduciary against whom a breach of fiduciary duty claim

26   could be pled); *Monper*, 104 F. Supp. 3d at 1181 (recruiters and HR managers who told employees

27   during merger that their retirement benefits would remain the same if they transferred to the new

28   company were acting in ministerial role and, thus, their alleged misstatements, did not give rise to a

breach of fiduciary claim under ERISA). Zoumaras testified in her deposition that, while she may have opined that she believed the Atmel Plan would apply to the Microchip merger, she never would have said that *Microchip* had affirmed the Atmel Plan would apply [Ex. 1, at Ex. HH, at 49:20-50:6], and Laub testified that he did not remember whether employees asked about severance benefits and did not remember answering any questions about severance in the employee meetings in January of 2016 [Ex. 1, Ex. I, at 17:9-17, 41:25-50:2].

As also explained further below, any post-merger representation that the Atmel Plan expired was simply one reasonable interpretation of an ambiguous plan, which cannot constitute a breach of fiduciary duty. Similarly, as explained in Defendants' motion for partial summary judgment on the *Berman* Plaintiffs' benefits claim, there was no pre-merger binding interpretation by a fiduciary that limited a post-merger determination that the Atmel Plan had expired.

Finally, Microchip did not delay in processing claims in breach of fiduciary duty. All claims were processed prior to Plaintiffs filing their FAC and Plaintiffs allege no harm resulting from the claims processing timing. Furthermore, the time period for alleged eligibility under the Atmel Plan closed well over four years ago [Dkt. 29, at ¶ 3], making this claim moot as well.

**C.      As A Matter Of Law, Plaintiffs' Requests For Equitable Relief Fail.**

In their class certification motion, Plaintiffs assert they are seeking four types of equitable relief: 1) an order estopping Microchip from denying Plaintiffs' alleged entitlement to severance benefits under the Atmel Plan; 2) a surcharge based on Microchip's alleged unjust enrichment; 3) an injunction to prevent Microchip from enforcing the releases and soliciting new releases; and 4) an injunction to prevent Microchip from delaying the processing of Plaintiffs' benefits claims. [Dkt. 107, at 18.] While Plaintiffs' releases bar these claims, they also fail on the merits. Indeed, their third and fourth requests are barred by the res judicata in privity effect of the Ninth Circuit's *Berman*, decision, for the reasons explained below.

**1.      There Is No Evidence To Support Relief Based On Equitable Estoppel.**

Under Ninth Circuit law, an equitable estoppel remedy requires a showing of (1) a material misrepresentation by a fiduciary; (2) reasonable and detrimental reliance on the representation; (3) extraordinary circumstances; (4) the provisions of the plan at issue are ambiguous, such that

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

reasonable persons could disagree as to their meaning or effect; and (5) the representations must have been made to the beneficiary involving an oral interpretation of the plan. *See Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821 (9th Cir. 1992); *see also Gabriel*, 773 F.3d at 955, 957 (noting the remedy of equitable estoppel "holds the *fiduciary* to what it had promised" and that "we have held that an ERISA beneficiary must establish 'extraordinary circumstances' to recover benefits under an equitable estoppel theory" (citing *Cigna Corp. v. Amara*, 563 U.S. 421, 441 (2011), and *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996) (per curiam) (internal quotation marks and citations omitted; emphasis added)). "ERISA liability arises from misleading statements only if the statements are made in a fiduciary, not corporate, capacity." *In re Computer Scis. Corp. Erisa Litig.*, 635 F. Supp. 2d 1128, 1140 (C.D. Cal. 2009), *aff'd sub nom. Quan v. Computer Scis. Corp.*, 623 F.3d 870 (9th Cir. 2010) (citing *Alvidres v. Countrywide Fin. Corp.*, No. CV 07-05810RGKCTX, 2008 WL 819330, at *3 (C.D. Cal. Mar. 18, 2008)).

### a. Plaintiffs Did Not Reasonably And Detrimentally Rely On An Oral, Material Misrepresentation Of The Atmel Plan By A Fiduciary.

