OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., SBN 00504800
Mark G. Kisicki, Esq. (CA SBN 150057)
mark.kisicki@ogletreedeakins.com
Elizabeth M. Soveranez (AZ SBN 024009) admitted *pro hac vice*
elizabeth.soveranez@ogletreedeakins.com
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Tel.: 602.778.3700
Fax: 602.778.3750

Mark Schmidtke (IN SBN 1733-45) admitted *pro hac vice*
56 S. Washington Street, Suite 302
Valparaiso, IN 46383
Tel.: 219.242.8668
Fax: 219.242.8669
mark.schmidtke@ogletreedeakins.com

Erika L. Leonard (GA SBN 565965) admitted *pro hac vice*
301 Congress Avenue, Suite 1150
Austin, TX 78701
Tel.: 512.344.4700
Fax: 512.344.4701
erika.leonard@ogletree.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

Oakland Division

| | |
|---|---|
| PETER SCHUMAN, an individual, and WILLIAM COPLIN, an individual, on behalf of themselves and on behalf of others similarly situated, | Case No. 4:16-CV-05544-HSG |
| | **CLASS ACTION** |
| Plaintiffs, | **DEFENDANTS' TRIAL BRIEF** |
| v. | Trial Date:    July 9, 2026 |
| | Time:    8:30 a.m. |
| MICROCHIP TECHNOLOGY INCORPORATED, a corporation; ATMEL CORPORATION, a corporation; and ATMEL CORPORATION U.S. SEVERANCE GUARANTEE BENEFIT PROGRAM, an employee benefit plan, | Courtroom.:    2, Floor 4 |
| | Judge:    Hon. Haywood S. Gilliam, Jr. |
| | Action Filed:    September 29, 2016 |
| | Trial Date:    April 28, 2023 |
| Defendants. | |

## I.       The Atmel Plan Did Not Apply To Microchip's Merger With Atmel.

In June 2015, the Atmel Board of Directors ("Board") approved the general terms of the U.S. Severance Guarantee Benefit Program ("Atmel Plan") that would expire on November 1, 2015 if, by that date, Atmel had not signed a definitive agreement "that will result in a change of control." The Board authorized four executives to "draft, finalize and fully implement" the Atmel Plan, but never delegated to them authority to interpret or administer it.

When Microchip began negotiating a potential merger with Atmel and gained access to the virtual data room that Atmel had created for its negotiations with Dialog, Microchip had access to all documents that Atmel represented reflected or imposed material obligations on it. Microchip reviewed a number of employment contracts, which existed for only a few executive employees. Microchip also reviewed various benefit and severance plans and change of control agreements. Some executives had change of control agreements and were covered under a comprehensive severance plan, which expressly stated it was a qualified ERISA plan governed by ERISA and included detailed administration and claims procedures. Another change of control obligation, which was reflected only in Atmel Board minutes, applied only to Director-level employees and above and provided that their unvested equity awards would vest immediately if they suffered an employment loss following any change of control, without regard to the date of any definitive agreement.

The data room also included the Atmel Plan. The Atmel Plan stated that no actions by anyone other than the Board or its Compensation Committee could be taken that would significantly increase the Atmel Plan's cost. However, other than the Board's initial approval of the Atmel Plan, the data room did not include any document indicating the Board had taken any action *whatsoever* regarding the Atmel Plan.  Nor did the data room include any document that referenced the Atmel Plan.  Indeed, Atmel never disseminated any written communication to all of the employees covered by the Atmel Plan that interpreted it in any respect.

On January 19, 2016, Atmel terminated the definitive agreement it had signed with Dialog and entered into a definitive merger agreement with Microchip.  As the February 2016 FAQs explained, Microchip agreed as part of the definitive agreement to honor all

> employment and compensatory contracts including retention awards and employment, employment continuation, severance, incentive and change in control agreements) with Atmel, or its subsidiaries, that are in effect immediately prior to the closing of the transaction.

[Trial Ex. 20.]  At no subsequent point did Atmel disseminate any communication to all employees expressly referring to the Atmel Plan.  The only communication to any group of employees that referred to the Atmel Plan was a January 14, 2016 letter the HR VP sent to Director-level (and above) employees for the purpose of confirming in writing what had been orally explained to them regarding their equity acceleration rights in the event of any change of control. That letter was never intended to be an interpretation of the Atmel Plan, as demonstrated by: 1) Atmel not putting it into the data room; 2) requiring the directors who received it to keep the letter confidential; and 3) not disseminating or communicating it to the vast majority of Atmel Plan participants, who were not employees at the Director-level or above.

