Michael Rubin (SBN 80618)
Matthew Murray (SBN 271461)
Marisa Lowe (SBN 366248)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone:     (415) 421-7151
Facsimile:     (415) 362-8064
Email:          mrubin@altber.com
                     mmurray@altber.com
                     mlowe@altber.com


Cliff Palefsky (SBN 77683)
Keith Ehrman (SBN 106985)
MCGUINN, HILLSMAN & PALEFSKY
220 Jackson St., Suite 350
San Francisco, CA 94111
Telephone:     (415) 421-9292
Facsimile:     (415) 403-0202
Email:          cp@mhpsf.com
                     keith@mhpsf.com

William B. Reilly (SBN 177550)
LAW OFFICE OF WILLIAM REILLY
86 Molino Avenue
Mill Valley, CA 94941
Telephone:     (415) 225-6215
Facsimile:     (415) 634-2897
Email:          bill@williambreilly.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| PETER SCHUMAN, an individual, and WILLIAM COPLIN, an individual, on behalf of themselves and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MICROCHIP TECHNOLOGY INCORPORATED, a corporation; ATMEL CORPORATION, a corporation; and ATMEL CORPORATION U.S. SEVERANCE GUARANTEE BENEFIT PROGRAM, an employee benefit plan, <br><br> Defendants. | Case No. 4:16-CV-05544-HSG <br><br> **CLASS ACTION** <br><br> **PLAINTIFFS' TRIAL BRIEF** <br><br> Trial Date:     July 9, 2026 <br> Time:     8:30 a.m. <br> Courtroom.:     2, Floor 4 <br> Judge:     Hon. Haywood S. Gilliam, Jr. <br><br> Action Filed:     September 29, 2016 |

After nearly a decade of litigation, the issues in this ERISA class action have considerably narrowed; and because the parties have now jointly agreed to 90 Stipulated Facts, the upcoming July 9 bench trial can likely be completed in fewer than the scheduled seven trial days. *See* Jt. Pretrial Statement (Dkt. 238) at 3-17.[1]

Three principal issues remain to be decided at trial: (1) whether Atmel, prior to the close of its merger with Microchip on April 4, 2016, took any "action," made any "decision," or offered any "interpretation" of the Atmel Plan that addressed whether the Plan expired on November 1, 2015 (as Microchip contends) or whether instead it remained in effect after the merger close (as plaintiffs have demonstrated), because under the Plan's plain language, any such pre-merger action etc. would be "conclusive and binding" on defendants entitling all Plan beneficiaries to the full amount of severance benefits provided by the Plan if Microchip terminated them without cause before mid-March 2017; (2) whether Microchip violated its fiduciary duties of undivided loyalty and against self-dealing by, *inter alia,* falsely informing all plaintiffs and class members that the Plan had expired on November 1, 2015, that they would not be paid any benefits under that self-funded plan, and that unless the plaintiffs and class members signed broad claims releases in exchange for half of the amounts guaranteed by the Plan, they would have to sue Microchip to have any chance of obtaining Plan benefits; and (3) whether Microchip's breaches of fiduciary duty require the Court to invalidate the claims releases that Microchip obtained from the two plaintiffs and 213 of the class members.

## I.    Plaintiffs Are Entitled to Atmel Plan Benefits under Section 503(A)(1)(B) of ERISA.

The parties previously agreed that Microchip's denial of plaintiffs' benefits claims must be reviewed *de novo*, with no deference given to the Plan Administrator's decisions, for the reasons the Court explained in *Berman v. Microchip Technology Inc.*, No. 4:17-CV-01864-HSG, Dkt. 177 at 4-12. *See* Jt. Pretrial Statement at 42 & n.2; Dkt. 182 at 18. Although Microchip has long contended that the key Plan language defining "Initial Trigger Event" is ambiguous, it has never offered any meaningful response to plaintiffs' showing that Atmel made a series of "conclusive

---

[1] Although the Court has not yet ruled on defendant Microchip et al's ("Microchip's") motions to decertify the class and re-open discovery (Dkts. 218, 226), plaintiffs assume for purposes of this trial brief that those motions will be decided before the July 9 trial date.

