UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PETER SCHUMAN, et al.,

          Plaintiffs,

      v.

MICROCHIP TECHNOLOGY
INCORPORATED, et al.,

          Defendants.

Case No.  16-cv-05544-HSG

**ORDER DENYING MOTION TO
DECERTIFY CLASS**

Re: Dkt. Nos. 218

Pending before the Court is the motion to decertify the class filed by Defendants Microchip Technology Inc. ("Microchip"), Atmel Corporation ("Atmel"), and Atmel Corporation U.S. Severance Guarantee Benefit Program ("Benefit Plan") (collectively, "Defendants").  *See* Dkt. No. 218 ("Mot."); Dkt. No. 221 ("Opp."); Dkt. No. 223 ("Reply").  The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted.  *See* Civil L.R. 7-1(b).  For the reasons discussed below, the Court **DENIES** Defendants' motion to decertify the class.

## I.    BACKGROUND

The Parties are familiar with the factual background and procedural history of this long-running case.  Accordingly, the Court now summarizes only the facts necessary to adjudicate Defendants' motion.

### A.    Relevant Facts

This is an ERISA class action regarding Defendants' alleged failure to pay severance benefits owed under the Atmel Corporation U.S. Severance Guarantee Benefit Program (the "Atmel Plan" or "Plan").  *See* Dkt. No. 29 (First Amended Complaint or "FAC").  In 2015, Atmel's senior executives created the Atmel Plan to encourage employees to keep

working for Atmel while it sought to be acquired by another company. *See* Dkt. No. 122 ("Class Cert. Order") at 1; FAC at ¶¶ 2, 18–19. The Plan included, among other provisions, a cash payment of between 25 percent and 50 percent of an employee's annual base salary. *See* Class Cert. Order at 2; FAC at ¶ 21. By its terms, the Plan would terminate on November 1, 2015, "unless an Initial Triggering Event occurred prior to November 1, 2015, in which event the [Plan] [would] remain in effect for 18 (eighteen) months following that Initial Triggering Event." *See Berman v. Microchip Technology Inc.*, Case No. 17-cv-01864-HSG, Dkt. No. 157 at 1029. The Plan defined an "Initial Triggering Event" as "a definitive agreement . . . that will result in a Change of Control of the Company." *Id.*

In September 2015, Atmel entered into an agreement with third-party Dialog Semiconductor. *See* Dkt. No. 107-1, Ex. D. at 121–66. However, the agreement with Dialog never closed because Microchip made a better offer. *Id.* at 113, 167–68; *see also* Dkt. No. 107-2, Ex. H at 2. The merger between Atmel and Microchip ultimately closed in April 2016. *See* FAC at ¶ 36. The parties dispute whether an Initial Triggering Event occurred such that the Atmel Plan remained effective beyond November 2015, because the eventual "Change of Control" (with Microchip) did not involve the same company (Dialog) that entered into a "Definitive Agreement with Atmel before November 1, 2015."

Atmel executives testified that by design the "Initial Triggering Event" and "Change of Control" did not have to involve the same companies. One Atmel executive who drafted the Plan explained that it was "very carefully worded" to ensure benefits would still be available even if a superior bid were made by a different company. *See* Dkt. No. 107-1, Ex. A at 11 (19:17–25); Dkt. No. 176-1, Ex. B ("Zoumaras Depo.") at 28–30 (21:18–23:1). Similarly, Atmel's CEO testified that he believed the Change of Control with Microchip fell within the terms of the Plan and that he discussed the Plan with Microchip's CEO. *See* Dkt. No. 107-1, Ex. B at 28–29, 33–35 (11:7–12:10, 21:19–23:23). According to Atmel's CEO, because the Initial Triggering Event with Dialog had occurred before the November 2015 deadline, the Plan remained in effect until March 2017. Dkt. No. 176-1, Ex. C ("Laub Depo.") at 72–79, 82 (7:1–14:5, 18:6–21).

