UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER SCHUMAN, et al., Plaintiffs, v. MICROCHIP TECHNOLOGY INCORPORATED, et al., Defendants. | Case No. 16-cv-05544-HSG **ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL** Re: Dkt. No. 251 |

Pending before the Court is Plaintiff's motion for preliminary approval of class action settlement. *See* Dkt. No. 251. The Court held a hearing on the motion. For the reasons detailed below, the Court **GRANTS** the motion.

## I. BACKGROUND

### A. Factual Allegations and Procedural History

This is a long-running ERISA class action. The Court has previously detailed the lengthy factual and procedural background in prior orders, and incorporates that background here. *See, e.g.*, Dkt. No. 241.

Plaintiffs Peter Schuman and William Coplin initially filed the case in September 2016. Dkt. No. 1. Plaintiffs allege that Defendants (1) failed to pay severance benefits owed under the Atmel Corporation U.S. Severance Guarantee Benefit Program (the "Atmel Plan" or "Plan"); and (2) improperly solicited release of claims from class members in exchange for partial benefits under the Plan. *See* Dkt. No. 29 (First Amended Complaint or "FAC"). Plaintiffs sought class certification of two claims for relief: (1) equitable relief for breach of fiduciary duty under Section 502(a)(3), 29 U.S.C. § 1132(a)(3); and (2) improper denial of benefits under Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). *See* Dkt. No. 122 ("Class Cert. Order") at 7. In February 2020, the

United States District Court
Northern District of California

Court certified a class of 220 former U.S. employees of Atmel who had been terminated by Microchip without cause between April 4, 2016, and March 19, 2017. *Id.* at 7, 25. Unlike the plaintiffs in the related case, *Berman v. Microchip Technology Inc.*, Case No. 17-cv-01864-HSG, 215 of the 220 Class Members here signed a release in exchange for a portion of the severance benefits provided under the Atmel Plan.[1] *See, e.g.*, Dkt. No. 176-2, Ex. S at 56–59, 78–80.

The validity of these releases has been a key issue in the case. In August 2023, the Court granted in part Defendants' motion for summary judgment based on the releases, holding that the named Plaintiffs' releases were enforceable as knowing and voluntary under a six-factor test applied by several district courts in this Circuit.[2] Dkt. No. 185 ("MSJ Order") at 11–12. Following additional briefing, the Court entered final judgment under Federal Rule of Civil Procedure 54(b) in favor of all Defendants and against the two named Plaintiffs only. Dkt. No. 198 at 2. The Court reasoned that because "[o]ne of the threshold disputes in this case is what legal test the Court should apply in determining the enforceability of the releases," all parties and the Court would "benefit from a prompt interlocutory review of the Court's summary judgment order to enable the Ninth Circuit to provide a definitive resolution of that issue, which could materially affect how the remainder of this case will proceed." *Id.* at 1.

In June 2025, the Ninth Circuit reversed the summary judgment order. *See Schuman v. Microchip Tech. Inc.*, 139 F.4th 1045, 1056 (9th Cir. 2025). The Ninth Circuit identified a non-exhaustive, nine-factor test that courts should use to evaluate the knowledge or voluntariness of the release or waiver. *Id.* at 1052–53. These factors include any "alleged improper conduct by the fiduciary in obtaining a release," and the court emphasized that this factor "warrants serious consideration and may weigh particularly heavily against finding that the release was 'knowing' or 'voluntary' or both." *Id.* at 1053–54.

[1] Five class members in this case did not sign a release. *See* Dkt. No. 221 at 5.

[2] The test the Court applied originated in the Second Circuit. *See* MSJ Order at 11–12 (citing *Rombeiro v. Unum Ins. Co. of Am.*, 761 F. Supp. 2d 862, 868–69 (N.D. Cal. 2010) (collecting cases)). Those factors include: (1) plaintiff's education and business sophistication; (2) the respective roles of employer and employee in determining the provisions of the waiver; (3) the clarity of the agreement; (4) the time plaintiff had to study the agreement; (5) whether plaintiff had independent advice, such as that of counsel; and (6) the consideration for the waiver. *Id.*

United States District Court
Northern District of California

After the mandate issued and this Court reopened the case, Defendants filed a motion to decertify the class and a motion to reopen discovery. Dkt. Nos. 218, 226. The Court denied the motions, Dkt. Nos. 241 & 242, and trial was set to begin on July 9, 2026. The parties engaged in further settlement discussions, and notified the Court on June 17, 2026, the day before the pretrial conference, that they had reached a settlement. Dkt. No. 244.

