United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PETER SCHUMAN, et al.,

Plaintiffs,

v.

MICROCHIP TECHNOLOGY INCORPORATED, et al.,

Defendants.

Case No. 16-cv-05544-HSG

**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

Re: Dkt. Nos. 258, 259

Pending before the Court is the motion for final approval of class action settlement and motion for attorneys' fees, costs, and service awards. Dkt. Nos. 258, 259. The parties are familiar with the background of this long-running ERISA case, and the Court does not repeat it again here. The details of the settlement and memorandum of understanding ("MOU"), Dkt. No. 251-3, Ex. A, are discussed at length in the order granting preliminary approval, Dkt. No. 255 at 1–4, and incorporated here. The Court held a final fairness hearing on October 15, 2026. For the reasons detailed below, the Court **GRANTS** the motion for final approval and **GRANTS** the motion for attorneys' fees, costs, and service awards.

## I. FINAL SETTLEMENT APPROVAL

### A. Class Certification

The Court previously certified a class and denied Defendants' motion to decertify the class, defined as:

> All former U.S.-based employees of defendant Atmel Corporation who were employed as of the April 4, 2016 closing date of the Atmel-Microchip merger and who were terminated by defendant Microchip Technology Incorporated without cause between April 4, 2016 and

March 19, 2017.

*See* Dkt. No. 122 at 7; Dkt. No. 241. The Settlement provides relief to the same class, and the Court preliminarily approved the settlement class on August 3, 2026. *See* Dkt. No. 255 at 4–5. Because no facts that would affect the Court's reasoning have changed since then, this order incorporates by reference the Court's prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval. *See id.*

**B. The Settlement**

"The claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Where the parties reach a class action settlement prior to class certification, the Ninth Circuit has cautioned that such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). "This more exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id*. (quotations omitted). Since then, the Ninth Circuit has applied this higher level of scrutiny even to settlements reached after class certification. *See Briseño v. Henderson*, 998 F.3d 1014, 1023–25 (9th Cir. 2021). As the Court explained, "[t]he specter of collusion still casts a long shadow over post-class certification settlements when they involve divvying up funds between class members and class counsel." *Id.* at 1024.

The Ninth Circuit has identified several "subtle signs" the Court should consider in determining whether "class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Roes*, 944 F.3d at 1043. These include: "(1) when counsel receive[s] a disproportionate distribution of the settlement; (2) when the parties negotiate a clear-sailing arrangement, under which the defendant agrees not to challenge a request for an agreed-upon

attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607–08 (9th Cir. 2021).

To assess whether a proposed settlement comports with Rule 23(e) and is fair, reasonable, and adequate, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025) (quoting Fed. R. Civ. P. 23(e)(2)).[1] In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that Settlement Class Members received adequate notice, and that the proposed settlement is fair, adequate, and reasonable.

**i. Adequacy of Notice**

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. *Id.* Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir.

---

[1] Before 2018, courts applied what were often referred to as the "*Hanlon*" factors, as articulated in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "The key *Hanlon* factors are now baked into the text of Rule 23(e), and the remaining ones can still be considered for Rule 23(e)(2) analysis." *In re Cal. Pizza Kitchen*, 129 F.4th at 674.

United States District Court
Northern District of California

1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds that the notice plan previously approved by the Court was implemented and complies with Rule 23(c)(2)(B). *See* Dkt. No. 255 at 9–10; Dkt. No. 259-1 ("Ehrman Decl.") at ¶¶ 3–19. Class Counsel have been in contact with 213 of the 220 Class Members, including representatives of the heirs or estates of three Class Members who have passed away. *See* Ehrman Decl. at ¶¶ 4–19. At the hearing, Counsel indicated that they have continued their efforts to identify valid contact information for, and reach out to, the seven remaining Class Members. The overwhelming majority of Class Members—198 out of 220—have already submitted the required IRS forms for payment; no Class Member has objected to the Settlement; and only one Class Member has opted out.[2] *See id.* at ¶¶ 14, 18. In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to Class Members.