Plaintiffs' Complaint contains a wide range of vague, run-on allegations regarding supposed misrepresentations made to them about the Atmel Plan, including statements made both pre-merger (that the Atmel Plan would supposedly apply to the Microchip merger) and post-merger (that the Atmel Plan had expired because the change in control did not result from a definitive agreement signed by the November 1, 2015 deadline).

In terms of the post-merger statements that the Atmel Plan had expired, the Ninth Circuit has now held that the phrase "that will result" in the Atmel Plan's requirement that "the Company enters into a definitive agreement (a "Definitive Agreement"), on or before November 1, 2015, that will result in a Change of Control of the Company," was "ambiguous because it does not 'exclud[e] all alternative readings as unreasonable,' *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1110 (9th Cir. 2000), and the ambiguity is not eliminated by reading the phrase in the context of the plan as a whole." *Berman*, 838 Fed. Appx. at 293. It cannot be a "material misrepresentation" to apply one of those reasonable readings and tell employees that the Atmel Plan had expired

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

1    because the change of control did not result from a definitive agreement signed by the November 1,

2    2015 deadline.

3           Furthermore, the class representatives claim no confusion or material concealment of

4    relevant documents or information regarding the Atmel Plan. Plaintiffs' claims are based on the

5    plan language and all of the plaintiffs had the two-page Atmel Plan at issue to review and discuss

6    with any attorney if they wanted to do so. As discussed above, the class representatives admitted

7    that they thought the Atmel Plan and Second Atmel Plan with the release were clear, they had

8    ample time to review and consult an attorney and did so prior to signing, even though they believed

9    that interpreting the Atmel Plan as applying to the Microchip merger was "far more likely to be the

10   correct interpretation" than Microchip's belief that it did not apply. [Ex. 1, at Ex. X, at RFA Resp.

11   Nos. 12-13; Ex. 1, at Ex. Y, at RFA Resp. Nos. 10-11] Nor can Plaintiffs point to any detrimental

12   reliance based on the post-merger statements that the Atmel Plan had expired. If anything, they

13   unjustly *benefitted* by taking the severance payments in exchange for signing the releases and then

14   recanting on the releases without returning the monies and should not be allowed to benefit from

15   their own unclean hands.

16          In terms of the alleged pre-merger statements, Coplin's and Schuman's declarations both

17   asserted that Laub stated in a meeting around January 13, 2016 (prior to the Microchip definitive

18   agreement) that the Atmel Plan "remained in effect, regardless of whether the ultimate purchaser

19   was Microchip or Dialog." [Ex 1, at Exhs. JJ-KK.] However, in their depositions, Coplin admitted

20   he could not remember what Laub specifically said and Schuman admitted he could not remember

21   in detail any meetings with Laub other than a Director-level and above meeting addressing the

22   separate equity acceleration severance program. [Ex. 1, at Ex. S, at 62:11-21; Ex. 1, at Ex. W, at

23   37:1-39:8, 60:4-61:1..]

24          Coplin also claimed he attended multiple HR meetings where Zoumaras stated the Atmel

25   Plan would apply to the Microchip merger because Microchip had approved the FAQs. [Ex. 1, at

26   Ex. KK, at ATMEL PLAN/SCHUMAN000798.] However, the FAQs state only that Microchip

27   "will honor each employment or compensatory contract . . . that are in effect immediately prior to

28   the closing of the transaction." [Ex. 1, at Ex. MM.] The FAQs did not specifically identify the

Atmel Plan as being in effect immediately prior to the Microchip merger. Furthermore, Coplin admitted having at least two conversations with Atmel executives, including Zoumaras, regarding employees' concerns that the FAQs did *not* clearly address whether Microchip would honor the Atmel Plan. [Ex. 1, at Ex. S, at 55:13-56:11.]