Following Atmel and Microchip signing their definitive agreement, no statements by either Atmel or Microchip were communicated generally to Atmel employees that identified the Atmel Plan. Instead, Microchip and Atmel repeated the verbiage to which Microchip had agreed; *i.e.*, that Microchip would honor various employment agreements "*that are in effect immediately prior to the closing of the transaction.*"  Although many employees asked Atmel to clarify whether the Atmel Plan applied to the Microchip merger, and Atmel's HR VP proposed to Atmel's senior executive and general counsel that such a representation should be made in a letter or in FAQs regarding the Microchip pending acquisition, Atmel never disseminated any response to the employees' requests.

Less than three months after the Microchip-Atmel definitive agreement, the merger closed on April 4, 2016. Microchip's CEO met with employees and, in response to questions about the Atmel Plan, stated Microchip's position that it had expired and did not apply to the Microchip merger. **As the Ninth Circuit's *Berman* decision held, that position was a reasonable**

**interpretation of the Atmel Plan.** However, some Atmel employees were upset and said that they had been told or led to believe by their supervisors or HR representatives that the Atmel Plan did apply. As a matter of law, such statements are not binding fiduciary interpretations. However, in response, Microchip offered a different severance plan conditioned on employees agreeing to resolve the dispute about whether the Plan applied to the Microchip merger and waive their claims to Atmel Plan severance benefits. The vast majority of Atmel employees accepted Microchip's offer. Ultimately, a small percentage of Atmel's employees were terminated without cause (fewer than 20%) in the year following the acquisition.

## II.    The Releases Are Valid Waivers And Should Be Enforced.

Microchip concluded that the Atmel Plan did not apply to its acquisition of Atmel, and the Ninth Circuit has made clear that was a reasonable interpretation. But when Microchip learned there was a dispute about the Atmel Plan interpretation, it offered the employees a new severance plan to resolve that good faith dispute. Employees who accepted it signed agreements under which they knowingly and voluntarily waived their claims under the Atmel Plan by signing Severance and Release Agreements. *Parisi v. Kaiser Found. Health Plan Long Term Disability Plan*, No. C 06-04359 JSW, 2008 WL 220101, at *4 (N.D. Cal. Jan. 25, 2008). Furthermore, because Microchip has demonstrated that Plaintiffs signed agreements that clearly released their claims, Plaintiffs bear the burden to prove they did not knowingly and voluntarily sign the releases. *Ogbolu v. Trustees of Columbia Univ.*, 2022 WL 280934 (S.D.N.Y. Jan. 31, 2022) (quoting *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 952 N.E.2d 995, 1000 (N.Y. 2011)), *aff'd*, No. 22-419, 2023 WL 2579044 (2d Cir. Mar. 21, 2023) ("If the language of the release is clear and unambiguous, the signing of a release is a jural act binding on the parties. Once a defendant presents a signed release, the burden shifts to the plaintiff to demonstrate that there is some sufficient reason to void the release."). The undisputed evidence precludes any such showing.

### A.    **Plaintiffs cannot obtain equitable relief to avoid their waivers.**

Equitable relief under Section 502(a)(3) is limited to relief that was typically available in equity before the merger of law and equity. *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643,

664 (9th Cir. 2019) ("'equitable relief' in ERISA does not mean 'whatever relief a common-law court of equity could provide.'" (internal citation omitted)). While appropriate injunctions are available under Section 502(a)(3), an injunction to keep a party from enforcing a contract is not a remedy that was typically available in equity.

Equity provides remedies to avoid contracts obtained by fraud, duress, or a breach of fiduciary duties. But Plaintiffs offer no authority to establish that courts typically grant injunctive relief to avoid enforcement of voluntarily signed releases absent rescission and tender back of consideration received in exchange for the releases. Rather, case law shows that courts afford injunctive relief against contractual obligations only to prevent irreparable harm based on a *valid* claim for rescission. *See, e.g.*, *Rosenfield v. HSBC Bank, USA*, No. 10-CV-00058-MSK-MEH, 2010 WL 3489926, at *7 (D. Colo. Aug. 31, 2010). Moreover, the remedy Plaintiffs seek is nothing other than rescission, and when seeking a remedy "equivalent" to one equity provides, Plaintiffs must meet the elements that equity imposes for that relief. *CIGNA Corp. v. Amara*, 563 U.S. 421, 443 (when seeking remedy equivalent to estoppel, plaintiff must establish required elements of estoppel).