and binding" pre-merger determinations that the Plan did *not* expire on November 1, 2015 and that any plaintiffs and class members terminated without cause by Microchip between the merger close date and March 17, 2017 *were* entitled to Plan benefits. That uncontroverted evidence includes the Plan drafters' deposition testimony and correspondence from Atmel to plaintiffs and others, including new employees hired *after* Microchip was announced as Atmel's merger partner, confirming that pre-merger interpretation. *See, e.g.,* Stip. Fact Nos. 14-21; Trial Exs. 10, 11, 16, 20, 22, 26; Pl. Disputed Fact Nos. 2-5; Pl. Opp. to Mot. to Decertify, Dkt. 221 at 3-4; *Berman* Dkt. 177 at 14-15 (summarizing evidence).[2] While Microchip apparently intends to present a handful of emails (mostly hearsay) from or referring to low-level employees who expressed uncertainty about the Plan's meaning (but had no role in drafting or implementing the Plan), those emails neither expressed the intent of the Plan drafters nor rebut plaintiffs' showing that Atmel conclusively interpreted the disputed Plan language prior to the merger close.

For the five class members who never signed claims releases, that is all plaintiffs need to prove to entitle those particular class members to benefits. *See* Stip. Fact No. 85.

## II.  Microchip Breached Its Fiduciary Duties to Plaintiffs and Class Members, including by the Manner through which It Obtained Their Claims Releases.

Once the merger closed on April 4, 2016, Microchip as Atmel's successor company became a fiduciary that owed the Plan beneficiaries (plaintiffs and class members) a duty of undivided loyalty and not to act in its own self-interest. *See* Jt. Pretrial Statement at 44-47 (citing authorities). Microchip flagrantly breached those duties, including by falsely representing, shortly after the merger close and throughout the following year, that the Plan had expired the previous November, that those beneficiaries were not entitled to any severance benefits under the Plan, and that unless the beneficiaries executed broad claims releases in exchange for 50 cents on the dollar, they would have to sue to recover any benefits under the Plan. *See* Stip. Facts Nos. 41-46, 87, 89;

---

[2] The governing Plan language stated that pre-merger, "[a]ny decision made or other action taken by the Company [Atmel] with respect to the Program, and any interpretation by the Company of any term or condition of the Program, or any related document will be conclusive and binding on all persons and be given the maximum possible deference allowed by law." Trial Ex. 3. The Plan drafters included this provision to prevent a successor company from depriving Atmel's loyal employees of the promised severance benefits – precisely what Microchip did.

Pl. Disputed Fact Nos. 10-12.[3]

Microchip's CEO, Steve Sanghi, decided long before the merger close – without having read the Plan – that Microchip would not honor the Plan because he believed that the amount of severance it provided was too "generous." *See* Stip. Fact Nos. 24, 35. Although Microchip knew or should have known no later than April 6, 2016 that Atmel had previously made conclusive and binding pre-merger determinations that the Plan remained in effect after November 1, 2015 and would apply to Microchip after the merger, *see, e.g.,* Stip. Fact Nos. 36-37; Pl. Disputed Fact Nos. 6-10, Sanghi and others at Microchip deliberately ignored that evidence, refusing even to investigate what determinations Atmel had made or why. Instead, they implemented a deliberate and callous scheme to save Microchip millions of dollars at the expense of the Plan beneficiaries.[4]

Even after the first five *Berman* plaintiffs filed administrative claims on May 20, 2016, attaching hundreds of pages of unrefuted (and irrefutable) evidence that Atmel executives (including Plan drafters Zoumaras and Laub), in written *and* oral communications to plaintiffs and other beneficiaries, had provided express reassurances that the Plan remained in effect and would be fully applicable to Microchip after the merger, *see, e.g.,* Stip. Fact No. 58-60; Dkt. 176 at 9, Microchip continued to solicit 50% claims releases from class members, including the 210 (of 220) who were terminated and signed releases *after* May 20, 2016, long after Microchip was on notice of Atmel's "conclusive and binding" construction. Stip. Fact Nos. 86-89.