Consistent with this understanding, in the months before the Microchip merger closed,

2

several Atmel executives reassured Atmel employees that the Plan remained in place. In January 2016, for example, Atmel's then-Senior Vice President of Global Human Resources sent a letter to Atmel employees assuring them that the Plan "continues to remain in place." *See* Zoumaras Depo. at 32–34, 68 (25:1–27:24, & Ex. 4). The letter reminded employees of the benefits they could be eligible to receive if they were terminated following "an acquisition by Dialog or Microchip." *See id.*; *see also* Laub Depo. at 88 (24:2–16) (Atmel CEO testifying that he communicated to employees that "their severance agreements would be effective if Microchip turned out to be the acquirer"). And in February 2016, Atmel's Human Resources Department distributed a "Frequently Asked Questions" memorandum stating that "Microchip has agreed to honor each of your employment and compensatory contracts agreements"—including severance agreements— "that are in effect immediately prior to the closing of the transaction." *See* Dkt. No. 176-2, Ex. S at 61–62; *see also* Dkt. No. 185 ("MSJ Order") at 3.

However, in April 2016, following the merger, Microchip's CEO told Atmel employees at a series of meetings that they were not entitled to any benefits under the Plan. *See* Dkt. No. 176-1, Ex. D ("Carr Depo.") at 131–32 (39:1–40:23); *id.*, Ex. E ("Sanghi Depo.") at 222–26, 231–32, 245–48 (67:5–71:1, 76:18–77:20, & Ex. 6); *id.*, Ex. R at 595–98. Microchip's CEO stated that the Plan had expired and that they "would have to fight him in court if they wanted to challenge him on their entitlement to benefits under the Severance Plan." *See* Dkt. No. 176-1, Ex. R ("Coplin Decl.") at 546–49. He further stated that "Microchip was nevertheless willing to offer terminated Atmel employees 50% of the benefits provided by the Severance Plan if Atmel employees signed an agreement accepting this 50% proposal, and if they later signed a release of claims." *See id.*

Plaintiffs in this case were terminated without cause following the merger with Microchip, and were offered reduced severance benefits. *See, e.g.*, Dkt. No. 163-1, Ex. R to Ex. 1 at 109–114. As relevant to this case and Defendants' motion to decertify the class, 215 of the 220 Plaintiffs signed a release in exchange for a portion of the severance benefits provided under the Atmel Plan.[1] *See, e.g.*, Dkt. No. 176-2, Ex. S at 56–59.

---

[1] Five class members in this case did not sign a release. *See* Dkt. No. 221 at 5.

United States District Court
Northern District of California

**B.     Procedural History**

As relevant here, Plaintiffs sought to certify a single class of former employees of Atmel Corporation who were terminated without cause after Atmel was acquired by Microchip. *See* Dkt. No. 107 at 1.  They sought class certification of two claims for relief:  (1) equitable relief for breach of fiduciary duty under Section 502(a)(3), 29 U.S.C. § 1132(a)(3); and (2) improper denial of benefits under Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  Class Cert. Order at 7. Defendants argued that the class members' releases were valid and precluded liability as to almost all class members.  *Id.* at 23.  They further urged that the resolution of the claims would turn on individualized inquiries into the validity of each class member's release.  *Id.* at 9–10.  Plaintiffs, in turn, responded that the releases were invalid due to Microchip's class-wide communications that misrepresented the terms of the Plan (namely, that the Plan had expired).  *Id.*  Based on Plaintiffs' theory of liability, the Court expressly disagreed with Defendants that resolution of the claims would require 200 mini-trials regarding the validity of the releases.  *Id.* at 24–25.  In February 2020, the Court thus certified a class of 220 former U.S. employees of Atmel who had been terminated by Microchip without cause between April 4, 2016, and March 19, 2017.  Class Cert. Order at 7, 25.

At summary judgment, however, the Court again considered the import and validity of the signed releases.  In August 2023, the Court granted in part Defendants' motion for summary judgment, holding that the named Plaintiffs' releases were enforceable as knowing and voluntary under a six-factor test applied by several district courts in this Circuit.[2]  MSJ Order at 11–12. Plaintiffs did not challenge Defendants' proffered evidence that the releases were knowing and voluntary under the six-factor test.  *Id.* at 15.  Nor did they offer an alternative test.  *Id.*  Instead, they argued that this issue was simply irrelevant where, as they claim here, Microchip allegedly violated its fiduciary duties by the very act of seeking releases in exchange for severance benefits.