**B. Settlement Agreement**

The parties ultimately entered into a memorandum of understanding, fully executed on July 2, 2026. Dkt. No. 251-3, Ex. A ("MOU"). The key terms are as follows:

Settlement Benefits:

> a. For each of the five Class Members who did not sign a release [], Defendant shall pay an amount equal to (i) 100% of the unpaid severance benefits that such Class Member would have received under the Atmel Plan; plus (ii) interest compounded annually accruing from the date of those Class Members' termination through the Effective Date, at the federal one-year T-Bill rate as of the date the Parties sign this Memorandum of Understanding ("MOU");
>
> b. For each of the two Plaintiffs and each of the remaining 213 Class Members who did sign a Release, Defendant shall pay an amount equal to: (i) 80% of the unpaid portion of the severance benefits that such Plaintiff or Class Member would have received under the Atmel Plan; plus (ii) interest compounded annually accruing from the date of the Plaintiff 's or Class Member 's termination through the Effective Date, at the federal one-year T-Bill rate as of the date the Parties sign this MOU[.]

MOU ¶ 2(a)–(b).

Release: Plaintiffs and Class Members will release Defendants Microchip Technology, Inc., Atmel Corporation, and Atmel Corporation U.S. Severance Guarantee Benefit Program from:

> any and all claims for relief, damages, and remedies, including but not limited to actual damages, statutory damages, statutory penalties, punitive damages, exemplary damages, restitution, disgorgement, equitable relief, injunctive relief, attorneys' fees and costs, prejudgment interest, and/or any other form of monetary or non-monetary Consideration, relief, or payment whatsoever, for any and all claims, causes of action, damages, or remedies by the Class Members that were pleaded or alleged in the Complaint or Amended Complaint in the Action or that could have been pleaded or alleged in the Complaint or Amended Complaint based upon the factual

United States District Court
Northern District of California

> allegations alleged therein, against Defendant and each of them

MOU ¶ 11. Following the hearing on the motion for preliminary approval, the parties confirmed that the release only applies to "Class Members who do not timely and validly opt out" of the settlement. Dkt. No. 254 at 2.

Incentive Award: Defendants shall pay the two named Plaintiffs an additional $10,000 "service award." MOU ¶ 2(e).

Attorneys' Fees and Costs: Class Counsel will file an application for attorneys' fees not to exceed $3.5 million. MOU ¶ 4.

Opt-Out Procedure: Subject to the Court's approval, Class Members may submit a request for exclusion or object to the settlement within 35 days after notice of the settlement is emailed to the Class. *See* MOU ¶ 9; Dkt. No. 251-3 ("Rubin Decl.") at ¶ 10.

## II. CLASS CERTIFICATION

A court may preliminarily certify a settlement class if all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and at least one of the requirements for Rule 23(b) have also been met. *See* Fed. R. Civ. P. 23. As indicated above, however, the Court previously certified a class defined as:

> All former U.S.-based employees of defendant Atmel Corporation who were employed as of the April 4, 2016 closing date of the Atmel-Microchip merger and who were terminated by defendant Microchip Technology Incorporated without cause between April 4, 2016 and March 19, 2017.

*See* Class Cert. Order at 7. The Court also recently denied Defendants' motion to decertify the class. *See* Dkt. No. 241. Thus, "the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." See Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment. The MOU adopts the same class definition. *See* MOU ¶ 2; *see also* Dkt. No. 252-1, Ex. A ("Mot.") at 5. Accordingly, there is no need to revisit the Court's prior analysis, and the Court provisionally certifies the settlement class. *See Stiner v. Brookdale Senior Living, Inc.*, No. 17-CV-03962-HSG, 2025 WL 1676276, at *3 (N.D. Cal. June 13, 2025).

United States District Court
Northern District of California

## III. PRELIMINARY SETTLEMENT APPROVAL

The Court next considers whether it should preliminarily approve the parties' class action settlement.

### A. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted). Regardless of whether a settlement agreement has been negotiated before or after a class has been certified, the district court must also review the settlement agreement for more "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *See Briseño v. Henderson*, 998 F.3d 1014, 1023–25 (9th Cir. 2021) (holding that courts must apply heightened scrutiny even to post-class certification settlement approvals) (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026.