**ii. Fairness, Adequacy, and Reasonableness**

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire Settlement comports with Rule 23(e).

In evaluating the motion for preliminary approval, the Court considered all three signs of collusion that the Ninth Circuit has identified. *See* Dkt. No. 255 at 5–7; *see also McKinney-Drobnis*, 16 F.4th at 607–08. Nothing in the record changes the Court's preliminary conclusion regarding these factors. The proposed Settlement is non-reversionary; notwithstanding any clear sailing provision regarding Counsel's request for attorneys' fees, the majority of the Settlement will be distributed to Class Members; and the Court still carefully scrutinizes the request for attorneys' fees and service awards to ensure Class Members' interests are protected under the settlement. *See* Section II below. The Court further finds that the other factors discussed in Rule 23(e) indicate that the proposed settlement is fair, adequate, and reasonable.

//

[2] The Court understands that there is one individual who signed a separate agreement and release of claims with Microchip in 2016, and the parties agree that he accordingly is not entitled to compensation under the Settlement. *See* Ehrman Decl. at ¶ 17.

**iii. Adequacy of Representation**

First, the Court must consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Plaintiffs and Class Counsel have prosecuted this case vigorously for a decade. They have capably represented the Class and there is no evidence that Plaintiffs or Counsel have a conflict with other Class Members. The Court is likewise persuaded that Class Counsel "had sufficient information to make an informed decision" about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000); Dkt. No. 86 at 12 (discussing investigation and informal discovery prior to settlement). Accordingly, this factor weighs in favor of approval.

**iv. Arm's Length Negotiation**

Next, the Court must consider whether the Settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). The record indicates that the Settlement, reached on the eve of trial by experienced Counsel and after a decade of vigorous litigation, is the product of arm's length negotiations. The Court's findings about other subtle signs of collusion also support the conclusion that this agreement was negotiated at arm's length. Accordingly, this factor also weighs in favor of approval.

**v. Adequacy of Relief**

Next, the Court must consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

There is no question here that the relief provided is adequate, particularly in light of the complexity of the case. The Settlement provides the five Class Members who did not sign releases with 100% of their unpaid severance benefits, as well as nearly a decade of prejudgment interest. As Counsel previously explained, because an award of prejudgment interest is discretionary, the settlement actually provides "*more* than what the class members would have

been guaranteed to receive if they had prevailed on all issues at trial." *See* Dkt. No. 251 at 13 (emphasis in original). And as for those Class Members who signed releases, "the settlement amounts are just 20% less than the most they might have recovered had they prevailed on all issues." *See id.* Once interest is included, "each class member will end up netting more than the total amount of benefits promised to them under the Atmel Plan at the time of their termination." *See* Dkt. No. 259 at 7. In total and including interest, the amount owed to Class Members under the Settlement is over $9 million, with an average payout of approximately $43,000. *See* Dkt. No. 258-1 at ¶¶ 59–60. The payments to individual Class Members will range from approximately $5,881 to $136,628. *See id.* at ¶ 60; *see also* Dkt. No. 258 at 1.

If the parties had not settled, this case likely would have continued for several more years. The Ninth Circuit established a new multi-factor test for assessing the enforceability of the releases, which the parties would have had to address. And in denying Defendants' motion to decertify the Class, the Court left open the possibility of "reassess[ing] whether common issues continue to predominate so as to warrant ongoing certification once the Court has developed the common factual record regarding Defendants' conduct in interpreting the Atmel Plan and communicating with class members." *See* Dkt. No. 241 at 16. This factor thus weighs strongly in favor of approval.