Schuman claimed that both Zoumaras and his direct supervisor, Atmel's then-CFO, Steve Skaggs, assured him that the Atmel Plan would apply to the Microchip merger, but he admitted that Skaggs' comments occurred before the Microchip definitive agreement. [Ex. 1, at Ex. W, at 111:4-112:12.] Furthermore, Schuman's declaration claimed that he was in two Finance department-specific meetings on February 29, 2016 – one with Director-level employees and above and one with the larger Finance group – where Microchip's Chief Financial Officer, Eric Bjornholt, supposedly "assured the Atmel employees that, if Microchip acquired Atmel and then terminated Atmel employees, Microchip would honor the severance agreements which the Atmel employees had received" and stated that "Microchip would honor the severance agreements and programs that the Atmel employees had received, if Microchip terminated Atmel employees following the acquisition by Microchip." [Ex. 1, at Ex. JJ, at ATMEL PLAN/SCHUMAN000158.] However, Schuman admitted in his deposition that all he remembered Bjornholt saying was that Microchip would honor those agreements that "were in place" [Ex. 1, at Ex. W, at 87:17-88:2] – not that the Atmel Plan was one of those agreements or that Bjornholt said that Microchip would specifically honor the Atmel Plan.

While Plaintiffs have previously argued that company officers such as Zoumaras, Laub and Skaggs, by default of their positions, must be fiduciaries acting on behalf of Atmel in making alleged statements about the Atmel Plan, that is simply incorrect. As the two-page Atmel Plan made clear, company officers did not have authority to act on its behalf regarding the Plan unless the company (i.e., Board or Comp Committee) expressly granted it in writing. And the Compensation Committee clearly knew how to distinguish administrative duties from fiduciary ones, given the Atmel Plan states that "[t]he Program will be administered *and interpreted* by the Company." [Dkt. 157, at 1030 (emphasis added).] Yet, it did not grant either Zoumaras or Laub written authority to interpret the Atmel Plan as a fiduciary. Rather, the Compensation Committee

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

of the Board of Directors, acting on behalf of the Company, held a meeting on June 24, 2015 – before the Atmel Plan was drafted, before there was any definitive agreement, and long before the Microchip merger – where it granted certain officers, including Zoumaras, Skaggs and Laub, the authority only "to draft, finalize and fully implement" the Atmel Plan in conformance with the Company's directives from the Compensation Committee. [Ex. 1, at Ex. LL.] Those are all purely settlor and ministerial functions. *See, e.g.*, 29 C.F.R. § 2509.75-8(D-2) (listing "purely ministerial functions" under ERISA); *Laska v. Abbott Severance Pay for Emps. of Kos Pharm.*, Case No. CV-13-04417-MWF (AGRx), 2014 WL 12567795, at *2 (C.D. Cal Sept. 30, 2014) (noting that "when plan administrators amend a plan, as with when they establish or structure a plan, they act in their settlor capacity and owe no fiduciary duty to plan beneficiaries"). The Company, acting through the Compensation Committee, never delegated to Zoumaras, Skaggs or Laub in writing the separate discretionary authority to interpret the Atmel Plan as a fiduciary. And given all of the Plaintiffs had a copy of the two-page Atmel Plan spelling out who could act as a fiduciary in interpreting the Atmel Plan, it was not reasonable for them to rely on any of the alleged statements from Zoumaras, Skaggs or Laub when there was no evidence that the Company had delegated its fiduciary authority to them in writing when Plaintiffs knew that was required.

At any rate, communicating with employees about their rights and options under a plan generally is viewed as a ministerial function, *Chaganti v. Ceridian Benefits Servs., Inc.*, 208 F. App'x 541, 547 (9th Cir. 2006) (health plan administrator was not a fiduciary where it communicated with beneficiaries about their rights and options under a COBRA plan), and employees performing ministerial functions are not fiduciaries. *Kyle Rys. Inc. v. Pac. Admin. Servs., Inc.*, 990 F.2d 513, 516 (9th Cir. 1993) (holding that performing ministerial duties does not make someone a fiduciary) (citing 29 C.F.R. § 2509.75-8(D-2) (listing "purely ministerial functions" under ERISA, including "advising participants of their rights and options under the plan")); *see also Leonelli*, 887 F.2d at 1199 (2d Cir. 1989) (division director who told plaintiff, during a termination meeting, that he could "keep all of [his] benefits" if he took early retirement did not have discretionary authority regarding the Plan and, thus, was not a fiduciary); *Monper*, 104 F. Supp. 3d at 1181 (recruiters and HR managers who told employees during merger that their

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

1  retirement benefits would remain the same if they transferred to the new company were acting in

2  ministerial, not fiduciary, role); *Tocker*, 494 F. App'x at 131-32 (benefits manager who told

3  plaintiff he would be eligible for retirement benefits does not acquire fiduciary status by simply

4  communicating such information).