Moreover, Plaintiffs knew all the facts possibly relevant to a knowing waiver. They had the actual plan document, and knew Microchip's position. Plaintiffs had the two-page Atmel Plan, they believed it clearly entitled them to benefits, they knew there was a dispute over the Plan's interpretation, they disagreed with Defendants' interpretation, they believed their interpretation was "more" correct, and they either consulted with an attorney or felt they understood ERISA well enough that they did not need to seek legal advice. While the Berman plaintiffs did not sign the Severance and Release Agreements because they knew they would be giving up rights they believed they had under the Atmel Plan, Plaintiffs knowingly released their claims, took benefits they received only in exchange for their releases, and sued anyway.

Unlike the defendants in *Varity*, Defendants concealed no material fact from Plaintiffs; Defendants simply had one reasonable interpretation of a two-page document (that Plaintiffs possessed) and Plaintiffs had another. To conclude Defendants' reasonable interpretation of the Plan exposes them to liability for a breach of fiduciary duty would mean *every* denial of benefits decision

subjects actual and alleged fiduciaries to breach of fiduciary duty claims. That is not, and could not be, the law.

Even under the Ninth Circuit's newly-articulated nine-factor test on knowing and voluntary waivers, simply interpreting a two-page ambiguous plan – that all Plaintiffs had – in one way, cannot rise to level of improper conduct by a fiduciary *inducing* any of the Plaintiffs to sign the releases. *See, e.g.*, *Leavitt v. Nw. Bell. Tel. Co.*, 921 F.2d 160, 162 (8th Cir. 1990) (separation agreement with release was "knowingly and voluntary," and thus, enforceable under nine-factor test; plaintiff could not demonstrate "inducement" or "disparity of knowledge" since he was aware of the relevant facts underlying his ERISA claim, had time to consider whether to sign the release, was free to reject or accept it, and there was no evidence of "overreaching, exploitation or other misconduct").

B.    **Defendants Did Not Breach Their Fiduciary Duties.**

Plaintiffs current "principal theory" of breach is that, after the merger Defendants failed to investigate assertions by employees that they had been told the Atmel Plan applied to the Microchip acquisition and, instead, Defendants continued to seek and obtain releases. However, as explained above, nothing that Plaintiffs rely on (the January 14, 2016 Director-level equity acceleration confidential letter that was not disseminated to the vast majority of Atmel Plan participants or placed in the data room, the February 2016 FAQs and pre-merger statements that Microchip would honor severance benefits *in effect immediately preceding the merger* – which applied to *other* severance benefits – without any specific reference to or representation about the Atmel Plan, or alleged statements by low-level supervisors or HR representatives) constituted a binding, pre-merger interpretation of the Atmel Plan that would have changed Defendants' or the Plan Administrator's reasonable interpretation of the Atmel Plan. Moreover, ERISA does not impose a general fiduciary duty on fiduciaries to investigate, and Microchip had no such duty with respect to the Atmel Plan after the acquisition. Plaintiffs' unfounded argument that such a generalized obligation exists is based on a single Sixth Circuit decision that created a specific three-part rule for a particular situation (a duty to investigate before relying on financial advisors). *Gregg v. Transp. Workers of Am. Int'l*, 343 F.3d 833, 841 (6th Cir. 2003).

Dated:  June 2nd, 2026          Respectfully submitted,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

By: s/ Mark G. Kisicki
Mark G. Kisicki
Elizabeth M. Soveranez
2415 East Camelback Road, Suite 800
Phoenix, AZ 85016

Mark Schmidtke
56 S. Washington Street, Suite 302
Valparaiso, IN 46383

Erika L. Leonard
301 Congress Avenue, Suite 1150
Austin, TX 78701

Attorneys for Defendants

**PROOF OF SERVICE**

I, Morgan A. Fingleton, declare:

I am a citizen of the United States and employed in Maricopa County, Arizona. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 2415 East Camelback Road, Suite 800, Phoenix, Arizona 85016. On June 2nd, 2026, I served a copy of:

**DEFENDANTS' TRIAL BRIEF**

by electronic transmission. I am familiar with the United States District Court, Northern District of California's practice for collecting and processing electronic filings. Under that practice, documents are electronically filed with the court. The court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, assigned judge, and any registered users in the case. The NEF will constitute service of the document. Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities. Under said practice, the following CM/ECF users were served:

Michael Rubin                                            *Attorneys for Plaintiff*
Matthew J. Murray
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108

Cliff Palefsky
Keith Ehrman
MCGUINN, HILLSMAN & PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133

William B. Reilly
LAW OFFICE OF WILLIAM REILLY
86 Molino Avenue
Mill Valley, CA 94941

Executed on June 2nd, 2026, at Phoenix, Arizona.

/s/ Morgan A.Fingleton