## III.  Plaintiffs' and Class Members' Releases Do Not Bar Their Claims.

Throughout most of this litigation, Microchip's principal defense was that this Court

---

[3] *See also* Pl. Opp. to Mot. to Decertify (Dkt. 221) at 5. Microchip also breached its fiduciary duties in several additional respects, including by failing to engage in any investigation of Atmel's pre-merger binding construction even after being put on notice that Atmel employees had been informed that the Plan continued to protect them (Stip. Fact Nos. 36-37, 44, 58-60; Pl. Disputed Fact Nos. 9-10, 14), by failing to inform beneficiaries the Plan was covered by ERISA or that they had the right to file claims and appeals under ERISA (Stip. Fact No. 55; Pl. Disputed Fact No. 13), and by instructing the Claims Administrator to deny the beneficiaries' ERISA claims and appeals without any independent investigation, including into Atmel's pre-merger "conclusive and binding" construction of the Plan (Stip. Fact Nos. 79-83; Pl. Disputed Fact Nos. 23-24).

[4] Microchip's failure to investigate – including after being informed as early as April 6, 2016 that its former Atmel employees were "upset" because they had been reassured by senior Atmel officials that they would be entitled to Plan benefits if they continued to work until the merger and Microchip later terminated them without cause, Stip. Fact No. 44 – constituted an additional breach of its fiduciary duties. *See* Jt. Pretrial Statement at 44-45 (citing cases).

lacked the authority to invalidate an ERISA claims release obtained in breach of a defendant's fiduciary duties. This Court rejected that defense at least three times.[5] The Ninth Circuit has now rejected it as well, adopting a multi-factor, totality-of-circumstances test for determining when to invalidate an ERISA claims release, with the most important factor being whether the defendant obtained the release through conduct that breached its fiduciary duties. *Schuman v. Microchip Tech. Inc.*, 139 F.4th 1045, 1053-54, 1055-56 (9th Cir. 2025) ("releases and waivers under ERISA must 'withstand special scrutiny designed to prevent potential employer or fiduciary abuse,'" a level of scrutiny that is "of particular importance where, as here, there is evidence that the defendant potentially breached its fiduciary duty by or in the course of obtaining a release of ERISA claims," which if proven "may weigh particularly heavily against finding that the release was 'knowing' or 'voluntary' or both") (quoting *Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1012 (9th Cir. 1997)); *id.* at 1049, 1051 ("The primary question in this appeal is . . . whether any improper fiduciary conduct . . . undermines the validity of the release").[6]

Microchip's principal response is essentially to contend that ERISA benefits actions like this may never proceed on a class basis, because no matter how egregiously an ERISA defendant breaches its fiduciary duties in the course of inducing a beneficiary to sign a claims release, it is

[5] Dkt. 54 at 17, 19 (denying motion to dismiss); Dkt. 122 at 23-24 (certifying class); Dkt. 131, Ex. A at 3 (approving proposed class notice); *see also* Dkt. 176 at 22-25; *CIGNA Corp. v. Amara*, 563 U.S. 421, 444 (2011); 29 U.S.C. §1132(a)(3) (permitting actions "to enjoin any act or practice which violates" ERISA, in addition to any "other appropriate equitable relief."); *Peters v. Aetna*, 2 F.4th 199, 217 (4th Cir. 2021) ("Trust law recognizes that an injunction may be proper '[i]f the beneficiary can show that an act contemplated by the trustee or a third person would amount to a breach of trust or otherwise prejudice the beneficiary.'"); Restatement (3d) of Trusts §95 cmt. c (2012) (equitable remedies for fiduciary breaches include "enjoining the trustee to take or refrain from taking certain action(s)," "setting aside an improper action of the trustee," and "issuing such other orders or taking such other action as may be appropriate to the circumstances").