---

[2] The test the Court applied originated in the Second Circuit.  *See* MSJ Order at 11–12 (citing *Rombeiro v. Unum Ins. Co. of Am.*, 761 F. Supp. 2d 862, 868–69 (N.D. Cal. 2010) (collecting cases)).  Those factors include: (1) plaintiff's education and business sophistication; (2) the respective roles of employer and employee in determining the provisions of the waiver; (3) the clarity of the agreement; (4) the time plaintiff had to study the agreement; (5) whether plaintiff had independent advice, such as that of counsel; and (6) the consideration for the waiver.  *Id.*

United States District Court
Northern District of California

MSJ Order at 12. But Plaintiffs offered no authority for this approach to circumvent the ERISA releases. *Id.* And because the six-factor test that the Court applied did not include consideration of Defendants' improper conduct (if any), the Court found that the two named Plaintiffs' releases "were obtained knowingly and voluntarily." *Id.* at 17. Based on the six-factor test, the Court concluded "that the threshold question regarding enforceability of the releases implicates individualized considerations," and ordered the parties to show cause why the class should or should not be decertified. *Id.* at 17–18.

Based on the parties' responses, in April 2024 the Court entered final judgment under Federal Rule of Civil Procedure 54(b) in favor of all Defendants and against the two named Plaintiffs. Dkt. No. 198 at 2. The Court reasoned that because "[o]ne of the threshold disputes in this case is what legal test the Court should apply in determining the enforceability of the releases," all parties and the Court would "benefit from a prompt interlocutory review of the Court's summary judgment order to enable the Ninth Circuit to provide a definitive resolution of that issue, which could materially affect how the remainder of this case will proceed." *Id.* at 1. Plaintiffs appealed. Dkt. No. 199.

In June 2025, the Ninth Circuit reversed the summary judgment order. *See Schuman v. Microchip Tech. Inc.*, 139 F.4th 1045, 1056 (9th Cir. 2025). As an initial matter, the Ninth Circuit held that "when a breach of fiduciary duties is alleged, courts must evaluate releases and waivers of ERISA claims with 'special scrutiny designed to prevent potential employer or fiduciary abuse.'" *Id.* at 1052 (citing *Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1012 (9th Cir. 1997) (*en banc*)). The court reasoned that such heightened scrutiny is consistent with ERISA's purpose "to protect . . . the interests of participants in employee benefit plans . . . ." *Id.* (citing 29 U.S.C. § 1001(b)). Thus, in evaluating the validity of a release of claims under ERISA, "courts must consider alleged improper conduct by the fiduciary in obtaining a release as part of the totality of the circumstances concerning the knowledge or voluntariness of the release or waiver." *Id.* at 1053. The Ninth Circuit identified the following non-exhaustive factors:

> (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the

clarity of the release language; (4) the amount of time the employee had for deliberation before signing the release; (5) whether the employee actually read the release and considered its terms before signing it; (6) whether the employee knew of his rights under the plan and the relevant facts when he signed the release; (7) whether the employee had an opportunity to consult with an attorney before signing the release; (8) whether the consideration given in exchange for the release exceeded the benefits to which the employee was already entitled by contract or law; and (9) whether the employee's release was induced by improper conduct on the fiduciary's part.

*Id.* The court further explained that where "the district court has found a genuine issue of fact material to the issue of a breach of fiduciary duty in obtaining the release of claims, the final factor warrants serious consideration and may weigh particularly heavily against finding that the release was 'knowing' or 'voluntary' or both." *Id.* at 1053–54.

Three months after the mandate issued and this Court reopened the case, Defendants filed a motion to decertify the class.  Dkt. No. 218.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(c)(1)(C), a district court may decertify a class "at any time." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."); *see also* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").  The standard applied in reviewing a motion to decertify is the same one that applies to a motion for class certification. *Montera v. Premier Nutrition Corp.*, No. 16-cv-06980-RS, 2022 WL 1225031, at *3 (N.D. Cal. Apr. 26, 2022).  On a motion for decertification, the burden remains on the plaintiffs, as the parties seeking class certification, to show that class is still properly certified. *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947–48 (9th Cir. 2011) (in deciding whether to decertify class, district court "properly placed the burden on [the plaintiff] to demonstrate that Rule 23's class-certification requirements had been met").