### B. Analysis

#### i. Evidence of Conflicts and Signs of Collusion

The first factor the Court considers is whether there is evidence of collusion or other conflicts of interest. *See Roes*, 944 F.3d at 1049. The Ninth Circuit has directed district courts to

United States District Court
Northern District of California

look for "subtle signs of collusion," which include whether counsel will receive a disproportionate distribution of the settlement, whether the parties negotiate a "'clear sailing' arrangement (*i.e.*, an arrangement where defendant will not object to a certain fee request by class counsel)," and whether the parties agree to a reverter that returns unclaimed funds to the defendant. *Id*.

The Ninth Circuit has noted that clear sailing arrangements are "important warning signs of collusion," because "'[t]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class.'" *Roes*, 944 F.3d at 1051 (quoting *In re Bluetooth*, 654 F.3d at 948). Accordingly, when confronted with a clear sailing provision, the district court has a heightened duty to "scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *Id.* (quotations omitted).

Here, the MOU contains a clear sailing provision. The MOU states that Defendants "shall pay [Plaintiffs' counsel] $3.5 million, or such reduced attorneys' fees and expenses award as the Court may approve as reasonable . . . ." MOU ¶ 4. The parties engaged in "extended negotiations" over attorneys' fees and indicate that "Microchip agreed to pay these fees and expenses to Class Counsel . . . ." Mot. at 9. In short, Defendants do not intend to object to Class Counsel's requested fees.

The Court is cognizant of its obligation to review class fee awards with rigor, and at the final approval stage will scrutinize the circumstances and determine what fee award is appropriate in this case. But at this preliminary stage, the Court does not find the proposed award so disproportionate as to raise concerns. Counsel has indicated that the $3.5 million figure is below their lodestar and was only negotiated after the other terms of the settlement were negotiated. *See* Mot. at 9; Dkt. No. 252-2, Ex. B ("Ehrman Decl.") at ¶ 58. Unlike a common fund, any award of attorneys' fees here will not reduce Class Members' recovery. And as discussed further below, Class Members' recovery is 80 to 100% of unpaid severance benefits as well as interest. *See* MOU ¶ 2(a)–(b). When accounting for interest, therefore, Class Members' recovery will exceed 100% of their unpaid severance amounts. *See* Mot. at 9.

Additionally, the MOU does not contain a "reverter" provision or contemplate a *cy pres*

recipient. *See* MOU ¶ 10. Instead, any funds that remain unclaimed nine months after the settlement's effective date will be paid into the California State Controller Unclaimed Property Division. *Id.*

**ii. Preferential Treatment**

The Court next considers whether the settlement agreement provides preferential treatment to any class member. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947. For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *Lenovo*, 2018 WL 6099948, at *8 (quotations omitted).

Although the settlement agreement authorizes Plaintiffs to receive an incentive award of $10,000 each for their role in this long-running lawsuit, the Court will ultimately consider the reasonableness of the amount requested. Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Plaintiffs must provide sufficient evidence to allow the Court to evaluate their awards "individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'" *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The Court will consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive award request. Nevertheless, because incentive awards are not per se unreasonable, the Court finds that this factor weighs in favor of preliminary approval. *See Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary" (emphasis omitted)).

**iii. Settlement within Range of Possible Approval**

The third factor the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily



United States District Court
Northern District of California

consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8. This requires the Court to evaluate the strength of Plaintiffs' case.

As an initial matter, the Court notes that the terms of the *Schuman* settlement here and the *Berman* settlement are largely identical. As in *Berman*, for those Class Members here who did not sign releases, the settlement provides for 100% of their unpaid severance benefits, as well as nearly a decade of prejudgment interest. For the Class Members who did sign releases, the total settlement amount constitutes 80% of their unpaid severance benefits, as well as prejudgment interest. As Counsel explains, because an award of prejudgment interest is discretionary, the settlement amounts actually constitute "*more* than what the class members would have been guaranteed to receive *if* they had prevailed on all issues at trial." *See* Mot. at 13 (emphasis in original). And as for those Class Members who signed releases, "the settlement amounts are just 20% less than the most they might have recovered had they prevailed on all issues." *See id.* Counsel indicated that the range of possible recovery is $5,800 to $136,600.