**vi. Equitable Treatment of Class Members**

Finally, the Court must consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). This factor ensures that an agreement does not "improperly grant[] preferential treatment to class representatives or segments of the class." *Perks v. Activehours, Inc.*, No. 5:19-CV-05543-BLF, 2021 WL 1146038, at *6 (N.D. Cal. Mar. 25, 2021) (quotation omitted). Although the Settlement provides a larger recovery for the handful of Class Members who signed releases, this is fair under the circumstances. The enforceability of the releases was a critical issue in the case, and could have precluded any further recovery for those Class Members had the case continued. And as noted above, under the Settlement, all Class Members will obtain "more than 100% of the unpaid severance benefits that were owed to them under the Atmel Plan at the time of their termination." Dkt. No. 259 at 7.

United States District Court
Northern District of California

**vii. Reaction of Class Members**

While not one of the explicit Rule 23(e) factors, the reaction of the class members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (citations omitted); *see also In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

As discussed above, the settlement terms were publicized through a notice process that the Court has deemed adequate. Only one Class Member has requested exclusion from the Settlement, and no Class Member has objected. *See* Ehrman Decl. at ¶¶ 18, 25. The Court finds that the positive reaction of the Settlement Class supports approval of the Settlement.

* * *

After considering the above factors, the Court finds that the Settlement Agreement is fair, adequate, and reasonable, and that the Settlement Class Members received adequate notice. Accordingly, Plaintiffs' motion for final approval of the class action settlement is **GRANTED**. Dkt. No. 259.

## II. MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

In their unopposed motion and consistent with the Settlement, Class Counsel ask the Court to approve an award of $3.5 million in attorneys' fees and expenses. Dkt. No. 258. They also seek $10,000 service awards for Plaintiffs Peter Schuman and William Coplin. *Id.* Unlike the circumstances in a common fund case, any award of attorneys' fees, costs, or service awards here will not reduce Class Members' recovery.

### A. Legal Standard

Class counsel is entitled to an award of reasonable attorneys' fees and reimbursement of litigation expenses. *See* Fed. R. Civ. P. 23(e), (h); *Staton v. Boeing Co.*, 327 F.3d 938, 963–64, 967 (9th Cir. 2003). The "touchstone" for the Court's reasonableness analysis is "the benefit to the class—class counsel can only reap rewards if they have delivered results for class members."

*In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th at 679 (quotation omitted). The Court must independently calculate the benefit to the class, and may not approve fees "that appear excessive of settlement value." *Id.* Here, Counsel seeks attorneys' fees under ERISA's fee-shifting provision, which states that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. §1132(g)(1). The Supreme Court has clarified that a court may award fees and costs "as long as the fee claimant has achieved some degree of success on the merits . . . ." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010) (quotation omitted). As already discussed, Counsel succeeded in this case, securing a significant recovery for Class Members.

**B. Attorneys' Fees and Costs**

Courts in this Circuit use a "two-step hybrid lodestar/multiplier approach" to determine the amount of attorneys' fees awarded under ERISA. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir. 2007). First, the court must determine the "lodestar" by "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). Second, "[the] court may adjust the lodestar using a 'multiplier' based on facts not subsumed in the initial calculation of the lodestar." *Id.* "The lodestar amount is presumptively the reasonable fee amount . . . ." *Id.*

Here, Class Counsel seek $3.5 million in attorneys' fees and expenses. *See* Dkt. No. 258. Their accompanying declarations detail that over the course of nearly ten years, three law firms—McGuinn, Hillsman & Palefsky; Altshuler Berzon LP; and the Law Offices of William Reilly—have spent a total of 3,823 hours litigating this case, for a lodestar of over $3.9 million.[3] *See id.*; *see also* Dkt. No. 258-1; Dkt. No. 258-2; Dkt. No. 258-3. Even an incomplete summary of this case highlights the volume of work required to reach this settlement: The parties filed motions to dismiss; Plaintiffs filed a motion for class certification; the parties filed motions for summary