5      There is also no support for detrimental reliance. Schuman and Coplin only allege that they

6  would have "more aggressively looked to find and begin alternate employment sooner" had they

7  known the Atmel Plan would not apply to the Microchip merger. [Ex. 1, at Exhs. FF-GG.]

8  "However, merely refraining from seeking other employment is not considered 'detrimental'

9  reliance sufficient to overcome summary judgment in an equitable estoppel claim under ERISA."

10 Under similar facts, courts have found detrimental reliance to exist only where the plaintiff was

11 induced to voluntarily quit a current job or to reject another pending employment offer. *Biba v.*

12 *Wells Fargo & Co.*, No. C 09–3249 MEJ, 2010 WL 4942559, at **11-12 (N.D. Cal. Nov. 10,

13 2010) ("Biba merely refrained from seeking other employment, which does not constitute

14 detrimental reliance.") (citing *Skinner v. Northrop Grumman Ret. Plan B*, No. CV 07-3923-JFW

15 (JTLx), 2010 WL 679061, at *8 (C.D. Cal. Jan. 26, 2010) (finding that plaintiff's argument that

16 detrimental reliance occurred because plaintiff remained employed longer than plaintiff otherwise

17 would have is "plainly insufficient") and *Piekarski v. Home Owners Sav. Bank, F.S.B.*, 956 F.2d

18 1484, 1494 (8th Cir. 1992) (no detrimental reliance found where the plaintiff "did not decline

19 pending job offers or pass up a concrete opportunity to look for other jobs")). Coplin admits he

20 "does not recall if there was any 'specific alternate employment' that he might have sought prior to

21 the merger" [Ex. 1, at Exhs. FF-GG] and, while Schuman believes that he "might have sought

22 employment earlier" with a couple of companies or contacted a recruiting firm [*Id.*], it is clear that

23 the class representatives did not turn down any specific job offers believing the Atmel Plan would

24 apply to the Microchip merger, as required to show their alleged detrimental reliance.

25      ***b.    Plaintiffs Have No Evidence Of Extraordinary Circumstances.***

26      "'Extraordinary circumstances' generally involve acts of bad faith on the part of the

27 employer, attempts to conceal a significant change in an ERISA plan, or affirmative acts of fraud.

28 Extraordinary circumstances have been found where the plaintiff repeatedly and diligently inquired

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

about benefits and the defendant repeatedly misrepresented the scope of coverage available to the plaintiff over an extended course of dealing. Additionally, a plaintiff's particular vulnerability may be a factor to consider when determining the existence of extraordinary circumstances." *Biba*, 2010 WL 4942559, at *12 (citing cases); *accord Gabriel*, 773 F.3d at 956-57 (noting that other "[circuit] courts have held that making 'a promise that the defendant reasonably should have expected to induce action or forbearance on the plaintiff's part,' as well as 'conduct suggesting that [the employer] sought to profit at the expense of its employees,' a 'showing of repeated misrepresentations over time,' or evidence 'that plaintiffs are particularly vulnerable' can constitute extraordinary circumstances" (internal citations omitted)).

Plaintiffs readily admitted that their Complaint did not specifically mention "extraordinary circumstances" and they provided the exact same, generalized allegations regarding alleged extraordinary circumstances in their responses:

1.  Atmel management and Microchip management supposedly told employees pre-merger that the Atmel Plan would apply to the Microchip merger;

2.  "Microchip management knew and/or should have known that these statements, and its actions, were false and/or misleading at the time they occurred, and that Plaintiff and others would rely on these statements and actions" to supposedly "induce Atmel employees to remain employed with Atmel through the Atmel/Microchip merger date;

3.  Microchip supposedly "decided several months before the merger that Microchip would take the position (after the merger) that the Plan had 'expired' and that no severance benefits would be paid to beneficiaries under the Plan" but never disclosed that position prior to the merger and, instead, "deliberately concealed" it;

4.  After the merger, Microchip made "false and misleading statements" in "bad faith" that the Atmel Plan had expired supposedly "in an attempt to save itself more than $12 million in severance benefits." [Ex. 1, at Exhs. FF-GG.]