[6] *See also* Restatement (3d) of Trusts § 97(c), cmt. f (2012) (fiduciary abuses authority and breaches duty by "threatening to withhold a distribution to which the beneficiary is entitled unless the beneficiary executes a release" or if the release "involves a bargain that is not substantially fair and reasonable. "); *Bellow v. Bellows*, 196 Cal.App.4th 505, 510 (2011) ("A trustee may not require a beneficiary to relieve the trustee of liability as a condition for making a distribution or payment to, or for the benefit of, the beneficiary, if the distribution or payment is required by the trust instrument."); *Howe v. Varity Corp.*, 36 F.3d 746, 756 (8th Cir. 1994), *aff'd*, 516 U.S. 489 (1996) (affirming ruling that beneficiaries were "entitled to an injunction reinstating them as members of the" ERISA plans to which they would have belonged had they never transferred jobs, the relief that would "restore[] [them] to the position they would have occupied if the [breaches of fiduciary duty] had never occurred."); *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1186 (9th Cir. 2004) (order "put[ting plaintiffs] in the position they would have been had Chevron not breached its fiduciary duty" was appropriate under §502(a)(3)).

entitled to conduct a beneficiary-by-beneficiary inquiry into the Ninth Circuit's non-exhaustive factors to determine the extent to which each beneficiary relied on the defendant's false assertion that no benefits were owed. Microchip's argument completely misses the point. As the case authorities and common law trust principles cited *supra* at 4 n.6 (and the analysis in plaintiffs' opposition to Microchip's motion to decertify) make clear, there is a material difference between breaching a fiduciary duty by mistakenly construing an ambiguous, disputed Plan provision against a beneficiary (the most common scenario in which the Ninth Circuit's test will apply) and the unique facts of this case where Microchip *knew* or should have known that class members were entitled to benefits yet demanded they sign sweeping releases as a condition of receiving just a fraction of what Microchip knew they were owed, i.e., without offering legally valid consideration. Trust law prohibited Microchip from inducing the releases by requiring the class members to make that "choice." That is why, even if every class member who signed a release were well-educated, read the release language, had counsel available, and had been told that Atmel believed the Plan could continue to exist after the Microchip merger, the releases would still be invalid.

An ERISA fiduciary that knows (or should know) that benefits are owed under self-funded plan may not refuse to pay those benefits while forcing the beneficiaries to whom it owes a duty of undivided loyalty to choose between suing to recover what is owed or signing a comprehensive release for just a fraction of the owed amount. As plaintiffs have shown, if the law were otherwise, the Ninth Circuit would have affirmed this Court's summary judgment order rather than reversing it, because plaintiffs do not dispute that plaintiffs Schuman and Coplin read the proffered releases, knew the relevant facts, and were well-educated.[7]

---

[7] As plaintiffs explained in opposing decertification, six of the Ninth Circuit's non-exclusive factors, including the all-important ninth factor, apply in the same manner to all class members: (2) employee input – none; (3) clarity of release language – questionable; (4) time to deliberate – at least seven days; (7) opportunity to consult with counsel – yes; (8) consideration – none; (9) improper conduct by fiduciary – absolutely. Dkt. 221 at 11-13. Even if some variation among class members existed with respect to the three remaining factors – (1) education and experience; (5) actual review of the release language; and (6) knowledge of rights – those factors could not change the result in light of Microchip's flagrant violations of its fiduciary duty. Under ERISA and settled trust law principles, a fiduciary may not force plan beneficiaries to choose between filing a lawsuit and accepting a fraction of what the fiduciary knows it owes, whether or not that beneficiary believes that a court would ultimately rule in its favor in such a lawsuit, because a fiduciary has no authority to force its beneficiaries to make that illusory "choice."

Dated:  June 2, 2026

Respectfully submitted,

**ALTSHULER BERZON LLP**
MICHAEL RUBIN
MATTHEW J. MURRAY
MARISA C. LOWE

**MCGUINN, HILLSMAN & PALEFSKY**
CLIFF PALEFSKY
KEITH EHRMAN

**LAW OFFICE OF WILLIAM REILLY**
WILLIAM REILLY

By: */s/Michael Rubin*
       Michael Rubin
      *Attorneys for Plaintiffs*

Plaintiffs' Trial Brief, Case No. 4:16-cv-05544-HSG