To maintain a class action, the Court must consider, as before, whether the requirements of

Rule 23 have been met. *Id.* at 946. The Court's "class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 465–66 (2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011)). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage," and "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1194–95; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) ("[A] district court *must* consider the merits if they overlap with the Rule 23(a) requirements."). The issue to be decided in a certification motion is whether the case should be "conducted by and on behalf of the individual named parties only" or as a class. *See Dukes*, 564 U.S. at 348.

## III.    DISCUSSION

Defendants urge that class certification is no longer appropriate in light of the Ninth Circuit's opinion denying summary judgment and remanding. Dkt. No. 218. As explained more fully below, the Court disagrees. Nevertheless, as the burden remains on Plaintiffs to show that certification is still warranted, *see Marlo*, 639 F.3d at 947–48, the Court considers Defendants' arguments for decertification in the context of the Court's prior class certification order.

### A.    Rule 23(a)

#### i.    Numerosity

Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1). The Court previously found that class, which includes over 200 former Atmel employees, satisfies the numerosity requirement. *See* Class Cert Order at 10; Dkt. No. 108 at 7. Defendants do not dispute this, and the Court incorporates its prior analysis and again finds this requirement is met.

#### ii.    Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d

United States District Court
Northern District of California

975, 978–79 (9th Cir. 2008). An individual question is one where "members of a proposed class will need to present evidence that varies from member to member," while a common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). What matters to class certification is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (emphasis omitted). Even a single common question can establish commonality. *Id.* at 359.

Previously, the Court concluded that the commonality requirement was met based on five common questions that Plaintiffs identified:

> (1) whether the Dialog merger agreement satisfied the Atmel Pan's "Initial Triggering Event"; (2) whether Microchip was a fiduciary of the Atmel Plan; (3) whether Microchip violated its fiduciary duty by claiming that the Atmel Plan had expired; (4) whether Microchip obtained claims releases from Plaintiffs in violation of its fiduciary duty; and (5) what equitable and monetary relief Plaintiffs may be entitled to as a result.

*See* Class Cert. Order at 10. At the time, the Court reasoned that "[t]hese questions [] will undisputedly generate common answers for the class . . . ." *Id.* at 11. Nothing in the Ninth Circuit's recent opinion undermines the Court's conclusion that these merits questions have common answers for the class.

Still, Defendants attempt to sidestep these questions by arguing that the validity of the releases is a threshold, individual question that will "swamp[]" any common question. Mot. at 20. In essence, Defendants appear to argue that the common questions identified above will not produce common answers "apt to drive the resolution of the litigation." The Court disagrees. Questions such as "whether Microchip violated its fiduciary duty by claiming that the Atmel Plan had expired" and "whether Microchip obtained claims releases from Plaintiffs in violation of its fiduciary duty" remain critical to both the merits of Plaintiffs' claims *and* the validity of the releases. Far from undermining the Court's class certification analysis, the Ninth Circuit explicitly stated that "courts must consider alleged improper conduct by the fiduciary in obtaining a release

8

as part of the totality of the circumstances concerning the knowledge or voluntariness of the release or waiver." *Schuman*, 139 F.4th at 1053.  And the court explained that this factor "warrants serious consideration and may weigh particularly heavily against finding that the release was 'knowing' or 'voluntary' or both." *Id.* at 1053–54.  In short, questions about whether Defendants breached their fiduciary duties in claiming the Plan expired are likely to generate common answers as to whether the releases may be enforced.  The Court thus finds that the commonality requirement continues to be satisfied.

### iii.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted).  In assessing typicality, the Court looks at whether Plaintiffs are the proper parties to proceed with the suit. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–158, & n.13 (1982).

The Court previously rejected Defendants' arguments that named Plaintiffs Peter Schuman and William Coplin are subject to unique defenses that defeat typicality. *See* Class Cert. Order at 11–13.  Defendants urged, for example, that the named Plaintiffs' releases were knowing and voluntary, and thus enforceable, because Plaintiff Coplin was familiar with ERISA as a director-level employee with a background in human resources, and Plaintiff Schuman consulted with an attorney prior to signing the release. *See id.*  But the Court explained that such considerations did not undermine Plaintiffs' legal arguments that the releases were invalid because "Defendants uniformly [and improperly] informed Plaintiffs that they were not entitled to benefits under the Atmel Plan." *Id.* at 12–13.