As its extensive history indicates, this case is complicated, and Plaintiffs would face substantial risk in continuing to litigate through trial and on appeal. The Ninth Circuit identified a new multi-factor test for assessing the enforceability of the releases, which the parties would have to address. And in denying Defendants' motion to decertify the Class, the Court left open the possibility of "reassess[ing] whether common issues continue to predominate so as to warrant ongoing certification once the Court has developed the common factual record regarding Defendants' conduct in interpreting the Atmel Plan and communicating with class members." *See* Dkt. No. 241 at 16. The Court finds that the settlement amount, given these risks, weighs strongly in favor of granting preliminary approval.

**iv. Obvious Deficiencies**

The Court also considers whether there are obvious deficiencies in the settlement agreement. The Court finds no obvious deficiencies, and therefore finds that this factor weighs in favor of preliminary approval.

* * *

Having weighed the relevant factors, the Court preliminarily finds that the settlement

agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval. The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval.

## IV. PROPOSED CLASS NOTICE PLAN

Under Federal Rule of Civil Procedure 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

Here, the parties have agreed that Class Notice will be sent by email to the last known email address of each Class Member, or by U.S. mail to their last known address if a Class Member cannot be reasonably located by email. *See* MOU ¶ 9. Class Counsel has indicated that given the size of the Class, "Class Counsel have been in touch with most of them during the course of this litigation" and are "currently updating the contact information for the others." *See* Mot. at 8. At the preliminary approval hearing, Counsel explained that they already have been in touch with—and have good contact information for—all but 11 of the Class Members. If any mailed notices are returned by the Post Office as undeliverable, Class Counsel will perform a skip-trace or other search to try to identify a new mailing address or other means of contact. Rubin Decl. at ¶ 11. To the extent new addresses are identified, the notices will be remailed. *Id.* The Court finds that the proposed notice process is "reasonably calculated, under all the circumstances, to apprise all class members of the proposed settlement." *Roes*, 944 F.3d at 1045 (quotation omitted).

As to the substance of the notice, the parties have attached a copy of their proposed Class Notice to the Settlement Agreement. *See* Rubin Decl., Ex. B. The notice will be individualized and include information about the amount of unpaid severance benefits each Class Member is still owed, as well as the process for receiving payment, which includes completing and submitting IRS forms. *See* MOU ¶¶ 5–9; Rubin Decl., Ex. B. The notice explains how to opt out of or object to the settlement. *Id.* The notice also informs Class Members that Class Counsel will file a motion with the Court for attorneys' fees, as well as reimbursement of litigation costs and expenses advanced by Class Counsel. *Id.* It also provides that Plaintiffs may obtain up to $10,000 each for their services as class representatives. *Id.* Class Counsel has also indicated that it is in the process of creating a settlement website, which will include the notice, procedures for submitting required forms, opting out, and objecting, links to required forms, key deadlines, and important case documents. *See* Rubin Decl. at ¶ 12.

To enable Class Members to review the motion for attorneys' fees and the motion for incentive awards, Class Counsel shall include language in the notice: (1) indicating the deadline for filing the attorneys' fees motion and request for Plaintiffs' incentive awards; and (2) specifically stating the deadline for any Class Member objections to these motions. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–94 (9th Cir. 2010) (holding that under Rule 23(h), class members must be given a full and fair opportunity to examine and object to attorneys' fees motion).

The Court therefore finds that with these changes, the content of the proposed Class Notice provides sufficient information about the case and thus conforms with due process requirements. *See Hyundai II*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." (quotation omitted)).

## V. CONCLUSION

The Court **GRANTS** the motion for preliminary approval. Dkt. No. 251. The Court acknowledges that the parties submitted a proposed timeline as part of their motion. *See* Mot. at 15. However, because the proposal included placeholder dates tied to the date of the Preliminary

United States District Court
Northern District of California

Approval Order, the parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order:

| **Event** | **Date** |
|---|---|
| Deadline for emailing notice to all Class Members | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive awards motion | |
| Deadline for Class Members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive awards (at least 45 days after the filing of the motion for attorneys' fees and incentive awards) | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan with the edits identified above.

**IT IS SO ORDERED.**

Dated: 8/3/2026

HAYWOOD S. GILLIAM, JR.
United States District Judge