[3] These are the same firms that represented the plaintiffs in the related case, *Berman v. Microchip Technology Incorporated*, Case No. 17-cv-01864-HSG. After the *Berman* case settled, the attorneys were compensated for their time spent exclusively on *Berman* and for half of the time spent jointly on *Berman* and *Schuman*. *See* Dkt. No. 258-1 at ¶ 68. They now seek payment for the other half of their time spent jointly on *Berman* and *Schuman*. *See id.*

judgment (in 2020 and 2021) and appealed the Court's order; on remand, Defendants filed a motion to decertify the class and a motion to re-open discovery. Both the allocation of hours spent and the billing rates of the lawyers that worked on this action, ranging from $640 to $1,465, thus were reasonable under the circumstances. Class Counsel also represent that they have incurred a modest $13,897 in costs. *See id.* The Court finds that the requested fees and expenses are reasonable and **GRANTS** Plaintiffs' request of $3.5 million.

### C. Service Awards

Lastly, Class Counsel request service awards of $10,000 each for Plaintiffs Schuman and Coplin. *See* Dkt. No. 258 at 14–17. While awards are discretionary, "[i]t is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *6 (N.D. Cal. Feb. 6, 2012) (quotation omitted); *see also Nagy v. CEP Am., LLC*, No. 23-CV-05648-RS, 2025 WL 2960448, at *3 (N.D. Cal. Oct. 17, 2025) (awarding $10,000 service awards for class representatives in ERISA class action settlement); *Foster v. Adams & Assocs., Inc.*, No. 18-CV-02723-JSC, 2022 WL 425559, at *12 (N.D. Cal. Feb. 11, 2022) (awarding $5,000 service award to class representative in ERISA class action settlement). Service awards are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. To evaluate the reasonableness of a proposed service award, courts look to factors such as the representative's service to the class, investment of time, and reputational harm. *See Staton*, 327 F.3d at 977. Another important consideration is the proportionality between the incentive award and the range of class members' settlement awards. *See, e.g.*, *Burden v. SelectQuote Ins. Servs.*, No. C 10-5966 LB, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013) (declining to award a $10,000 incentive award where the requested award was nearly three times the largest amount paid to any class member).

Here, the Court finds that Plaintiffs' requested service awards are reasonable and warranted under the circumstances. Plaintiffs devoted extensive time to this case over the course

United States District Court
Northern District of California

of many years, sitting for depositions and responding to extensive discovery. The requested awards are also reasonable as compared to the average Class Member recovery: Plaintiffs seek less than a quarter of the estimated $43,000 average recovery per Class Member.

## III. CONCLUSION

Accordingly, the Court **GRANTS** the motion for final approval of class action settlement, Dkt. No. 259, and **GRANTS** the motion for attorneys' fees, costs, and service awards, Dkt. No. 258. The Court awards attorneys' fees and costs in the amount of $3.5 million and service awards of $10,000 each for Plaintiffs Schuman and Coplin. The parties are directed to implement this Final Order and the MOU in accordance with the terms of the MOU.

Class Counsel shall file a Post-Distribution Accounting within 21 days after the settlement checks become stale (or, if no checks are issued, all funds have been paid to Class Members, or uncashed funds have been paid into the California State Controller Unclaimed Property Division). In addition to the information contained in the Northern District of California's Procedural Guidance for Class Action Settlements, available at https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/, the Post-Distribution Accounting shall discuss any significant or recurring concerns communicated by class members to the settlement administrator or counsel since final approval, any other issues in settlement administration since final approval, and how any concerns or issues were resolved. Counsel are directed to summarize this information in an easy-to-read chart that allows for quick comparisons with other cases. The parties shall post the Post-Distribution Accounting, including the easy-to-read chart, on the settlement website. The Court may hold a hearing following submission of the parties' Post-Distribution Accounting.

**IT IS SO ORDERED.**

Dated: 10/28/2026

Haywood S. Gilliam, Jr.

HAYWOOD S. GILLIAM, JR.
United States District Judge