The first and third allegations "merely repeat the same traditional estoppel factors and would apply to virtually every misrepresentation relating to [severance benefits]. Those reasons, therefore, cannot constitute extraordinary circumstances." *Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal.*, No. SACV150736DOCDFMX, 2017 WL 11467730, at *7 (C.D. Cal. Sept. 25, 2017) (citing *Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544, 1553 (3d Cir. 1996) ("extraordinary circumstances" requires more than just satisfying the ordinary elements of equitable estoppel)).

As to the second allegation, Plaintiffs simply speculate that Microchip management knew

and/or should have known that pre-merger statements and actions were false and/or misleading and that Plaintiffs would rely on them in deciding to remain at Atmel through the merger. However, Plaintiffs have no evidence that Microchip actually knew about any of the alleged pre-merger misrepresentations supposedly made to Plaintiffs – let alone that Microchip (or Atmel) reasonably expected Plaintiffs to rely on those alleged statements and forgo alternate employment prior to the merger. Furthermore, Plaintiffs have no evidence that Microchip made any oral pre-merger representations about the Atmel Plan to them and the only pre-merger written communication involving Microchip are the FAQs, which do not specifically identify the Atmel Plan as one of the employment or compensatory contracts "that are in effect immediately prior to the closing of the transaction" or represent that Microchip had agreed to honor the Atmel Plan specifically. Further, Plaintiffs "ha[ve] not alleged that [they are] particularly vulnerable or susceptible to lies or misrepresentations" to demonstrate extraordinary circumstances. *Biba*, 2010 WL 4942559, at *12.

Similarly, the fourth allegation is merely a conclusory statement that Microchip allegedly made "false and misleading statements" in "bad faith" to supposedly save itself money by not paying out the severance benefits. However, Microchip's interpretation of the Atmel Plan as having expired was not false or misleading. As the Ninth Circuit's opinion makes clear, the Atmel Plan was ambiguous and subject to more than one reasonable reading. Microchip simply applied one of those reasonable readings and Plaintiffs have provided no evidence that anyone at Microchip gave them a different interpretation – or said anything to them specifically about the Atmel Plan at all – prior to the merger. While Plaintiffs want to speculate that Microchip had a "bad faith" intent to save itself money, that is a conclusion without evidence. Indeed, that argument would apply in all benefits cases where alleged benefits were not paid out – wholly subsuming the concept of extraordinary circumstances. Plaintiffs have no actual evidence of intent to defraud or other bad faith motive by Microchip. Indeed, while Plaintiffs pursued discovery on the theory that Microchip denied benefits so that it could invest that money and profit from it, Microchip produced evidence in discovery showing it made no such profit. [Declaration of Eric Bjornholt, attached as Ex. 5.]

Ultimately, Plaintiffs' allegations are simply conclusory statements without supporting

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

evidence that fail to establish the requisite extraordinary circumstances. *See, e.g.*, *Tamrazian v. Unum Life Ins. Co. of Am.*, Case No. 2:19-cv-05583-SVW-JPR, 2020 WL 4288441, at *4 (C.D. Cal. April 14, 2020) (finding the allegation that "[u]nder these extraordinary circumstances, had Defendants not made such misrepresentations, Plaintiff and/or Mr. Tamrazian would have taken other steps, including but not limited to, obtaining separate insurance and/or converting the policy," were merely conclusory allegations insufficient to establish extraordinary circumstances).

**2.      Plaintiffs Are Not Entitled To Equitable Surcharge.**

An unjust enrichment surcharge claim seeking disgorgement of profits "generally requires specifically identifiable property or its traceable proceeds"; otherwise, it is a claim for restitution in law, not equity, and is not a cognizable equitable claim under Section 502(a)(3), which is limited to "appropriate equitable relief." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 664 (9th Cir. 2019) ("Given the absence of any particular property in this case, plaintiffs' request for disgorgement is not equitable in nature.").