Defendants repeat their arguments that the named Plaintiffs are "differently situated from each other and from others in the class with respect to the releases." Mot. at 20–21.  And as with the commonality requirement discussed above, Defendants contend that the validity of the releases is inherently an individualized issue for each individual class member.  But the Court already

rejected these exact arguments at the class certification stage, *see* Class Cert. Order at 12–13, and the Ninth Circuit's recent decision simply underscores that the Court must consider a fiduciary's alleged improper conduct when considering whether a waiver is knowing and voluntary. *See Schuman*, 139 4th at 1053–54. Although the Ninth Circuit identified multiple factors, it also stated that a breach of fiduciary duty "may weigh particularly heavily against finding that the release was 'knowing' or 'voluntary' or both." *Id.* at 1053–54. In light of this framework, the Court continues to find typicality satisfied. The named Plaintiffs' claims "arise[] from the same course of events" and involve "similar legal arguments to prove [Defendants'] liability." *See Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quotation omitted).

### iv.    Adequacy of Representation

Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent the interests of the class." Defendants do not challenge the adequacy of the named Plaintiffs, and the Court incorporates its prior analysis and continues to find that this requirement is met. *See* Class Cert. Order at 14–15.

### B.    Rule 23(b)

Having found that Plaintiffs continue to meet the requirements of Rule 23(a), the Court next addresses whether certification of Plaintiffs' remaining two claims continues to be appropriate under Rule 23(b)(2) and 23(b)(3).

### i.    Rule 23(b)(2)

The Court previously found certification of Plaintiffs' breach of fiduciary duty claim appropriate under Rule 23(b)(2) and, in the alternative, under Rule 23(b)(3). *See* Class Cert. Order at 19–21, 21–25.

"Rule 23(b)(2) applies only when a single injunction . . . would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. The "key" to certifiability under Rule 23(b)(2) "is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined . . . only as to *all* of the class members or as to *none* of them." *Id.* (quotation omitted) (emphasis added). The Ninth Circuit previously held that "[c]lass certification under Rule 23(b)(2) is appropriate only where the *primary* relief sought is declaratory

United States District Court
Northern District of California

or injunctive." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001) (quotation omitted) (emphasis added). The Supreme Court has raised concerns about—but left open—whether certification is appropriate under Rule 23(b)(2) where any monetary relief is requested given the diminished procedural protections the Rule provides absent class members. *See Dukes*, 564 U.S. at 360. However, the Court has clarified that due process does not authorize class certification under Rule 23(b)(2) where a claim requires "an *individualized* award of monetary damages." *Id.* at 360–61 (emphasis added). The Ninth Circuit has thus explained that, to determine if injunctive relief predominates, the court should examine what procedural safeguards are required by due process, instead of considering the amount of damages sought. *See Ellis*, 657 F.3d at 986–87.

Defendants first contend that decertification of Plaintiffs' breach of fiduciary duty claim under Rule 23(b)(2) is warranted because Plaintiffs have abandoned or lost all claims to equitable relief, including injunctive relief. Mot. at 18–19. Defendants point out, for example, that Plaintiffs are no longer seeking equitable surcharge, recission, or an injunction estopping Defendants from denying or delaying Plaintiffs' right to benefits. *Id.* at 2–3, 7, 18–19. Defendants acknowledge that Plaintiffs are still seeking an injunction prohibiting enforcement of their releases, but urge that the Court lacks the authority to provide such relief. *See id.* But whether Plaintiffs are ultimately entitled to the injunctive relief they seek is a merits question that does not undermine certification: whether the Court has authority to provide injunctive relief to the class members who signed releases is answerable as to the class as a whole. *See* Opp. at 13.

Moreover, the Court agrees with Plaintiffs that Defendants have "confuse[d] a court's broad authority to invalidate claims releases that are not knowing and voluntary or that otherwise violate public policy with a court's authority to issue particular forms of injunctive relief under Section 502(a)(3) of ERISA." *See id.* at 14. "[W]here there has been a breach of fiduciary duty, ERISA grants to the courts broad authority to fashion remedies for redressing the interests of participants and beneficiaries." *Donovan v. Mazzola*, 716 F.2d 1226, 1235 (9th Cir. 1983) (explaining that Congress intended the courts to draw on principles of traditional trust law, which "provides for broad and flexible remedies in cases involving breaches of fiduciary duty").