Here, there is no identifiable property or traceable proceeds attributable to the severance benefits. Rather, the undisputed evidence shows that: 1) Microchip did not identify and separate out any amount of cash for paying separated Atmel employees severance benefits they might have been eligible to receive if the Atmel Plan had not expired; and 2) Microchip has never had a segregated, separately identifiable fund of cash for paying separated Atmel employees severance benefits they might have been eligible to receive if the Atmel Plan had not expired. [Ex. 5, at ¶¶ 5-6; Ex. 1, at Ex. P, at 48:22-24.] To the extent Plaintiffs seek surcharge "based on the recent performance of Microchip's stock and the stock market in general" [Dkt. 110, at 16], this Court already rejected that argument in *Berman*. *Berman*, Case No. 17-cv-01864-HSG, 2019 WL 4168970, at *2 (N.D. Cal. Sept. 9, 2019). Accordingly, Plaintiffs' surcharge request fails.

**3.      Plaintiffs Are Not Entitled To Injunctive Relief.**

*a.      Plaintiffs' Injunctive Relief Claims Are Barred by Res Judicata.*

Following the class certification briefing in this case, the Ninth Circuit ruled in *Berman* that the district court should have dismissed the plaintiffs' injunctive relief claim for failure to plead irreparable injury. *Berman v. Microchip Tech. Inc.*, 838 Fed.Appx. 292, 293 (Mem.) (9th Cir.

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

March 2, 2021). The complaints in the two matters are pled identically in terms of the request for injunctive relief. Applying the principle of res judicata in privity, the Ninth Circuit's holding bars Plaintiffs from seeking any injunctive relief for failure to plead irreparable injury. *See, e.g.*, *Trujillo v. Santa Clara Cnty.*, 775 F.2d 1359, 1366 (9th Cir. 1985) (stating that "res judicata precludes a plaintiff from litigating a claim if: the claim relates to the same "primary right" as a claim in a prior action, the prior judgment was final and on the merits, and the plaintiff was a party or in privity with a party in the prior action"). Here, the *Schuman* plaintiffs' injunctive relief claims are not only similar to the *Berman* plaintiffs' injunctive relief claims – they arose out of the *same* nucleus of facts pled *identically* by the *same* attorneys. Indeed, the *Berman* plaintiffs sought relief from the releases at issue here, even though only the *Schuman* plaintiffs signed them. Additionally, the Ninth Circuit's decision on injunctive relief was final on the merits and privity exists between the *Schuman* plaintiffs and the *Berman* plaintiffs.

### b.    Plaintiffs' Injunctive Relief Claims Also Fail on the Merits.

#### i.    Injunctive Relief For Plaintiffs' Releases Is Not Appropriate.

As explained above, the releases are valid and enforceable. In ruling on Defendants' motion to dismiss Plaintiffs' injunctive relief claim related to the releases, the Court held that, "*[a]t this stage of the litigation*, Plaintiffs have adequately pled irreparable harm, as the consequences of losing job benefits are not always 'merely monetary,' and can 'carr[y] emotional damages and stress, which cannot be compensated by mere back payment of wages.'" [Dkt. 54, at 18 (emphasis added).] However, at the summary judgment stage, Plaintiffs have not – and cannot – produce any such evidence of irreparable harm. Given Plaintiffs cannot show detrimental reliance based on the post-merger statements that the Atmel Plan had expired, they certainly cannot show irreparable injury. Furthermore, such hypothetical consequences (emotional damages and stress) are completely individual in nature and Plaintiffs assert their request for injunctive relief related to the releases "do not turn on individualized issues." [Dkt. 110, at 13.]