11

Accordingly, if the Court finds that Defendants breached their fiduciary duty in obtaining the releases from Plaintiffs, the Court has broad remedial power to find those releases unenforceable.[3]

Defendants next assert that certification is improper under Rule 23(b)(2) because the primary relief that Plaintiffs seek is monetary rather than injunctive. *See* Mot. at 18–19. Defendants suggest that the injunction Plaintiffs seek—to find the releases unenforceable—is in fact a duplicative request for monetary relief in "disguise[]." *Id.* at 19. Defendants point out that the end result of such an injunction would be to require Microchip to pay benefits under the Plan. *Id.* Defendants further argue that the injunctions would not serve any other equitable purpose, such as curbing Defendants' conduct moving forward or prevent other individuals from experiencing the same alleged harm. *Id.* But Defendants offer no authority for this technical reading of Rule 23(b)(2). That an injunction may ultimately clear the way for the class to receive a monetary payment does not render the injunction a nullity or somehow transform Plaintiffs' requested injunctive relief into one for monetary damages.

Lastly, Defendants argue that the breach of fiduciary duty claim must be decertified under Rule 23(b)(2) because a single injunction could not provide relief to each individual class member. *See id.* Once again, Defendants urge that the nine-factor test that the Ninth Circuit articulated on appeal will require individualized inquiries. Consequently, some releases may be valid and enforceable whereas others are not. *Id.* As discussed in more detail below, however, the Court does not agree that the Ninth Circuit's test necessarily precludes class certification under these circumstances. Plaintiffs' theory of the case, and the basis for their breach of fiduciary duty claim, is that Defendants uniformly and improperly (1) claimed that the Plan had expired and (2) solicited the releases based on this assertion. The Ninth Circuit held that courts must consider such conduct when evaluating whether releases were knowing and voluntary, and that it "may

---

[3] Contrary to Defendants' suggestion otherwise, the Ninth Circuit has not weighed in on whether Plaintiffs can remedy the alleged fiduciary breaches through an injunction prohibiting the enforcement of the releases. *See* Mot. at 2. The passages from the Ninth Circuit opinion that Defendants cite concern whether this Court's Rule 54(b) certification was proper (it was), and whether the Ninth Circuit should adopt a test that *always* first asks whether a release is unenforceable because of the fiduciary's improper conduct in obtaining it (the court declined to do so). *See id.* (citing *Schuman*, 139 F.4th at 1054, & n.4).

weigh particularly heavily against finding that the release was 'knowing' or 'voluntary' or both." *See Schuman*, 139 F.4th at 1053–54. The Court need not determine at this stage whether this single factor is dispositive under the circumstances. But if Defendants' uniform conduct was improper, the Court may be able to address it in a single injunction finding the releases unenforceable.

Accordingly, the Court finds that certification of Plaintiffs' breach of fiduciary duty claim remains appropriate under Rule 23(b)(2).

### ii.    Rule 23(b)(3)

The Court previously found certification of both Plaintiffs' claims appropriate under Rule 23(b)(3). *See* Class Cert. Order at 21–25. Federal Rule of Civil Procedure 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The Court addresses both the predominance and superiority requirements below.

#### a.    Predominance

The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 577 U.S. at 453. When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* The predominance inquiry requires three steps: "First, we identify which questions are central to the plaintiffs' claim. Second, we determine which of these questions are common to the class and which present individualized issues. Third, we analyze whether the common questions predominate over the individual questions." *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1233 (9th Cir. 2024).

#### 1.    Denial of Benefits Claim

In support of their motion to decertify, Defendants attempt to leverage the tension in the

United States District Court
Northern District of California

Court's prior class certification order and order granting summary judgment. At class certification, the Court found that common issues predominated. *See* Class Cert. Order at 22–23. But then at summary judgment, based on the parties' new arguments, the Court found "that the threshold question regarding enforceability of the releases implicates individualized considerations." MSJ at 18.[4] Notably, at the summary judgment stage, the only test the Court had before it was the six-factor test raised by Defendants.[5] *See* MSJ Order at 11–12. This six-factor test did not require any evaluation of improper conduct by the ERISA fiduciary. *See id.* Thus, at summary judgment, the Court strictly applied the six-factor test and did not consider the class-wide communications allegedly misrepresenting the terms of the Plan as part of its evaluation of whether the releases were entered into knowingly and voluntarily. *See id.* at 12–18.