Plaintiffs' request for an injunction prohibiting enforcement of the releases is nothing more than a request for rescission dressed up in yet another name. The Court already dismissed Plaintiffs' rescission claim for failure to tender back the severance benefits they received under the

Second Atmel Plan. [Dkt. 54, at 23-24.] While Plaintiffs tried to skirt the tender back requirement by claiming they were seeking "an order declaring voidable the wrongfully obtained releases (and not rescission per se)" [Dkt. 38, at 26-27], the Court agreed with Defendants that Plaintiffs' claim was a rescission claim that failed to plead the requisite elements. [Dkt. 54, at 23-24.] Plaintiffs have never cited any case law showing that they can obtain injunctive relief to avoid enforcement of a contract when they cannot seek rescission to avoid enforcement of that same contract. If parties were allowed to avoid the tender back requirement by simply calling their rescission request an "injunction," it would render the tender back requirement utterly meaningless.

And given rescission was the available remedy, but Plaintiffs failed to comply with the tender back requirement, there is no other available equitable relief to allow them to avoid the releases. Indeed, it would be *inequitable* to allow them to take money in exchange for waiving claims and then avoid their contractual promise after refusing to return the money received. *See, e.g.*, *Republic Molding Corp. v. B.W. Photo Utils*., 319 F.2d 347, 349 (9th Cir.1963) ("What is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendants."). Accordingly, Plaintiffs' request for injunctive relief to avoid enforcement of the releases fails.

ii.    Injunctive Relief Regarding Claims Delay Fails And Is Moot.

Plaintiffs' request for "an injunction to prevent Microchip from continuing to delay processing plaintiffs' claims for ERISA benefits" [Dkt. 107, at 12] is moot, as all claims were processed prior to Plaintiffs filing their FAC. Indeed, the parties stipulated to Defendants withdrawing their motion to dismiss the original complaint so that Plaintiffs could remedy their failure to exhaust administrative remedies under the claims process. [Dkt. 26-27.] Furthermore, given Plaintiffs' assertion that the eligibility period closed on March 19, 2017 [Dkt. 29, at 1-2], no new claims can be submitted and processed. Accordingly, such a request should be denied as moot.

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant summary judgment on all Counts and dismiss Plaintiffs' First Amended Complaint with prejudice.

1

RESPECTFULLY SUBMITTED this 9th day of December 2021.

2

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

3

4

By: s/ Mark G. Kisicki

5

Mark G. Kisicki
Elizabeth M. Soveranez, admitted *pro hac vice*

6

2415 East Camelback Road, Suite 800

7

Phoenix, AZ 85016
Tel.: 602.778.3757

8

Fax : 602.778.3750
mark.kisicki@ogletreedeakins.com

9

elizabeth.soveranez@ogletreedeakins.com

10

11

Mark Schmidtke, admitted *pro hac vice*
56 S. Washington Street, Suite 302

12

Valparaiso, IN 46383
Tel.: 219.242.8668

13

Fax: 219.242.8669
mark.schmidtke@ogletreedeakins.com

14

Erika L. Leonard, admitted *pro hac vice*

15

301 Congress Avenue, Suite 1150
Austin, TX 78701

16

Tel.: 512.344.4700
Fax: 512.344.4700

17

erika.leonard@ogletree.com

18

*Attorneys for Defendants*

19

20

21

22

23

24

25

26

27

28

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

**PROOF OF SERVICE**

I, Berlinda Corpora, declare:

I am a citizen of the United States and employed in Maricopa County, Arizona. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 2415 East Camelback Road, Suite 800, Phoenix, Arizona 85016. On December 9, 2021, I served a copy of:

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

by electronic transmission. I am familiar with the United States District Court, Northern District of California's practice for collecting and processing electronic filings. Under that practice, documents are electronically filed with the court. The court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, assigned judge, and any registered users in the case. The NEF will constitute service of the document. Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities. Under said practice, the following CM/ECF users were served:

Michael Rubin                                          *Attorneys for Plaintiff*
Matthew Murray
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108

Cliff Palefsky
Keith Ehrman
MCGUINN, HILLSMAN & PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133

William B. Reilly
LAW OFFICE OF WILLIAM REILLY
86 Molino Avenue
Mill Valley, CA 94941

Executed on December 9, 2021, at Phoenix, Arizona.

/s/ Berlinda Corpora
49553267.v1-OGLETREE