Defendants contend that in light of this Court's summary judgment analysis and the Ninth Circuit's new nine-factor test, Plaintiffs cannot satisfy Rule 23(b)(3)'s predominance requirement. *See* Mot. at 13–14. Specifically, Defendants argue that individualized proof will be required to determine the enforceability of each release because the Court must consider the totality of the circumstances. They posit that considerations of each class member's "background, knowledge, and understanding," such as his or her education and business sophistication, are inherently individualized and not susceptible to class-wide proof. *Id.* Defendants further argue that these individual considerations "plainly predominate[] over the common questions of the appropriate interpretation of the Atmel Plan's ambiguous language." *Id.* at 13.

The Court disagrees that the individual considerations the Court must consider under the nine-factor test necessarily predominate over the common questions. The heart of Plaintiffs' case is—and has always been—whether Defendants mischaracterized the Atmel Plan and thus misled

---

[4] As the Court noted, no party raised any multi-factor test at the initial class certification stage. *See* MSJ Order at 13, 18, & n.4. Instead, "[t]he parties' class certification briefs focused on the uniformity (or lack thereof) of the communications that Defendants made to class members . . . ." *Id.* at 18.

[5] Plaintiffs declined to proffer any alternative test, instead suggesting that whether the releases were knowing and voluntary was irrelevant here because "Microchip violated its fiduciary duties by the very act of obtaining releases in exchange for sharply reduced severance payments." *See* Dkt. No. 176 at 14. Neither party raised the Seventh and Eighth Circuit tests the Ninth Circuit ultimately adopted on appeal.

United States District Court
Northern District of California

employees about their rights under the Plan. And the Ninth Circuit folded this alleged "improper conduct" into its test and highlighted that this "final factor warrants serious consideration and may weigh particularly heavily against finding that the release was 'knowing' or 'voluntary' or both." *Schuman*, 139 F.4th at 1053–54. In short, the Ninth Circuit expressly recognized the possibility that any alleged fiduciary misconduct could predominate over the other factors.

And that is the case here. Whether Defendants engaged in improper conduct in obtaining the releases truly is the "central" and "most important" issue in this case. *DZ Reserve*, 96 F.4th at 1233; *Tyson*, 577 U.S. at 453. This issue is common to the class, *see DZ Reserve*, 96 F.4th at 1233, and it can be decided based on common proof. Plaintiffs advanced substantial evidence of Defendants' class-wide communications that allegedly misrepresented the terms of the Plan and the availability of severance benefits. *See, e.g.*, Carr Depo. at 131–32 (39:1–40:23); Sanghi Depo. at 222–26, 231–32, 245–48 (67:5–71:1, 76:18–77:20, & Ex. 6); *id.*, Ex. R at 595–98; *see also* MSJ Order at 3–4.

To the extent Defendants attempt to transform this last factor into an individualized inquiry, the Court simply is not persuaded. Defendants point out that the Ninth Circuit framed the inquiry in one formulation as asking "whether the employee's release was *induced* by improper conduct on the fiduciary's part." Mot. at 15 (citing *Schuman*, 139 F.4th at 1053–54) (emphasis added by Defendants). But the Ninth Circuit's opinion makes clear that the court was predominantly concerned about the fiduciary's conduct in obtaining a release, not each employee's idiosyncratic mental state in signing the release. The court emphasized that ERISA was enacted "to protect . . . the interests of participants in employee benefit plans" and that the statute "requires a fiduciary, such as an employer, to discharge its responsibilities solely in the interest of the participants and beneficiaries and for the exclusive purpose of . . . providing benefits to them." *Schuman*, 139 F.4th at 1052 (quotations omitted). The court thus concluded that "whether the employee entered into the release knowingly and voluntarily . . . requires an assessment of whether any improper fiduciary conduct, such as an employer's breach of an ERISA-imposed fiduciary duty in the course of *obtaining* the release, undermines the validity of the release." *Id.* at 1049 (emphasis added).

Even if the Court may need to assess the other individualized factors under the Ninth Circuit's test, the predominance inquiry asks whether the common issues are "more prevalent or important" than the individual ones. *Tyson Foods*, 577 U.S. at 453. At this stage, the Court finds that they are. Nevertheless, the Court notes that it can always reassess whether common issues continue to predominate so as to warrant ongoing certification once the Court has developed the common factual record regarding Defendants' conduct in interpreting the Atmel Plan and communicating with class members. *See Rodriguez*, 563 F.3d at 966 (allowing decertification considerations "at any time"); *see also* Opp. at 9, & n.3 (acknowledging that if the Court cannot decide the enforceability of the releases based on the class-wide evidence presented, "the Court could then consider subclassing, bellwether trials, or decertification"). For now, and based on the information presented at this time, the Court finds that common issues continue to predominate as to Plaintiffs' denial of benefits claim.[6]

### 2. Breach of Fiduciary Duty

Defendants also assert that Plaintiffs cannot satisfy Rule 23(b)(3)'s predominance requirement as to Plaintiffs' breach of fiduciary duty claim. Again, the Court disagrees.

First, Defendants contend that the Ninth Circuit has rejected the premise upon which the Court based its prior class certification finding: namely, "that the Atmel Plan unambiguously provided for benefits to the class members." Mot. at 16–17. Defendants contend that because the Ninth Circuit held that the "language of the Atmel Plan is ambiguous," *see Berman v. Microchip Tech. Inc.*, 838 F. App'x 292, 293 (9th Cir. Mar. 2, 2021), "Microchip's interpretation of the ambiguity cannot be classwide proof of a breach of fiduciary duty." At bottom, Defendants submit that their interpretation of the Atmel Plan was entirely reasonable. *See* Mot. at 17. But

---

[6] Defendants also argue that decertification under Rule 23(b)(3) is warranted because the Court previously "accepted Plaintiffs' argument 'that it was coercive for Defendants to repeatedly state that the Atmel Plan had expired as of November 1, 2015 and that Defendants did not owe any benefits under the Plan,'" *see* Mot. at 15, and the Ninth Circuit has rejected that position. Not so. At class certification, the Court did not "accept" Plaintiffs' merits argument. Rather, the Court recognized the evidence of Defendants' class-wide communications and uniform course of conduct. *See* Class Cert. Order at 23. Whether Defendants' communications were in fact coercive is the central merits dispute here, but that issue is common to the class.

whether Plaintiffs can successfully prove their breach of fiduciary duty claim is a merits question that does not defeat class treatment. Whether Defendants' class-wide communications were actually misleading or otherwise in breach of Defendants' fiduciary duties can be proven true or false for all members of the class at once.

Second, Defendants cursorily repeat that the "individualized evaluation of the releases" is "inimical to class certification." *Id.* at 17–18. The Court rejects this argument for the same reasons articulated above. *See supra* **Section III.B.ii.a.1**.

The Court finds that common issues continue to predominate as to Plaintiffs' breach of fiduciary duty claim under Rule 23(b)(3).

### b. Superiority

The Court previously found that Plaintiffs had met Rule 23(b)(3)'s superiority requirement as to both the denial of benefits claim and the breach of fiduciary duty claim. *See* Class Cert. Order at 24–25. Defendants now renew their argument that "individual questions around the validity of each class member's release predominate over the common question of Plan interpretation, and all claims must be decertified." Mot. at 13. Defendants insist that class treatment is not superior to other methods of adjudicating this controversy because "[t]he greater the number of individual issues to be litigated—in this case, at least nine factors times 213 individuals—the more difficult it will be for the Court to manage the class action." *Id.* at 14.

But the Ninth Circuit's nine-factor test does not alter the Court's prior analysis regarding the superiority of a class action to treat common questions that predominate over a numerous class. To the contrary: it would be spectacularly inefficient to have over 200 trials here when the most critical facts that the Ninth Circuit has indicated "warrant serious consideration" and "may weigh particularly heavily," *Schuman*, 139 F.4th at 1053–54, overlap as to all of the class members. Accordingly, having found that common issues continue to predominate as to both of Plaintiffs' claims, the Court continues to find that "trial by class representation would further the goals of efficiency and judicial economy." *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009).

The Court thus finds that certification under Rule 23(b)(3) remains appropriate for both the

United States District Court
Northern District of California

denial of benefits claim and the breach of fiduciary duty claim.

## IV.   CONCLUSION

The Court **DENIES** Defendants' motion to decertify the class.  Dkt. No. 218.

**IT IS SO ORDERED.**

Dated:   6/4/2026

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

18